Hugh H. Mo (HM 0425)
Franklin K. Chiu (FC 0354)
THE LAW FIRM OF HUGH H. MO, P.C.
225 Broadway, Suite 2702
New York, New York 10007
(212) 385-1500  Fax: (212) 385-1870
hhmo8@verizon.net
*Attorneys for Defendant Hugh Mo Pro Se,*
*Defendant Kao Sung Liu i/s/h/a K.S. Liu*
*Defendant Gina Hiu-Hung Liu i/s/h/a K.S Gina Hiu-Hung and*
*Defendant Winston Sie f/i/s/h/a Wilson Xue*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

SANG LAN,

              Plaintiff,

   -against-

AOL TIME WARNER, INC., THE UNITED STATES
GYMNASTICS FEDERATION d/b/a USA
GYMNASTICS, TIG INSURANCE COMPANY, TIG
SPECIALTY INSURANCE SOLUTIONS,
RIVERSTONE CLAIMS MANAGEMENT, LLC, TED
TURNER, K.S. LIU, GINA LIU AKA K.S GINA HIU-
HUNG, WINSTON SIE, HUGH MO, JOHN DOES
AND JANE DOES # 1 THROUGH 15, INCLUSIVE,

              Defendants.

----------------------------------------------------------------- X

Index No.: 11-CV-2870
(LBS)(JCF)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S ACTION
## UPON PLAINTIFF'S SECOND AMENDED COMPLAINT
## PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)

### (FILED CONCURRENTLY WITH THE
### DECLARATION OF FRANKLIN K. CHIU
### AND THE EXHIBITS ANNEXED THERETO)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................iv, v, vi

PRELIMINARY STATEMENT.....................................................................................1

PLAINTIFF'S PLEADINGS..........................................................................................1

SANG LAN'S FACTUAL ALLEGATIONS....................................................................3

ARGUMENT...................................................................................................................6

   I.   Legal Standard For A Motion To Dismiss......................................................6

   II.  Count *Eight:* Unjust Enrichment Fails To State A Cause Of Action..............................7

       A.  Statute of Limitations..........................................................................7

       B.  Consequential Damages.......................................................................8

       C.  Express Contract.................................................................................8

       D.  Lack of Property Interest......................................................................8

   III. Count *Nine*: Conversion Fails To State A Cause Of Action..............................9

       A.  Statute of Limitations..........................................................................9

       B.  No Immediate Possessory Right To The Funds......................................9

       C.  Duplication Of Contract Claims...........................................................10

       D.  Consequential Damages.....................................................................10

   IV.  Count *Ten:* Breach of Fiduciary Duty Fails To State A Cause Of Action .................11

       A.  Statute of Limitations.........................................................................11

       B.  No Fiduciary Duty.............................................................................11

       C.  No Breach Of Fiduciary Duty..............................................................12

       D.  No Damages......................................................................................13

V.      Count *Eleven*: Defamation Fails To State A Cause Of Action...................................13

      A.  Statements of Opinion......................................................................13

      B.  No Pleadings with Particularity........................................................14

      C.  N.Y. Civil Rights Law § 74..............................................................16

      D.  Litigation Privilege...........................................................................16

      E.  Noerr Pennington Doctrine...............................................................17

      F.  No Special Damages..........................................................................17

VI.     Count *Twelve*: Civil Conspiracy Fails To State A Cause Of Action..........................18

VII.    Count *Thirteen*: *Prima Facie* Tort Fails To State A Cause Of Action........................18

VIII.   Count *Fourteen:* Invasion Of Privacy Fails To State A Cause Of Action..................20

IX.     Count *Sixteen*: Promissory Estoppel/Detrimental Reliance
Fails To State A Cause Of Action.............................................................................20

X.      Count Counts *Seventeen*: Intentional Tort/Battery, And
*Nineteen*: Battery/Sexual Harassment
Both Fail To State A Cause Of Action.....................................................................22

XI.     Count *Eighteen*: Negligence Fails To State A Cause Of Action................................23

XII.    Counts *Twenty*: Intentional Infliction Of Emotional Distress, And
*Twenty-One*: Negligent/Reckless Infliction Of Emotional Distress
Fail To State A Cause Of Action..............................................................................24

## TABLE OF AUTHORITIES

## CASES

*Allen v. Nat'l Video, Inc.,* 610 F. Supp. 612  (S.D.N.Y. 1985) ......................................20
*Bahiri v Madison Realty Capital Advisors, LLC,*
    2010 NY Slip Op. 52328U (N.Y.Co. 2010) ...........................................10, 18
*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................................7
*Belsky v. Lowenthal,* 62 A.D.2d 319 (1st Dep't 1978), *aff'd.,* 47 N.Y.2d 820 (1979).................18
*Bobal v. Rennselaer Polytechnic Inst.,* 916 F.2d 759 (2d Cir. 1990) ...............................14, 15, 17
*Broadway & 67th Sreet Corp. v. City of New York,* 475 N.Y.S.2d 41 (1st Dept. 1984..............19
*Burck v. Mars, Inc.,* 571 F.Supp.2d 446 (S.D.N.Y. 2008) ......................................20
*Burger v. Brookhaven Med. Arts Bldg.,* 516 N.Y.S.2d 705 (2nd Dep't 1987) ..........................12
*Calcutti v. SBU, Inc.,* 224 F.Supp.2d 691 (S.D.N.Y. 2002) ........................................9
*Cohen v. Davis,* 926 F.Supp.  399 (S.D.N.Y. 1996) ...........................................22
*Congregation Lev D'Sarmar, Inc. v. 26 Adar N.B. Corp.,* 596 N.Y.S.2d 435 (2d Dep't 1993).....7
*Cromarty v. Prentice Hall, Inc.,*  421 N.Y.S.2d 603 (2d Dep't 1979) .........................19
*Curiano v. Suozzi,* 480 N.Y.2d 466 (1984) ..............................................................19
*Cyberchron Corp. v. Calldata Sys. Dev., Inc.,* 47 F.3d 39 (2d Cir.1995) .............................21
*Cytyc Corp. v. Neuromedical Sys.,* 1998 U.S. Dist. LEXIS 9007 (S.D.N.Y. 1998) .....................14
*Dell, Inc. v. This Old Store, Inc.,* 2007 WL 1958609 (S.D.Tex. 2007) ...........................15
*Dellefave v. Access Temps.,* 2001 U.S. Dist. LEXIS 97 (S.D.N.Y. 2001) ................................17
*Dillon v. City of New York,* 261 A.D.2d 34 (1st Dep't 1999) .........................................14
*Edmiston v. Time, Inc.,* 257 F.Supp.  22 (S.D.N.Y. 1966) ...........................................16
*Edwards v. Great N. Ins. Co.,* 2006 U.S. Dist. LEXIS 50683 (E.D.N.Y. 2006) ...................24, 25
*Erickson v. Pardus,* 551 U.S. 89 (2007) .....................................................................6
*ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419 (S.D.N.Y. 1998) ...........................10
*Femrick v. Stracher,* 2007 U.S. Dist. LEXIS 46958 (E.D.N.Y. 2007) .......................................10
*First Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir. 1994) .......................................6, 7
*Freihofer v. Hearst Corp.,* 65 N.Y.2d 135 (1985) ....................................................18
*Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.,*
    288 F.Supp.2d 473 (S.D.N.Y. 2003) ...........................………………...................................10
*Hanft v. Heller,* 316 N.Y.S.2d 255 (N.Y.Co. 1970) ...............................................16
*Holm v. C.M.P. Sheet Metal, Inc.,* 455 N.Y.S.2d 429 (4th Dep't 1982) ...........................21
*Immuno AG v. Moor Jankowski,* 77 N.Y.2d 235 (1991) ............................................14
*In re Allou Distributors, Inc.,* 446 B.R. 32 (E.D.N.Y. 2011) .......................................8, 10
*In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.,*
    845 F. Supp. 1377 (D.Ariz. 1993)........................................................14
*In re Providian Fin. Corp. Erisa Litig.,* 2002 U.S. Dist. LEXIS 25676 (N.D.Cal.  2002) ..........15
*In re Xerox Corp. ERISA Litig.,* 483 F. Supp. 2d 206 (D.Conn.  2007) ...................................15
*In re Vasu,* 2001 U.S. Dist. LEXIS 482 (D.Conn.  2001) ...........................................21, 22
*James v. Chase Manhattan Bank,* 173 F.Supp. 2d 544 (N.D.Miss. 2001) ...............................12
*Jenkins v. R.G.H. Publ. Co.,* 1980 U.S. Dist. LEXIS 15794 (S.D.N.Y. 1980) ...........................16
*Jones v. Commerce Bank, N.A.,*2006 WL 2642153 (S.D.N.Y. 2006) ...............................15
*Keough v. Texaco Inc.,* 1999 U.S. Dist. LEXIS 1276 (S.D.N.Y. 1999) ...................................21
*Kirk v. Heppt,* 532 F.Supp.2d 586 (S.D.N.Y. 2008) ..............................................17

*Kirkland v. Local 32B/32J*, 1990 U.S. Dist. LEXIS 17318 (S.D.N.Y. 1990)..........................14, 15

*Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998) ....................................... .......14

*Leung v. New York Univ.*, 2010 U.S. Dist. LEXIS 33265 (S.D.N.Y. 2010) ................................25

*Malmsteen v. Berdon, LLP*, 477 F.Supp.2d 655 (S.D.N.Y. 2007) ...........................................7

*Margrabe v. Sexter*, 2009 U.S. Dist. LEXIS 11426 (S.D.N.Y. 2009) ..............................19. 24

*McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552 (11th Cir. 1992)..........................................17

*McKenzie v. Dow Jones & Co.*, 2008 U.S. Dist. LEXIS 55387 (S.D.N.Y. 2008) .......................19

*McNally v Yarnall*, 764 F.Supp. 853 (S.D.N.Y. 1991) .......................................................16

*Milkovich*, 497 U.S. 1 (1990) ....................................................................................14

*Mills v. Miteq, Inc.*, 2007 U.S. Dist. LEXIS 76488 (E.D.N.Y. 2007) ......................................20

*Mizuho Corporate Bank (USA) v. Cory & Assocs.*, 341 F.3d 644 (7th Cir. 2003) ................11, 12

*Mortise v. U.S.*, 102 F.3d 693 (2d Cir. 1996) ..................................................................25

*O'Brien v. Alexander*, 898 F.Supp. 162 (S.D.N.Y. 1995) ....................................................17

*O'Donnell v. Westchester Comm. Council, Inc.*, 466 N.Y.S, 2d 41 (2d Dept 1983) .................. 19

*O'Keefe v. Niagara Mohawk Power Corp.*, 714 F.Supp. 622 (N.D.N.Y. 1989) ........................19

*Old Dominion Branch No. 496, Nat. Assoc. of Letter Carriers v. Austin*,
      418 U.S. 264 (1974) ........................................................................................14

*Oxyn Telecommc'ns, Inc. v. Onse Telecom*,  2003 WL 22271224 (S.D.N.Y. 2003) ....................19

*Pace v. Ogden Services Corp.*, 257 A.D.2d 101 (3rd Dep't 1999) ..........................................23

*P&G Quality King Distribs.*, 974 F. Supp. 190 (E.D.N.Y. 1997) ...........................................16

*Pandian v. N.Y. Health & Hosp. Corp.*, 863 N.Y.S.2d 668 (1st Dep't 2008) ............................19

*Pietrangelo v. NUI Corp.*, 2005 U.S. Dist. LEXIS 40832 (D.N.J. 2005) ..................................15

*Primetime 24 Joint Venture v. NBC*, 219 F.3d 92 (2d Cir. 2000) ............................................17

*Probst v. Ashcroft*, 25 Fed. Appx. 469 (7th Cir. 2001) ......................................................16

*Roberts v. Pollack*, 461 N.Y.S.2d 272 (1st Dep't 1983)......................................................19

*Ruffolo v. Oppenheimer & Co.*, 1991 U.S. Dist. LEXIS 1485 (S.D.N.Y. 1991) ........................23

*Ruza v. Ruza*, 286 A.D. 767 (1st Dep't 1955) ..................................................................18

*Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58 (1st Dep't 2001) ....................8

*Securities Settlement Corporation*, 772 F.Supp. 770 (S.D.N.Y. 1991) ....................................21

*Sexter & Warmflash, P.C. v. Magrabe*, 38 A.D.3d 163 (1st Dep't 2007) ..................................17

*Shamonsky v. St. Luke's Sch. of Nursing*, 2008 U.S. Dist. LEXIS 20426 (E.D.Pa. 2008) ...........22

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ......................................7

*Solely v. Wasserman*, 2010 WL 931888 (S.D.N.Y. 2010) ...................................................9

*Sosa v. DirecTV Inc.*, 437 F.3d 923 (9th Cir. 2006) .........................................................17

*State v. Barclays Bank of New York, N.A.*, 76 N.Y.2d 533 (1990) ..........................................9

*Strauss v. Belle Realty Co.*, 65 N.Y.2d 399 (1985) ...........................................................24

*Thai v. Cayre Group, Ltd., et al.*, 726 F.Supp.2d 323 (S.D.N.Y. 2010) ...................................13

*Thea v. Thea*, 726 N.Y.S.2d 655 (1st Dep't 2001) ............................................................9

*Universal Studios*, 797 F.2d 70 (2nd Cir. 1986) ...............................................................9

*Weiss v. TD Waterhouse*, 2007 NY Slip Op. 9225 (2d Dep't 2007) ........................................11

*Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57 (2d Cir. 1993) ..............................................15

*Western Meat Co. v. IBP, Inc.*, 683 F. Supp. 415 (S.D.N.Y. 1988) ........................................18

*World Wrestling Federation v. Bozell*, 142 F.Supp.2d 514 (S.D.N.Y. 2001) ............................18

*Yedvarb v. Yedvarb*, 237 A.D.2d 433 (2[d] Dep't 1997) ......................................................21

**STATUTES**

28 U.S.C. § 1332.................................................................................................................3
Fed. R. Civ. P. Rule 8(a) ...............................................................................................6, 15
Fed. R. Civ. P. Rule 12(b)(6) ...................................................................................1, 3, 6
N.Y. Civ. Rights Law § 50................................................................................................20
N.Y. Civ. Rights Law § 51................................................................................................20
N.Y. Civ. Rights Law § 74............................................................................................6, 16
NY CPLR § 214(3) .............................................................................................................9
NY CPLR § 214(4) ...........................................................................................................11
NY CPLR § 214-c..............................................................................................................23
NY CPLR § 215(3) .....................................................................................................20, 22
N.Y.S. Executive Law § 296............................................................................................23

## PRELIMINARY STATEMENT

Defendant Kao Sung Liu incorrectly sued herein as K.S. Liu, ("Mr. Liu"), Defendant Gina Hiu-Hung Liu i/s/h/a K.S Gina Hiu-Hung, ("Mrs. Liu"), Defendant Winston Sie,[1] (also hereinafter together referred to as the "Lius"), and Defendant *Pro Se* Hugh Mo, ("Attorney Mo"), (collectively referred to as "Defendants"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss this Action pursuant to Fed. R. Civ. P. Rule 12(b)(6).

Plaintiff's twenty-one (21) causes of action for unspecified damages are meritless, frivolous, and mostly time-barred.  Moreover, Plaintiff's thirteen (13) counts against Defendants should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6).

## PLAINTIFF'S PLEADINGS

On April 28, 2011, Sang Lan ("Plaintiff" or "San Lang") filed a complaint ("Complaint")[2] seeking *$1.8 billion* from eight defendants on 18 Counts.  Her Action focuses on events that happened *thirteen years ago*, namely her accidental fall and disabling injury while competing in the 1998 Goodwill Games in New York as a gymnast from China.  To that end, Sang Lan sued AOL Time Warner, Ted Turner, TIG Insurance Company, Riverstone Claims Management and the U.S. Gymnastics Federation, including federal question claims alleging discrimination based on race and national origin.  Sang Lan brought unrelated common law claims against Mr. and Mrs. Liu, who hosted Sang Lan and her parents in their home for a few months during her treatment and started a fund to collect charitable donations for her in 1998.

---

[1] Defendant Winston Sie was also formerly i/s/h/a Wilson Xue in Plaintiff's first Amended Complaint.
[2] Sang Lan's Complaint is attached to the Chiu Declaration as Ex. A .

On May 13, 2011, Attorney Hai filed Sang Lan's first "Amended Verified Complaint," dated May 12, 2011, ("FAC")[3], which added three (3) causes of action, and two (2) named defendants (plus 15 John and Jane Does) seeking *$2.1 billion* in damages. The FAC also alleged new, but still time-barred and meritless, claims against the Lius' counsel, Attorney Mo.

Remarkably, Attorney Hai admitted that he sued Attorney Mo solely to create a conflict of interest so as to remove Attorney Mo from the case. Indeed, Attorney Hai suggested that he would withdraw these counts if Attorney Mo pays $500, or does Attorney Hai an unspecified favor, presumably Attorney Mo's withdrawal as the Lius' counsel. *See* Chiu Decl. Ex. F; ¶13.

On May 20, 2011, Attorney Hai voluntarily dismissed Ted Turner as a defendant to the Action. In doing so, he impliedly admitted that such claims had no merit when alleged. Indeed, Attorney Hai publicly admitted on his web log that he was obligated to dismiss the claim for "Promissory Estoppel/Detrimental Reliance" against Ted Turner, based on alleged oral promises to provide for her lifetime needs and expenses, as the Statute of Frauds barred such a claim.

Despite her recognition of this fatal defect, Sang Lan's Second Amended Complaint, ("SAC"),[4] preserves her nearly identical claim for "Promissory Estoppel/Detrimental Reliance" against Mr. and Mrs. Liu, based on a similar oral promise, "to provide [Sang Lan] for her needs and living expenses for life," which ostensibly also would be barred by the Statute of Frauds.

On June 8, 2011, Attorney Hai filed a Motion to Amend the FAC,[5] allegedly to conform the pleadings to new facts contained in the "Affidavit of Ping Lu."[6] However, Attorney Hai failed to disclose that the SAC contains substantial, unrelated amendments to the FAC.[7]

---

[3] References to the First Am. Complaint, Ex. B to the Chiu Declaration are cited "FAC ¶_."
[4] References to the Second Am. Complaint, Ex. C to the Chiu Declaration are cited "SAC ¶_."
[5] Attorney Hai's Motion to Amend the FAC is annexed as Ex. D to the Chiu Declaration.
[6] References to the Affidavit of Ping Lu, Ex. E to the Chiu Declaration are cited "Lu Affidavit ¶_."
[7] This misconduct will be addressed in Defendants' separate motion pursuant to Fed. R. Civ. P. Rule 11.

Most importantly, the SAC omits a critical reference to Mr. Sie's Hong Kong citizenship, which was originally asserted in the FAC. Upon information and belief, Attorney Hai removed this allegation because it would defeat the complete diversity of citizenship that Attorney Hai has asserted under 28 U.S.C. § 1332 in order to confer subject matter jurisdiction here.[8]

Attorney Hai and Sang Lan's husband/boyfriend/fiancée/agent, Huang Jian, ("Mr. Huang"), have also engaged in an unseemly internet and media campaign of character assassination and mischaracterizations. Attorney Hai has referred to Mr. Sie as "Most Wanted," and to Attorney Mo as "ruthless" and a "paper tiger." Notably, Attorney Hai even *admitted* that, despite his *ten-figure* demand, "parts of the lawsuit could be dismissed because the statute of limitations had expired for some of the counts of the complaint." 5/12/11 *AP* Article (Chiu Decl. Ex. G). Attorney Hai and Mr. Huang have recklessly accused Mr. Liu and Mr. Sie of "sexual abuse" and "financial selfishness." (Chiu Decl. Ex. H). Mr. Huang has threatened physical violence, urging Attorney Mo to "play with M41A1 [firearms]" and to fight with "guns and kni[v]es." (Chiu Decl. Ex. I).

## SANG LAN'S FACTUAL ALLEGATIONS

A motion pursuant to Fed. R. Civ. P. Rule 12(b)(6) generally requires that the Court accept as true a plaintiff's factual allegations in her pleadings. Hence, the following recitation of Sang Lan's factual allegations in her SAC is provided here for this purpose only.[9]

In the main, Sang Lan's Action seeks to recover money damages arising from events that allegedly occurred after her injury on July 21, 1998 through about May 1999, when she returned to China. SAC ¶¶19, 20, 23. Sang Lan was 17 years old at the time in 1998. SAC ¶¶16, 19.

---

[8] The jurisdictional defects of this Action will be addressed in a separate Motion to Dismiss by Defendants.

Immediately after her accident, Sang Lan's parents were expedited from China to New York while Sang Lan received medical care here. SAC ¶¶20, 21. Subsequently, Mr. and Mrs. Liu invited Sang Lan and her parents to stay in their home in Armonk, New York, for a few months while Sang Lan received treatment. *Id.* ¶¶23, 27. Mr. and Mrs. Liu also helped to establish a fund for the benefit of Sang Lan (the "Fund"). Sang Lan alleges that the Fund was "exclusively managed by [Mr. and Mrs. Liu] under advisement by [Attorney Mo]." SAC ¶35.

However, Sang Lan also alleges that "Mr. and Mrs. Liu were appointed by Chinese Gymnastic Team as her official guardians in the U.S. despite the objection by her own mother." SAC ¶23. As a result, Mr. and Mrs. Liu allegedly "harvested huge profits from being appointed and acted as guardians for her," including "income from Chinese Sports related business, since after they were appointed as guardian for [Sang Lan]..." SAC ¶28. They also purportedly, "illegally used [Sang Lan's] name, likeness and images without authorization from her or her parents in their business activities, advertisements, website publications, etc." SAC ¶31.

Sang Lan also claims that Mr. Liu and Mr. Sie allegedly sexually assaulted Sang Lan when she was a minor, thirteen (13) years ago. These allegations rely on the Affidavit of Ping Lu, allegedly a former Chinese doctor. SAC ¶ 37. In this regard, Sang Lan allegedly "filed a criminal complaint with the Westchester County District Attorney's Office." SAC ¶¶36-40.

Sang Lan further alleges that Attorney Mo was "[her] former counsel on a consultation basis regarding her 1998 injury and rights to recourse ..."[10] SAC ¶10. Attorney Mo allegedly "provided false legal advice and consultations to [her] regarding her injury, acted in concert with

---

[9] Defendants reserve their rights to oppose, object and deny each and every allegation asserted in Sang Lan's SAC in the unlikely event that this Court does not dismiss this Action against Defendants, requiring a responsive pleading.
[10] Sang Lan fails to identify when, where and how the purported consultations with Hugh Mo allegedly occurred. Nonetheless, they presumably would have occurred before she returned to China in June 1999.

[Mr. and Mrs. Liu], in joint efforts to prevent [her] from taking legal action for damages." *Id.* ¶45. As a result, Attorney Mo allegedly "breached a fiduciary duty as an attorney." *Id.* ¶50.

In May 1999, Sang Lan eventually returned to China with her mother, where, upon information and belief, she has continuously resided for the past twelve (12) years to date. SAC ¶¶23, 44. She turned 18 years old on June 11, 1999, and is now currently 30 years old. SAC ¶16.

The SAC contains no allegations about the time period from 1999 through 2011. It alleges that "on or about January 2011 . . . and continued till [sic] today," Mr. and Mrs. Liu, and Attorney Mo allegedly "publish[ed] defamatory statements" about plaintiff "on the internet, media, televisions, news reports . . ." SAC ¶¶33, 34. Plaintiff also claims that, after she publicly announced her intention to file this Action, Mr. and Mrs. Liu, and Attorney Mo together engaged in "a media and World Wide Web war to smear and insult [Sang Lan], [Sang Lan's] boyfriend, agent and representatives."[11] SAC ¶46.

She further claims that Attorney Mo allegedly made certain statements "to media named QQ Sports on May 5[th] and May 6th, 2011," which were part of a "malicious campaign to smear Sang Lan and hurt her on the media and internet," by Mr. and Mrs. Liu, and Attorney Mo. SAC ¶¶47, 48. Then, on May 11, 2011, Attorney Mo allegedly made statements to the "media," "to incite more hatred and brutal violence against [Sang Lan]. SAC ¶49. Lastly, on or about May 12, 2011, Mr. and Mrs. Liu, and Attorney Mo, plus John Does and Jane Does #1 through 15, allegedly made statements posted "at numerous websites, homepages . . .blogs. . . with the obvious intention to hurt [Sang Lan] personally to the extreme." SAC ¶49.

---

[11] Sang Lan does not allege that these purported statements by Defendants were defamatory, and fails to identify these statements with any specificity whatsoever.

## ARGUMENT

The SAC gives rise to dozens of legal arguments, each demonstrating the legal insufficiency of some or all of the SAC. Among these deficiencies are the following:

- Virtually every claim is time-barred. In fact, Attorney Hai admitted that, "parts of the lawsuit could be dismissed because the statute of limitations had expired for some of the counts of the complaint." *See* 5/12/11 *AP* Article (Chiu Decl. Ex. G.). The SAC makes no attempt to plead *any* basis for overcoming the time bars, despite their apparent recognition of the problem. SAC ¶¶39, 145.[12]

- Virtually every claim fails because plaintiff failed to plead cognizable damages, including the requisite special damages for defamation and *prima facie* tort.

- Many of Sang Lan's claims (such as unjust enrichment and conversion) are barred by an express contract. If, to the contrary, no such contract exists, then Sang Lan also has an insufficient property right to maintain either an unjust enrichment claim or a conversion claim.

- Sang Lan's defamation claims are riddled with errors, *e.g.*, her exclusive reliance on inactionable statements of opinion and on fair comments about the litigation, which are protected by the litigation privilege, N.Y. Civ. Rights Law § 74, and the *Noerr-Pennington Doctrine*.

- Sang Lan's causes of action for negligence and intentional/negligent/reckless infliction of emotional distress improperly rely on the same facts that support the failed defamation claim. Thus, her attempts to circumvent the specific pleading requirements for these claims fail for the same reasons as the defamation claims.

## I.    Legal Standard For A Motion To Dismiss Under Fed. R. Civ. P. Rule 12(b)(6).

Under Fed. R. Civ. P. Rule 8(a), a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(*per curiam*). Although plaintiff's allegations are largely taken as true, courts do not accept "conclusions of law or unwarranted deductions." *First Nationwide Bank v. Gelt Funding*

---

[12] There is no support for the suggestion that foreign plaintiffs are somehow exempt from the statute of limitations. SAC ¶39. Likewise, although minors are exempt from the limitations period, see NY CPLR § 208, the period began to run when Sang Lan reached the age of 18 in 1999.

*Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)(*quoting* 2A, James William Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶12.08, at 2266-69 (2d ed. 1984)). Conclusory allegations "will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)(quoting *Gebhardt v. Allspect, Inc.*, 96 F.Supp. 2d 331, 333 (S.D.N.Y. 2000)).

For this purpose, courts must determine whether the "[f]actual allegations... raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, allegations in the complaint must meet the standard of "plausibility." *Id.* at 563 n.8, 564.

**II.    Count *Eight*: Unjust Enrichment Fails To State A Cause Of Action.**

This claim is asserted exclusively against Mr. and Mrs. Liu for allegedly failing to remit money from the Fund to Sang Lan. SAC ¶84. At the outset, although the claim is also lodged against Attorney Mo, the SAC does not contain any factual allegations to support her claim against Attorney Mo, and therefore, should be dismissed as to him.

**A.    Statute of Limitations**

The statute of limitations, ("SOL"), for unjust enrichment is, at most, six (6) years. *Malmsteen v. Berdon, LLP*, 477 F.Supp.2d 655 (S.D.N.Y. 2007). A claim for unjust enrichment "starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution." *Congregation Lev D'Sarmar, Inc. v. 26 Adar N.B. Corp.*, 596 N.Y.S.2d 435, 437 (2d Dep't 1993)(citation omitted). Here, Plaintiff's claim is time-barred because the alleged wrongful act giving rise to a duty of restitution occurred when the Lius allegedly "refused to turn over" the fund money to Sang Lan *"for about 10 years."* FAC ¶40; SAC ¶43 (emphasis added).

**B.**    **Consequential Damages**

Sang Lan alleges that she "lost income, good public image as plaintiff has always enjoyed advertisement opportunities, job opportunities, etc." SAC ¶86. This damages theory fails. First, there is no explanation as to how the failure to pay funds from the Goodwill Fund led to lost opportunities. Second, the alleged unjust enrichment was nothing more than the failure to pay money. In that event, the plaintiff should recover, at most, the amounts due plus interest. *Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 58-59 (1st Dep't 2001).

In addition, generally the measure of damages for unjust enrichment "is the reasonable value of the benefit conferred on defendant by plaintiff." *In re Allou Distributors, Inc.*, 446 B.R. 32, 76 (E.D.N.Y. 2011)(citation omitted). Here, the "benefit" was at most the money in the Fund. Purported lost income, lost advertisements and job opportunities did not "benefit" the Lius and are not actionable damages under an unjust enrichment theory.

**C.**    **Express Contract**

The SAC suggests that Sang Lan had an explicit contractual right to the funds in the Fund. SAC ¶90, (discussing Lan's "right to possession of the funds in the [Fund]"). Thus, the unjust enrichment claim fails because the matters in dispute are governed by an express contract. *Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 59 (1st Dep't 2001)(unjust enrichment claim fails "since the matters here in dispute are governed by an express contract").

**D.**    **Lack of Property Interest**

If Sang Lan's unjust enrichment claim is governed by an express contract, it is barred. Likewise, even if, to the contrary, Sang Lan did not have any explicit contractual right to the funds in the Fund, this claim would also be barred.

A plaintiff must have suffered an actual out-of-pocket loss to prevail on an unjust enrichment claim. *See State v. Barclays Bank of New York, N.A.,* 76 N.Y.2d 533, 540-541 (1990). In *Barclays,* the plaintiff's unjust enrichment claim was dismissed because the plaintiff never acquired a property interest in checks that were wrongfully diverted from it and thus did not suffer a sufficient loss. *Id. See also Universal Studios,* 797 F.2d 70 (2nd Cir. 1986)(licensor could not allege unjust enrichment where opposing party coerced third party licensees to pay it royalties on licensed product; licensor sold its rights to licensees when it entered into licensing agreements. and thus. opposing party did not obtain any monies that were owed to licensor).

**III.    Count *Nine*: Conversion Fails To State A Cause Of Action.**

Sang Lan's Ninth Cause of Action for Conversion against Mr. and Mrs. Liu, and Attorney Mo, is based entirely upon the alleged conversion of the funds in the Fund. SAC ¶89. Hence, her conversion claim fails for similar reasons as her unjust enrichment claim.

**A.    Statute of Limitations**

The statute of limitations for conversion is three (3) years. *See* NY CPLR § 214(3). Generally, the statute of limitations begins to run when the conversion occurs, not when it is discovered. *Calcutti v. SBU, Inc.,* 224 F.Supp.2d 691 (S.D.N.Y. 2002); *Solely v. Wasserman,* 2010 WL 931888, at *8 (S.D.N.Y. Mar. 12, 2010). Here, her claim is time-barred because the alleged conversion occurred "more than 10 years" ago. FAC ¶40; SAC ¶43.

**B.    No Immediate Possessory Right To The Funds**

The SAC does not allege that Sang Lan had an immediate right to possession of the money from the Fund. Thus, any delay in getting the money to her was not conversion. *See Thea v. Thea,* 726 N.Y.S.2d 655 (1st Dep't 2001)(plaintiffs failed to state claim for conversion because they had no legal title or possessory interest in the funds at the time of the transfer);

*Bahiri v Madison Realty Capital Advisors, LLC,* 2010 NY Slip Op. 52328U, *2-3 (Sup. Ct. N.Y. County Dec. 23, 2010); *Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.,* 288 F. Supp.2d 473, 480 (S.D.N.Y. 2003)(dismissing conversion claim brought by plaintiff which loaned money to another company, the loan proceeds of which were misappropriated; conversion claim dismissed because the lender had no immediate right to possession until the date on which the loan would be due).

Since there is no allegation that Sang Lan has the legal title or immediate right to possess the assets in the Fund, her conversion claim fails. The mere allegation that money is owed to the plaintiff is not enough to make out a conversion claim. *Bahiri*, 2010 NY Slip Op. 52328U, *2-3.

### C.    <u>Duplication Of Contract Claims</u>

If Sang Lan has an explicit contractual right to the money from the Fund, her conversion claim still fails because courts have dismissed conversion claims where the conversion damages are not distinct from the damages arising from alleged breaches of contract. *Global View Ltd. Venture Capital,* 288 F. Supp.2d at 479-80 (S.D.N.Y. 2003); *Bahiri,* 2010 NY Slip Op. 52328U, *2-3. "[A] plaintiff may not recast a contract-based claim as a tort claim . . ." *ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419, 432 (S.D.N.Y. 1998).

### D.    <u>Consequential Damages</u>

The Count alleges that Sang Lan "lost income, good public image as plaintiff has always enjoyed advertisement opportunities, job opportunities, etc." SAC ¶91. This damages theory fails; and damages should be limited, at most, to the amount of the property that was converted. *Femrick v. Stracher,* 2007 U.S. Dist. LEXIS 46958, 51-52 (E.D.N.Y. 2007); *In re Allou Distributors, Inc.,* 446 B.R. 32, 76 (E.D.N.Y. 2011)(conversion damages are usually measured by the value of the converted property)(citation omitted).

IV.     **Count *Ten:* Breach of Fiduciary Duty Fails To State A Cause Of Action.**

      A.     **Statute of Limitations**

Since this claim seeks primarily monetary relief, a three (3) year SOL applies. *See* NY CPLR § 214(4); *Weiss v. TD Waterhouse*, 2007 NY Slip Op. 9225, 1-2 (2d Dep't 2007)(dismissing fiduciary duty claim seeking money damages only).   Here, the principal operative paragraph, SAC ¶95, alleges that Defendants failed to advise Sang Lan of her rights, failed to sue, failed to advise her of the Gymnastics Association's alleged conflict, and prevented her from speaking publicly – time-barred events which allegedly occurred 13 years ago.

      B.     **No Fiduciary Duty**

There is no allegation that Attorney Mo or the Lius owed any fiduciary duty within the relevant time period to Sang Lan. While Sang Lan argues that the Lius owed a duty *13 years ago* when they allegedly served as her "guardian," that duty does not persist for perpetuity and ended when Sang Lan returned to China in 1999. SAC ¶23.

Sang Lan also fails to allege any fiduciary duty owed by Attorney Mo. The SAC does not include any factual allegations to substantiate her conclusory assertion that Attorney Mo was her "former counsel on a consultation basis." SAC ¶10.   At most, Sang Lan alleges that Attorney Mo provided isolated legal advice *to the Lius* at the time. The SAC does not allege any contact between Attorney Mo and Sang Lan after she returned to China in 1999. SAC ¶45. Thus, Attorney Mo never had any fiduciary duty to her, much less within the three (3) year SOL.

In addition, the Lius are Sang Lan's adversary in litigation and Attorney Mo is representing Sang Lan's adversary in litigation. To any extent that this Count is based upon Attorney Mo's representation of the Lius herein, Sang Lan's claim for breach of fiduciary duty fails because litigation adversaries owe no duties to one another. *Mizuho Corporate Bank (USA)*

11

*v. Cory & Assocs.*, 341 F.3d 644 (7th Cir. 2003)("IBSI owed no duty to defend…All three parties were instead ordinary adversaries in ordinary litigation"); *James v. Chase Manhattan Bank*, 173 F.Supp.2d 544 (N.D. Miss. 2001)("This Court is unaware of any authority…anywhere in the country, which suggests that an attorney owes a duty, fiduciary or otherwise, to the adverse party in a case he is litigating").

Finally, the suggestion that Attorney Mo may owe a fiduciary duty to the Lius does not somehow create a cause of action for Sang Lan against Attorney Mo based upon the actions of the Lius. An attorney is not liable for actions taken by his client, even if he induced the client to commit those actions. *Burger v. Brookhaven Med. Arts Bldg.*, 131 A.D.2d 622, 624, 516 N.Y.S.2d 705 (N.Y. App. Div. 1987)( "an attorney is not liable for inducing his principal [*i.e.*, his client] to breach a contract with a third person, at least where he is acting on behalf of his principal within the scope of his authority.")(citations omitted).

### C.   <u>No Breach Of Fiduciary Duty</u>

The SAC identifies ten (10) alleged breaches of fiduciary duty. However, plaintiff fails to specifically identify the fiduciary duties allegedly owed by each defendant, respectively. SAC ¶95. Moreover, plaintiff fails to specifically attribute which alleged act constitutes a "breach" of which "fiduciary duty" by which defendant, respectively.

Plaintiff contends that Defendants' supposed breaches of fiduciary duty were intended "to intimidate and threaten [her] from bring [sic] a lawsuit, among other things." *Id.* However, the Complaint nowhere details how they allegedly injured Plaintiff, *i.e.*, there is no allegation that such a lawsuit would have been meritorious.

Nor does this assertion make any sense. The Lius, to the extent they were connected to any gymnastic organization, were affiliated with the Chinese Gymnastics Organization. The

12

SAC alleges that AOL and USA Gymnastics organized the Goodwill Games, and does not allege that the Lius or Attorney Mo were responsible for her injuries.  SAC ¶20.

### D.    No Damages

The SAC does not plead damages directly caused by the alleged breaches of fiduciary duty in 2011. The SAC alleges that Sang Lan has "been struggling for the past 13 years in China," which refutes her claim that any alleged breach in 2011 caused her plight. SAC ¶¶44, 46.

### V.    Count *Eleven:* Defamation Fails To State A Cause Of Action.

To state a claim for defamation. the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai* v. *Cayre Group, Ltd., et al.*, 726 F.Supp.2d 323, 329 (S.D.N.Y. 2010)(citations omitted).

### A.    Statements Of Opinion

This Count fails entirely because the allegedly defamatory statements were matters of opinion that were not defamatory *per se*.  However, the defamation count also often fails to allege the specific language of the alleged defamation, which is fatal to the cause of action.

The defamation count relies entirely on statements of opinion and hyperbole:

- Sang Lan lied about being sexually harassed.  "It is all her own crafted creation, made-ups, maybe it is her lawyers' creation." SAC ¶47.
- Sang Lan's lawsuit is frivolous, made of lies, will all be dismissed by the court. *Id.*
- "Sang Lan has personally insulted KS Liu and his family for no good cause." *Id.*
- "Sang Lan wrecked on the ground 13 years ago; today she will wreck herself once again on the law." *Id.*
- "Sang Lang is laughable to file a lawsuit for S1.8 billion dollars.  Her 22 page complaint is nothing but garbage." SAC ¶49.

- "That's dogs fights, dog bites dog."  Sang Lan is a "biting dog" bites the hands that feed her. "It is the farmer and snake story." *Id*.
- "she is a wicked person . . . will be punished by God." SAC ¶33.
- "Her lawsuit is for money to satisfy her appetite for luxuries." *Id*.
- "Sang Lang is too lazy, can't get a job." *Id*.
- "they .. are so shameless, they should die." *Id*.

A defamation claim may not arise on the basis of "rhetorical hyperbole." *Milkovich*, 497 U.S. 1, 16-17 (1990), *citing Greenbelt Cooperative Publishing Assn., Inc. v. Bresler*, 398 U.S. 6 (1970); *see Old Dominion Branch No. 496, Nat. Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 283-87 (1974)(defendant's charges, in the course of a labor dispute, that plaintiff was a traitor, possessed rotten principles and lacked character were loose and figurative hyperbolic expressions of opinion); *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1ˢᵗ Dep't 1999).

In fact, statements of opinion receive absolute protection. *Immuno AG v. Moor Jankowski*, 77 N.Y. 2d 235, 256 (1991).  In *Cytyc Corp. v. Neuromedical Sys.*, 1998 U.S. Dist. LEXIS 9007, 12-17 (S.D.N.Y. 1998), the court rejected a defamation claim based on statements of opinion like those here, i.e., a competitor's assertion that his adversary's petitions were "frivolous." *See also In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 845 F.Supp. 1377, 87, 88 (D. Ariz. 1993)(press statement that adversary's expert witness made the "biggest mistake any guy made in the country," was "a lawyer's expression of...opinion regarding his client's allegations...as anyone reading or hearing the statements would have understood").

## B.    No Pleadings with Particularity

A defamation claim must allege when, how and to whom the allegedly defamatory statements were published. *Bobal v. Rennselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990); *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1063 (9ᵗʰ Cir. 1998)("heightened pleading standard" for defamation); *Kirkland v. Local 32B/32J*, 1990 U.S. Dist. LEXIS 17318

(S.D.N.Y. Dec. 19, 1990)(dismissing defamation claim which did not identify specific statements or when or where statements were made).

The SAC fails to meet these standards. For example, the SAC lodges accusations of defamation on unspecified blogs on unspecified dates "from January 2011 till present day." This type of pleading fails to meet the standard of such cases as *Bobal*. *See Jones v. Commerce Bank, N.A.*, 2006 U.S. Dist. LEXIS 65630, 2006 WL 2642153, at *4 (S.D.N.Y. 2006)(denying motion to amend defamation claim where plaintiff failed to identify to whom the false information was disseminated). More importantly, the SAC does not even allege that the statements were false. For example, the statement that "I helped her get the job at the Star TV" (SAC ¶33) may or may not be false, but its falsity is not alleged. *See Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993)(defamation requires, *inter alia*, a false and defamatory statement of fact).

In addition, the defamation counts fail in large part because many of the allegations are not attributed to any specific person but to the mass of "defendants." Many of the statements in SAC ¶¶48, 49 are attributed to Mr. and Mrs. Liu, Mr. Sie, Attorney Mo plus all of the *Doe* defendants together, without any specific identification of which defendant made which statements. Also, the statements in SAC ¶33 are attributed to *both* Mr. and Mrs. Liu. This type of pleading is improper because it does not inform each particular defendant of what he is charged with. *In re Xerox Corp. ERISA Litig.*, 483 F.Supp. 2d 206, 213 (D. Conn. 2007)("[U]nder Fed. R. Civ. P. 8(a), each defendant or group of defendants is entitled to know which claims are being asserted against him, her or it.").[13]

---

[13] *Dell, Inc. v. This Old Store, Inc.*, 2007 WL 1958609, at *3 (S.D. Tex. Jul 2, 2007); *In re Providian Fin. Corp. Erisa Litig.*, 2002 U.S. Dist. LEXIS 25676 at *3-*4 (N.D. Cal. Nov. 14, 2002)(dismissing where plaintiff "lumped the various classes of defendants into an undifferentiated mass"); *Pietrangelo v. NUI Corp.*, 2005 U.S. Dist. LEXIS 40832 at *34-*35 (D.N.J. July 18, 2005)(dismissing because plaintiff "fails to distinguish between the defendants" and refers to all defendants collectively).

**C.    N.Y. Civil Rights Law § 74**

With respect to most of the allegedly defamatory statements set out above, particularly

those in SAC ¶¶47-49, New York Civil Rights Law § 74 provides an absolute privilege for the

publication of a "fair and true report of any judicial proceeding." *See Jenkins v. R.G.H. Publ.*

*Co.*, 1980 U.S. Dist. LEXIS 15794, 11-12 (S.D.N.Y. Dec. 23, 1980); *Edmiston v. Time, Inc.*, 257

F.Supp. 22 (S.D.N.Y. 1966); *Hanft v. Heller*, 316 N.Y.S.2d 255 (N.Y. Co. 1970).

Here, as alleged, Attorney Mo's statements were an attorney's commentary about an

adversary's position in litigation.  This case is controlled by *McNally v Yarnall*, 764 F.Supp. 853

(S.D.N.Y. 1991), in which this Court applied N.Y. Civ. R. Law § 74 to protect an attorney's

interview for a magazine in which the attorney indicated that a litigation adversary's artworks

were fake.  This Court rejected the claim because the attorney merely restated his client's

position in the litigation, and explained that the statute is not limited to the mere repetition of

statements made in actual proceedings; it covers statements which "relat[e] to the underlying

litigation and particularly "relate directly to a possible position to be taken by [defendant] as a

defense to [plaintiff's] charges."  764 F.Supp. at 856.  *See P&G Quality King Distribs.*, 974

F.Supp. 190 (E.D.N.Y. 1997)(manufacturer was immune from defamation arising from letter and

press release stating that it had filed suit against distributor for selling fake product).

**D.    Litigation Privilege**

The litigation privilege protects statements about litigation, particularly those in SAC ¶¶

47-49.  The privilege "precludes actions taken in the adversarial setting of litigation and

otherwise redressable through court process from supporting further litigation."  *Probst v.*

*Ashcroft*, 25 Fed. Appx. 469, 471 (7th Cir. 2001)(motions, objections and delays in producing

documents in litigation did not support liability).

16

Similarly, "statements made by parties and their attorneys in the context of litigation are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Kirk v. Heppt,* 532 F.Supp. 2d 586 (S.D.N.Y. 2008); *O'Brien v. Alexander,* 898 F.Supp. 162, 171 (S.D.N.Y. 1995), *citing Grasso v. Mathew,* 564 N.Y.S.2d 576, 578 (App. Div. 1991)).   The privilege "embraces anything that may possibly or plausibly be relevant or pertinent.'" *Id.* (letters written to insurance company regarding litigation were covered by privilege).   Moreover, the privilege applies regardless of the motive with which the statements are made. *Sexter & Warmflash, P.C. v. Magrabe,* 38 A.D.3d 163 (1st Dep't 2007).

### E.   *Noerr Pennington Doctrine*

The *Noerr-Pennington Doctrine,* a First Amendment doctrine, bars suits arising, as here, from out-of-court statements made during litigation. *Noerr-Pennington* immunity applies to pre-litigation threats of suit and communications about pending suits. *See also Sosa v. DirecTV Inc.,* 437 F.3d 923 (9th Cir. 2006)(sending of presuit demand letters was protected petitioning activity); *Primetime 24 Joint Venture v. NBC,* 219 F.3d 92, 100 (2d Cir. 2000); *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1558-60 (11th Cir. 1992)(pre-litigation threats of suit).

### F.   No Special Damages

A defamation plaintiff must plead special damages with particularity. *Bobal,* 916 F.2d at 763.  To satisfy the special damages requirement, "a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice." *Dellefave v. Access Temps.,* 2001 U.S. Dist. LEXIS 97 (S.D.N.Y. 2001)(citation omitted). Here, the SAC fails because it makes no effort whatsoever to plead special damages with particularity; the damages counts do not specify a number at all. SAC ¶¶103, 104.

Moreover, the SAC *negates* any inference that damages flowed from the alleged defamation in 2011. Rather, the SAC alleges that Sang Lan has "been struggling for the past 13 years in China" (SAC ¶44), meaning that the alleged 2011 defamation did not cause her destitution.

## VI.        Count *Twelve:* Civil Conspiracy Fails To State A Cause Of Action.

New York law does not recognize a free-standing independent tort of civil conspiracy and thus Count 12 should be dismissed because plaintiff has failed to plead an underlying tort to which the civil conspiracy count is connected. *Bahiri,* 2010 NY Slip Op. 52328U, *7-8.

Even if it may be considered that this claim is connected to any of the other causes of action in the SAC, it should be dismissed for the same reasons that each of the underlying torts must be dismissed as set forth herein.

Finally, the civil conspiracy count fails because Sang Lan has failed to allege the requisite agreement between the alleged co-conspirators. *World Wrestling Federation v. Bozell,* 142 F.Supp.2d 514, 532-33 (S.D.N.Y. 2001)(agreement is necessary for a conspiracy pleading).

## VII.       Count *Thirteen: Prima Facie* Tort Fails To State A Cause Of Action.

Plaintiff's claim for prima facie tort fails for the same reasons as her other tort claims fail. Prima facie tort cannot sustain a pleading which otherwise fails to state a cause of action in conventional tort (*see Ruza v. Ruza*, 286 A.D. 767 (1st Dep't 1955)). "[Prima] facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 142-43 (1985); *Belsky v. Lowenthal,* 62 A.D.2d 319, 323, (1st Dep't 1978), *aff'd.,* 47 N.Y.2d 820 (1979); *see Western Meat Co. v. IBP, Inc.,* 683 F.Supp. 415, 416 (S.D.N.Y. 1988).

*Prima facie* tort also requires a pleading of malice -- that defendants were motivated by nothing other than a desire to injure the plaintiff, *i.e.*, out of "disinterested malevolence." *See Pandian v. N.Y. Health & Hosp. Corp.*, 863 N.Y.S.2d 668, 669-70 (1ˢᵗ Dep't 2008)(dismissing *prima facie* tort claim where no allegation that malevolence was defendants' sole motivation); *see also Curiano v. Suozzi*, 480 N.Y.2d 466, 469 (1984)("sole" motivation for defendant's actions must be malevolence). A conclusory allegation of malice does not suffice.[14]

Here, the SAC alleges numerous motives other than disinterested malevolence.   For example, the Lius are alleged to be motivated by business interests totaling "hundreds of millions of dollars." SAC ¶24, 28.  Thus, the *prima facie* tort count fails because economic motives, such as profit, self-interest or business advantage, cannot form the basis for prima facie tort. *Margrabe v. Sexter*, 2009 U.S. Dist. LEXIS 11426, 29-30 (S.D.N.Y. 2009).[15]

Moreover, the SAC fails to plead special damages with particularity.  Rather, it merely refers to "lost income, good public image as Sang Lan as always enjoyed, advertisement opportunities, job opportunities, etc.," which is contained verbatim in each cause of action in the SAC.   Therefore, the prima facie tort claim must be dismissed for failure to plead special damages. *O'Keefe v. Niagara Mohawk Power Corp.*, 714 F. Supp.622, 634 (N.D.N.Y.1989); *Broadway & 67ᵗʰ Sreet Corp. v. City of New York*, 475 N.Y.S.2d 41, 42 (1ˢᵗ Dept. 1984).

Furthermore, the SOL for *prima facie* tort is one (1) year. *See McKenzie v. Dow Jones & Co.*, 2008 U.S. Dist. LEXIS 55387, at *4 (S.D.N.Y. 2008). The SAC does not allege when the

---

[14] *See Oxyn Telecommc'ns, Inc. v. Onse Telecom*, 2003 WL 22271224, at *9 (S.D.N.Y. Sept. 30, 2003)(citation omitted); *O'Donnell v. Westchester Comm. Council, Inc.*, 466 N.Y.S, 2d 41, 42 (2d Dept 1983).

[15] *See Roberts v. Pollack*, 461 N.Y.S.2d 272, 276 (1ˢᵗ Dep't 1983)(where other motives exist such as profit, self interest of business advantage, *prima facie* tort does not lie); *Cromarty v. Prentice Hall, Inc.*, 421 N.Y.S.2d 603, 604 (2d Dep't 1979)(allegation that actions were for commercial gain defeated *prima facie* tort claim).

underlying events that give rise to this claim occurred. SAC ¶111. However, this claim may also be barred by the statute of limitations as it relates to events in 1998-1999.

**VIII.      Count *Fourteen:* Invasion Of Privacy Fails To State A Cause Of Action.**

To maintain a civil action under N.Y. Civ. Rights Law § 51, a plaintiff must show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent. *Burck v. Mars, Inc.*, 571 F. Supp.2d 446 (S.D.N.Y. 2008):*Allen v. Nat'l Video, Inc.,* 610 F.Supp. 612, 621 (S.D.N.Y. 1985).

The SAC fails to provide specific factual allegations to support the invasion of privacy count. Rather, it merely states in a conclusory fashion that plaintiff's name, likeness and image were used in "business activities, advertisements, website publications, etc." Such a conclusory allegation does not meet the pleading standards for invasion of privacy. *See Mills v. Miteq, Inc.*, 2007 U.S. Dist. LEXIS 76488 (E.D.N.Y. 2007)(dismissing invasion of privacy claim where "Plaintiff has not provided any specific allegations relating to this claim."). In particular, the SAC fails to allege with specificity that the alleged invasion of privacy was used for advertising or trade purposes, as N.Y. Civ. Rights Law § 50 requires. *Burck, supra.*

Moreover, the SOL for invasion of privacy is one (1) year. NY CPLR § 215(3). The SAC does not allege when the events underlying this claim occurred. SAC ¶115. However, this claim is barred as it relates to events that occurred more than one (1) year ago, especially in 1998-1999.

**IX.      Count *Sixteen:* Promissory Estoppel/Detrimental Reliance Fails To State A Cause Of Action.**

A claim for promissory estoppel requires, *inter alia*, a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an

injury to the party to whom the promise was made by reason of the reliance. *Cyberchron Corp. v. Calldata Sys. Dev., Inc.,* 47 F.3d 39, 44 (2d Cir.1995).

Detrimental reliance requires "good-faith reliance, and a change of position," which is not cognizable unless the change is irrevocable, "or the status quo can[not] be restored, without expense." *Holm v. C.M.P. Sheet Metal, Inc.,* 455 N.Y.S.2d 429, 433 (4th Dep't 1982)(citation omitted); *Securities Settlement Corporation,* 772 F.Supp. 770 (S.D.N.Y. 1991).

Plaintiff has voluntarily dismissed a promissory estoppel claim against Ted Turner, recognizing that the Statute of Frauds bars any claim based upon an oral promise to provide medical care and living expenses for life. *See* p.2, *infra.* Similarly, Count 16, based upon a similar alleged promise by Mr. and Mrs. Lu, is barred by the Statute of Frauds.

Moreover, such a vague and general promise is insufficient to support a promissory estoppel claim. *In re Vasu,* 2001 U.S. Dist. LEXIS 482, 19-21 (D.Conn. 2001)(vague assurances without an ascertainable term or duration were insufficient to support promissory estoppel); *Keough v. Texaco Inc.,* 1999 U.S. Dist. LEXIS 1276, at *25 (S.D.N.Y. 1999)("vague assurances do not suffice"); *Yedvarb v. Yedvarb,* 237 A.D.2d 433 (2nd Dep't 1997)(rejecting vague assurances that defendant would provide lifetime support for plaintiff).

In addition, the promissory estoppel claim is barred by the six (6) year statute of limitations, insofar as it is based upon alleged promises regarding the Fund. The SAC states that "[Mr. and Mrs. Liu] refused to turn over the fund money to [her] *for more than 10 years.*" FAC ¶40; *see* SAC ¶43 (emphasis added). These allegations are well outside the limitations period.

Furthermore, the SAC contains only a conclusory pleading of reliance. SAC ¶126. It states that Sang Lan "reasonably and foreseeably relied" but presents no supporting factual allegations. Plaintiff does not allege that she changed her position in response to the alleged

promises, much less that she made any irrevocable change. Such a pleading fails. *Shamonsky v. St. Luke's Sch. of Nursing*, 2008 U.S. Dist. LEXIS 20426 (E.D.Pa. 2008), *citing Jersey Construction, Inc. v. Pennoni Associates, Inc.*, 1993 U.S. Dist. LEXIS 2018, *9-10 (E.D.Pa. 1993)(promissory estoppel cannot rely upon unsupported, conclusory allegations of reliance upon a "broad and vague implied promise")); *see also In re Vasu*, 2001 U.S. Dist. LEXIS 482, 19-21 (D.Conn. 2001)(N.Y. law)("conclusory claim of detrimental reliance, unsupported by any factual allegations of actual reliance" fails "to support a claim for promissory estoppel.").

## X.    Counts *Seventeen*: Intentional Tort/Battery, And *Nineteen*: Battery/Sexual Harassment Both Fail To State A Cause Of Action.

At the outset, the SAC alleges that the battery took place approximately thirteen (13) years ago. SAC ¶¶37-39. *See also* Lu Affidavit. Thus, the alleged battery took place far outside the one (1) year statute of limitations for battery set out in NY CPLR § 215(3).

Second, the Lu Affidavit, the only support for these claims, actually fails to support her allegations. Mr. Lu states that, "I do not know whether [Mr. Sie assaulted Plaintiff]." *See* Lu Affidavit ¶4. Moreover, Mr. Lu states that, "[she] could not even notice [any battery]," due to her condition. *See* Lu Affidavit ¶4.

Third, the SAC does not specifically allege that the physical contact was without Sang Lan's consent, and thus, it fails to allege an essential element of the battery claim. *Cohen v. Davis*, 926 F.Supp. 399 (S.D.N.Y. 1996), *citing, inter alia, United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993).

Fourth, the damages claim for alleged diminution in public image, lost advertising, and lost job opportunities should be dismissed. SAC ¶133. There is no explanation as to how the alleged battery caused these harms. If anything, any loss in reputation was caused by Sang Lan's

husband/boyfriend/fiancée/agent, Mr. Huang, and by Attorney Hai in their public dissemination of these allegations, not by the alleged battery itself.

Fifth, allegations that lump "Defendants" together as a group are improper. Here, the battery count is pled against a group of "defendants," including corporate defendants who cannot commit the tort of battery. It is thus impossible for a particular defendant to know with what he or she is being charged. SAC ¶¶130-34.

Lastly, the sexual harassment claim fails because a private action for sexual harassment, under N.Y.S. Executive Law § 296, requires that a plaintiff establish harassment in the employment context. *Pace v. Ogden Services Corp.*, 257 A.D.2d 101 (3rd Dep't 1999). Here, the claim must be dismissed because the alleged conduct did not occur in an employment setting.

## XI.   Count *Eighteen*: Negligence Fails To State A Cause Of Action.

Sang Lan's negligence claim (SAC ¶¶135-140) contains no specific factual allegations, but merely attempts to incorporate the entirety of the SAC. The SAC wholly fails to identify the common law and/or contractual duty allegedly owed by each Defendant to her, or how those duties were breached. Moreover, the SAC also fails to specify the injury that she allegedly sustained as a proximate cause of each respective defendant's misconduct. Such a pleading should be dismissed. *Ruffolo v. Oppenheimer & Co.*, 1991 U.S. Dist. LEXIS 1485, 4-5 (S.D.N.Y. 1991)(rejecting "conclusory, boiler-plate allegations" of negligence).

Moreover, the SOL for negligence is three (3) years. NY CPLR § 214-c. Only plaintiff's defamation claims fall within the 3 year limitation period. However, they do not constitute negligence because, by 2011, when the "defamation" occurred, the Defendants, who were

litigation adversaries, did not owe plaintiff any duty.  In the absence of duty, the negligence claim fails. *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402 (1985).

Lastly, since only her defamation allegations fall within the three year period, any other tort claims fail for the same reasons that the defamation claims fail.  Plaintiff cannot circumvent the specific requirements of defamation by disguising a dismissed defamation claim as another tort. *Edwards v. Great N. Ins. Co.*, 2006 U.S. Dist. LEXIS 50683 (E.D.N.Y. 2006)(*citing Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

**XII.**   **Counts *Twenty*: Intentional Infliction Of Emotional Distress, And *Twenty-One*: Negligent/Reckless Infliction Of Emotional Distress Fail to State A Cause Of Action.**

Inasmuch as the Twentieth and Twenty-First Counts are allegedly based upon Defendants' purported "war on media," which is the same factual basis as the Eleventh Count for Defamation, these claims should be dismissed because courts reject efforts to re-package defamation claims as other torts and have specifically rejected efforts to allege an intentional infliction claim based upon the facts supporting a failed defamation count. *Edwards v. Great N. Ins. Co.*, 2006 U.S. Dist. LEXIS 50683 (E.D.N.Y. 2006). *See* SAC ¶¶151, 156.

Second, both Counts fail because the alleged defamation was not extreme and outrageous conduct.  In fact, the intentional infliction allegedly served to "prevent, discourage, intimidate plaintiff from taking action to exercise her rights" (*i.e.*, prevented her from filing suit).  SAC ¶¶145, 150.  This allegation fails.  *See Margrabe, supra.,* (rejecting intentional infliction claim that the defendant "pressur[ed] Plaintiff to abandon her counterclaims").

The conduct here does not rise to the level of intentional infliction.  Indeed, both Counts are largely based on conclusory allegations that "Defendants conducts have caused sever [sic] emotional distress to plaintiff, plaintiff's family members."  SAC ¶¶152, 157.  The courts reject

such conclusory pleadings. *Leung v. New York Univ.*, 2010 U.S. Dist. LEXIS 33265, 27-28

(S.D.N.Y. 2010)(rejecting conclusory pleading that defendants' conduct caused plaintiff to be

"degraded, ridiculed and exposed" and deprived of "their good name and reputation").

Third, "a negligent infliction of emotional distress claim" requires a breach "which either

unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her

own safety." *Edwards, supra.; Mortise v. U.S.*, 102 F.3d 693, 696 (2d Cir. 1996). The negligent

infliction claim here is based entirely upon the alleged defamation. SAC ¶156. Thus, it presents

no issue relating to physical safety, and therefore, must be dismissed.

Furthermore, Sang Lan fails to plead special damages.

Dated: New York, New York
      June 18, 2011

THE LAW FIRM OF HUGH H. MO, P.C.

_____
Hugh H. Mo (HM 0425)
Franklin K. Chiu (FC 0354)

225 Broadway, Suite 2702
New York, New York 10007
(212) 385-1500
(212) 385-1870 (f)

*Attorneys for Defendants*
*Hugh Mo Pro Se,*
*Kao Sung Li i/s/h/a K.S. Liu*
*Gina Hiu-Hung Liu i/s/h/a K.S Gina Hiu-Hung and*
*Winston Sie f/i/s/h/a Wilson Xue*

Vincent T. Chang, Esq.
*Of Counsel*

TO:   Law Office of Ming Hai, PC
       36-09 Main Street, Suite 7B
       Flushing, New York 11354
       (718) 445-9111
       (718) 445-5424 (f)