UNITED STATES DISTRICT COURT                              **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
SANG LAN,                              :  11 Civ. 2870 (LBS) (JCF)
                                       :
              Plaintiff,               :       REPORT AND
                                       :       RECOMMENDATION
                                       :
       - against -                     :
                                       :
AOL TIME WARNER, INC., THE UNITED      :
STATES GYMNASTICS FEDERATION d/b/a     :
USA GYMNASTICS, TIG INSURANCE          :
COMPANY, TIG SPECIALTY INSURANCE       :
SOLUTIONS, RIVERSTONE CLAIMS           :
MANAGEMENT, LLC, TED TURNER, K.S.      :
LIU, GINA LIU AKA K.S. GINA HIU-       :
HUNG, WINSTON SIE, HUGH MO, JOHN       :
DOES AND JANE DOES #1 THROUGH 15,      :
INCLUSIVE,                             :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEONARD B. SAND, U.S.D.J.:

       This is an action arising, in part, out of a dispute over the
defendants' alleged mishandling of funds set aside to support the
plaintiff, Sang Lan, after she sustained a spinal injury in a
gymnastics competition in 1998.  The plaintiff also alleges that
persons who housed her after she was injured abused her and that
their counsel has defamed her in Chinese-language media during the
course of this litigation.

       Currently there are four motions pending in this case.  The

defendants[1] have moved to dismiss both for lack of subject matter jurisdiction and for failure to state a claim.  In response, the plaintiff has moved for leave to amend her complaint a third time. The defendants have further moved to sanction Ms. Lan and her former attorney, Ming Hai, pursuant to Rule 11 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the plaintiff's motion to amend should be granted,[2] the defendants' motion to dismiss for lack of subject matter jurisdiction should be denied, the defendants' motion to dismiss for failure to state a claim should be granted in part and denied in part, and decision on the motion for sanctions should be deferred until it is clear to what extent the claims that survive this round of motions are nonetheless sanctionable.

Background[3]

---

[1] The moving defendants are K.S. Liu, Gina Liu, and Hugh Mo. The other parties originally named as defendants have all been voluntarily dismissed from the action.  Ted Turner was dismissed on May 24, 2011, and AOL Time Warner, Inc. on June 29, 2011.  The remainder of the corporate defendants were dismissed pursuant to a settlement agreement on July 13, 2011.

[2] A motion to amend is a non-dispositive matter that I would normally determine in a memorandum and order.  However, because the motion here is intertwined with the pending dispositive motions, I am addressing all of them in the form of a report and recommendation.

[3] Because I am recommending that the plaintiff's pending motion to amend be granted, citations are generally to her proposed Third Amended Complaint.

Ms. Lan is a former Chinese National Gymnastic Champion who, in 1998, was selected to be a member of the Chinese team competing in the fourth Goodwill Games, held in New York City.[4]   (Third Amended Complaint ("Third Amend. Compl."), ¶¶ 14, 15).  On July 21, 1998, Ms. Lan fell during warm-ups for the final vault event, suffering two fractured vertebrae and serious injury to her spinal cord.  (Third Amend. Compl., ¶¶ 16, 17).  She has been paralyzed from the mid-chest down ever since.  (Third Amend. Compl., ¶ 17).

The day after her accident, Ms. Lan was placed in the care of defendants K.S. and Gina Liu at their residence in Westchester, New York.  (Third Amend Compl., ¶ 20, 21).  According to Ms. Lan, the Lius are either officials of or business partners with the Chinese Gymnastics Association and various other Chinese sports-related organizations.  (Third Amend. Compl., ¶ 21).  She stayed with them for about ten months before returning to China.  (Second Amended Complaint ("Second Amend. Compl."), ¶ 23).  During that time, Ms. Lan claims that the Lius were appointed, without her consent or that of her parents, to be her legal guardians by the Chinese Gymnastic Association in order "to take an air tight control of everything Ms. Lan may do or speak."  (Third Amend. Compl., ¶ 20).

---

[4] Now defunct, the Goodwill Games were an international sports competition founded by Ted Turner in response to the United States' boycott of the Moscow Olympics.  (Third Amend. Compl., ¶ 15).

3

Ms. Lan alleges that during her stay, the Lius' son, Winston Sie, sexually assaulted her.[5] (Third Amend. Compl., ¶¶ 33, 34, 35, 36).

Around this time, Mr. Liu, Ms. Liu, and their attorney, defendant Hugh Mo, all participated in the planning, organization, and operation of a charity called the Good Will for Sang Lan Fund (the "Good Will Fund"), intended to support Ms. Lan and pay her medical costs. (Third Amend. Compl., ¶ 32). Mr. and Ms. Liu were the managers of the Good Will Fund from its creation in 1998 until 2008, when they transferred "a small portion of the funds" to Ms. Lan. (Third Amend. Compl., ¶ 32).[6] During that period, Ms. Lan alleges that the Lius used her name and likeness for advertising purposes without her consent and misappropriated or mishandled

---

[5] Ms. Lan claims in passing that Mr. Liu also participated in the assault (Third Amend. Compl., ¶ 33), but she dropped all causes of action against Mr. Liu based on that allegation from the Third Amended Complaint, along with her claims against Mr. Sie.

[6] It is not altogether clear whether the plaintiff means to allege that she received only a portion of the Good Will Fund's remaining principal of approximately $140,000 in 2008 or that she believes the $140,000 to be a small portion of a much larger principal never given to her. (Account Statement for Goodwill for Sang Lan Fund dated June 10, 2008, attached as Exh. A to Plaintiff's Affidavit in Opposition to Defendant's Motion dated Jul. 21, 2011 ("Lan Aff.")). The latter seems more likely given that elsewhere in the complaint, Ms. Lan alleges that "[t]he lost value of the fund is estimated at over ten million dollars." (Third Amend. Compl., ¶ 59). To the extent that any ambiguity remains, the plaintiff will have the opportunity to resolve it if, as discussed below, she re-pleads her claims for unjust enrichment, conversion, and breach of fiduciary duty.

money from the Good Will Fund.  (Third Amend. Compl., ¶¶ 28, 32).

Following her return to China, Ms. Lan claims that the Lius controlled her contact with her American doctors, her communication with insurance companies, and her choice of medical treatments, and that they actively attempted to prevent her taking legal action that might embarrass the Chinese Gymnastic Association.  (Third Amend. Compl., ¶ 40).  The basis of their alleged control was their position as managers of the Good Will Fund.  (Third Amend. Compl., ¶ 40).  In particular, the plaintiff claims that beginning in January of 2011, the defendants "started a propaganda campaign to smear plaintiff's good name on the internet, media, televisions, news reports, and others," apparently as preemptive retaliation against her for filing this suit.  (Third Amend. Compl., ¶ 30).  This purported campaign seems to have consisted of online articles or comments written by the Lius plus anonymous comments left by readers.  (Third Amend. Compl., ¶ 30).

Ms. Lan's initial complaint was filed on April 28, 2011.  On May 5 and 6, 2011, Mr. Mo told Chinese language media that the plaintiff had lied about being sexually harassed and that all of her claims were frivolous.  (Third Amend. Comp., ¶ 43).  After Mr. Mo's statements were published by QQ Sports, a Chinese sports website, a number of people posted comments online that ranged from critical of Ms. Lan to viciously insulting.  (Third Amend. Comp.,

¶¶ 43, 44).   When interviewed about the online commentary on May 11, Mr. Mo responded by calling Ms. Lan a "biting dog" and referring to this case as "the farmer and snake story." (Third Amend. Compl., ¶ 45).   Further anonymous, derogatory online comments followed.  (Third Amend. Compl., ¶ 45).

Two days later, on May 13, 2011, the plaintiff filed her First Amended Complaint, which added claims against Mr. Mo for breach of fiduciary duty, defamation, and a variety of other torts, as well as a claim against Mr. Sie, who was identified as a Hong Kong citizen, for sexual harassment.[7]  The First Amended Complaint also added fifteen John and Jane Doe defendants, apparently in an attempt to sue individual online commenters for their abusive remarks.  In total, the First Amended Complaint contained twenty-one alleged causes of action and sought a $100 million recovery on each, for a total of $2.1 billion in damages.  The plaintiff then moved to amend for the first time on June 9, 2011. Her Second Amended Complaint replaced her claim for $100 million in damages per cause of action with a claim for "an amount of damages to be proven at trial," omitted any reference to Mr. Sie's citizenship, added claims against Mr. Sie for intentional and negligent

---

[7] The First Amended Complaint referred to Mr. Sie as "Wilson Xue," but that was a transliteration error.  (Declaration of Ming Hai dated June 8, 2011 ("Hai Decl."), ¶ 6.

infliction of emotional distress, and added details regarding Mr. Sie's alleged sexual harassment as well as about Mr. Mo's interactions with Ms. Lan in the immediate aftermath of her accident.

On June 18, 2011, the defendants moved to dismiss the entire case for failure to state a claim.  The same day, they separately moved to sanction both Ms. Lan and her attorney, Ming Hai, pursuant to Rule 11 of the Federal Rules of Civil Procedure.  Six days later, on June 24, the defendants also moved to dismiss for lack of subject matter jurisdiction.  In response to the motion to dismiss for lack of subject matter jurisdiction, the plaintiff voluntarily dismissed her claims against Mr. Sie on June 28, 2011 and then on July 6, 2011 moved to amend the complaint a second time.  In addition to reflecting the dismissal of Mr. Sie and the corporate defendants from the case, the proposed Third Amended Complaint alleges ten causes of action against the individual defendants, restores the specific allegation of $100 million per cause of action in damages, provides further factual allegations with regard to many of the causes of action, and drops several of the plaintiff's claims against the remaining defendants.[8]

---

[8] With all of these motions fully submitted and pending, Mr. Hai moved to withdraw as Ms. Lan's counsel.  I granted that motion on October 31, 2011.

Discussion

    A. <u>Motion to Amend</u>

    A motion to amend the complaint is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2); <u>see also</u> <u>Oneida Indian Nation of New York v. City of Sherill</u>, 337 F.3d 139, 168 (2d Cir. 2003); <u>rev'd on other grounds</u>, 544 U.S. 197 (2005).  Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend," <u>John Hancock Mutual Life Insurance Co. v. Amerford International Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994)(citation omitted), and for the proper reasons, a court may deny permission to amend in whole or in part.  <u>See</u> <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998).  In discussing the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

    Although the defendants oppose the current motion to amend on

all of the grounds identified in <u>Foman</u> other than futility, amendment should be granted.  The Third Amended Complaint no longer names the various dismissed defendants and eliminates all claims against them.  It also fleshes out the plaintiff's factual allegations and eliminates several claims against the remaining defendants that were clearly improperly pled.  The Third Amended Complaint simplifies and clarifies the pleadings while attempting to cure the deficiencies in them.  None of this suggests bad faith, undue delay, or dilatory motive on the part of the plaintiff. Similarly, there is no evidence that allowing amendment will cause any prejudice to the defendants, much less undue prejudice.  To the extent that the plaintiff has repeatedly failed to cure deficiencies in the pleadings, any deficiently-pled claims are subject to dismissal under Rule 12(b)(6), as discussed below.

Moreover, correspondence from Mr. Hai to defense counsel makes clear that he proffered the Third Amended Complaint in an attempt to take advantage of twenty-one day safe-harbor provision of Rule 11.  (Letter of Ming Hai dated July 8, 2011 attached as Exh. B to Affirmation by Plaintiff's Attorney in Opposition to Defendants' Rule 11 Motion for Sanctions dated Jul. 28, 2011 ("Hai Aff.")). The defendants cannot on the one hand invite the plaintiffs to take advantage of Rule 11's twenty-one day safe harbor and on the other hand claim that the plaintiff's attempt take advantage of that

provision is evidence of bad faith or dilatory motive.

B. Subject Matter Jurisdiction

An objection that a court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Id. at 506 (quoting former Fed. R. Civ. P. 12(h)(3)). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (quoting Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008)) (internal quotation marks omitted). This burden must be met by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1) on the pleadings, where no evidentiary hearings have been held, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers, 558 F.3d at 143 (quoting Sharkey, 541 F.3d at 83). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Sharkey, 541 F.3d at 83 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

10

### 1. "Arising Under" Jurisdiction

"Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Arbaugh, 546 U.S. at 505 (quoting 28 U.S.C. § 1331). Although the Third Amended Complaint asserts jurisdiction pursuant to several federal statutes as well as the Fifth and Fourteenth Amendments to the United States Constitution, the plaintiff's claims against the remaining defendants depend entirely on New York state statutes or common law. As a result, there is no basis for arising under jurisdiction.

### 2. Diversity Jurisdiction

"Federal courts have original jurisdiction over questions of state law when the dispute is between citizens of different states and the amount in controversy exceeds $75,000." Jordan v. Verizon Corp., No. 08 Civ. 6414, 2008 WL 5209989, at *4 (S.D.N.Y. Dec. 10, 2008) (citing 28 U.S.C. § 1332(a)). The defendants argue both that the plaintiff has failed to fulfil the amount in controversy requirement and that there is not complete diversity. I address each issue in turn.

### i. Amount in Controversy

The amount of damages alleged by the plaintiff controls whether the amount in controversy requirement has been met unless

it appears legally certain that the claim is actually for less than $75,000. Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)).   Additionally, a plaintiff may join all claims that it has against a single defendant, and to the extent that joinder is proper, the value of those claims may be aggregated for the purpose of reaching the $75,000 threshold. See Wolde-Meskel v. Vocational Instruction Project Community Services, Inc., 166 F.3d 59, 62 (2d Cir. 1999) (citing Snyder v. Harris, 394 U.S. 332, 335 (1969)).   Although the damage allegations in the plaintiff's complaint are bizarre, it is clear that if the plaintiff were to recover the aggregate of her claims against any of the named defendants, the amount of recovery potentially could exceed $75,000.

ii. Complete Diversity

For a federal court to exercise diversity jurisdiction, there must be complete diversity, such that all parties on one side of the controversy must be of diverse citizenship from those on the other side.   Colon v. Bernabe, No. 07 Civ. 3369, 2007 WL 2068093, at *2-3 (S.D.N.Y. 2007) (quoting 32A Am. Jur. 2d Federal Courts § 636).   Citizens of foreign states are diverse from all United States residents for the purpose of diversity jurisdiction. See 28 U.S.C. § 1332(a)(2); Kato v. County of Westchester, 927 F. Supp.

714, 715-16 (S.D.N.Y. 1996).  Because the plaintiff has voluntarily dismissed her claims against Mr. Sie, a Chinese citizen, complete diversity exists between Ms. Lan, a Chinese citizen, and the remaining named defendants, who are all citizens of New York.

    C. <u>Failure to State a Claim</u>

        1. <u>Unjust Enrichment and Conversion</u>

To state a claim for unjust enrichment in New York, a plaintiff must allege that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution.  <u>See</u> <u>Kaye v. Grossman</u>, 202 F.3d 611, 616 (2d Cir. 2000).  Similarly, conversion is "'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'"  <u>Thyroff v. Nationwide Mutual Insurance Co.</u>, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting <u>Vigilant Insurance Co. of America v. Housing Authority</u>, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347 (1995)).

The statute of limitations for unjust enrichment is six years. N.Y. Civil Practice Law and Rules ("CPLR") § 213. The statute of limitations for a claim of conversion is three years, and begins to accrue on the date that the conversion occurs.  CPLR § 214(3); <u>Daisley v. FedEx Ground Package System, Inc.</u>, 376 Fed. Appx. 80, 81 (2d Cir. 2010).  Although Ms. Lan's injury occurred in 1998, her claims for unjust enrichment and conversion fall within the

13

respective statutes of limitations to the extent that they pertain to the defendants' alleged remission to her in late 2008 of only a fraction of the Good Will Fund's principal, or in the case of unjust enrichment, to any misappropriation of funds beginning in 2005 or later.   To the extent that her claims pertain to the defendants' alleged misappropriation of funds beginning in 1998, they may be barred by the statute of limitation.  At this stage, it is not necessary to address which acts of unjust enrichment or conversion are time-barred because the plaintiff has not yet established a plausible claim that the defendants misappropriated or withheld any funds from her.

To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).  Ms. Lan has provided precisely the opposite; her exhibits indicate that the Good Will Fund's principal consisted of approximately $170,000 in 1999 and $140,000 when the defendants turned it over to her in 2008.  (Third Amend Compl., ¶ 32; Account Statement for Goodwill for Sang Lan Fund dated June 10, 2008, attached as Exh. A Lan Aff.; Letter of Gina Liu dated June 5, 1999, attached as Exh. H to Lan Aff.).  That the fund's principal amounted to $170,000 in 1999, when her injury was recent and donations from sympathetic supporters most likely, undermines her

14

claim that the fund ever contained millions of dollars.  With regard to her claim that the defendants transferred less than the full value of the fund to her, it is hardly surprising that a fund from which monthly payments were drawn for at least five years, from 1998 to 2003, would see a decrease in principal.  Because Ms. Lan's theory that the defendants withheld any portion of the Good Will Fund, much less her allegation that the withheld portion exceeds $10 million, is implausible in light of her own evidence, her claims for unjust enrichment and conversion should be dismissed with leave to re-plead.

### 3. Breach of Fiduciary Duty

The elements of a New York claim for breach of fiduciary duty are that a breach by a fiduciary of obligations to another occurred, that the defendant knowingly induced or participated in the breach, and that the plaintiff suffered damages as a result. See Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986). New York applies a three-year statute of limitations to claims for breach of fiduciary duty that, like Ms. Lan's claim, seek monetary relief.  CPLR § 214(4); Kaufman v. Cohen, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157, 164 (1st Dep't 2003).  The plaintiff has identified ten purported breaches of fiduciary obligations by the defendants:

> (1) failing to advise Ms. Lan of her right to litigate her disputes[;] (2) failing to sue on her behalf; (3) publicly defaming her in an effort to intimidate and

> threaten Ms. Lan from bringing a lawsuit; (4) failing to
> disclose their conflict of interest between Ms. Lan and
> the Chinese Gymnastic Association; (5) failing to obtain
> her consent to use her image, name and likeness in their
> business activities, advertisements; (6) failing and/or
> preventing Ms. Lan from speaking publicly about her
> accident and/or lodging complaints against those that are
> liable for her injuries; (7) publicly declaring that Ms.
> Lan's injuries were "100%" her fault without foundation;
> (8) publicly publishing defamatory statements online and
> elsewhere in an effort to intimidate and threaten Ms. Lan
> from bringing a lawsuit; [] (9) publishing Ms. Lan's
> private letters, mails, messages, photos of her private
> home and other privacies related to her disabilities and
> special needs online and elsewhere in an effort to
> intimidate and threaten Ms. Lan from bring[ing] a
> lawsuit; [and] (1[0]) mishandling and misappropriating
> [the] "Good Will Fund for Sang Lan" . . . .

(Third Amend. Compl., ¶ 65). The plaintiff's own evidence
indicates that the Lius did, in fact, advise her of her right to
litigate her disputes. (Translation of posting by Gina Liu to
http://www.sinovision.net, attached as Exh. E to Lan Aff.).
Moreover, to the extent that the defendants' alleged failure to
advise Ms. Lan occurred prior to 2008, the statute of limitations
has expired. Similarly, Ms. Lan's second, fourth, and sixth
allegations are all barred by the statute of limitations. The
Lius' failure to bring a suit on Ms. Lan's behalf while allegedly
acting as her guardians occurred in 1998, also the only time when
they or Mr. Mo could have exercised sufficient control over Ms. Lan
to prevent her speaking publicly or filing complaints. Ms. Lan's
third, seventh, and eighth alleged breaches attempt to recast her

claim for defamation as a breach of fiduciary duty.  However, she has failed to allege that at the time the statements at issue were made in 2011 there existed any fiduciary relationship between herself and any of the defendants.[9]  Her ninth allegation fails for the same reason.

Her fifth allegation re-packages her claim for invasion of privacy, which I address below, as a breach of fiduciary duty.  Her claim is time-barred to with regard to any unauthorized use of her name or likeness by the defendants for their own profit prior to 2008.  Similarly, because any fiduciary duty that the plaintiffs might have had to Ms. Lan ceased in 2008 when they ceased to manage the Good Will Fund, she cannot state a claim with regard to unauthorized uses subsequent to 2008.  Elsewhere in her complaint, however, the plaintiff claims that the defendants' unauthorized use of her likeness in their advertising occurred on a continuous basis until the filing of this suit.  (Third Amend. Compl., ¶ 85).  Ms. Lan claims that as a result she has suffered lost income and job opportunities.  Accepting those statements as true for purposes of this motion, to the extent that the defendants' unauthorized use of her name and likeness occurred in their capacity as managers of the

---

[9]  To the extent that the Lius may have had a fiduciary relationship with Ms. Lan, it ended in 2008 when they transferred the Good Will Fund's principal to her.

Good Will Fund, Ms. Lan has successfully stated a claim for breach of fiduciary duty with regard to unauthorized uses that occurred in 2008 while the Lius were still managing the Good Will Fund.

Finally, Ms. Lan's tenth allegation would successfully state a claim for breach of fiduciary duty if she were to provide reason to believe that the defendants ever mishandled or misappropriated the Good Will Fund.  As discussed above with regard to unjust enrichment and conversion, however, her own exhibits undermine this claim.  Thus, like those claims, Ms. Lan's claim for breach of fiduciary duty on the basis of the defendants' handling of the Good Will Fund should be dismissed with leave to re-plead.

### 4. Defamation

Defamation consists of the "twin torts" of libel and slander. Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted).  Under New York law, the elements of a cause of action for slander are:

> (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege.

Id. at 265-66 (footnotes omitted).  A cause of action for libel requires the additional element that the defamatory statement be written rather than spoken.  See DiBella v. Hopkins, 403 F.3d 102,

110 (2d Cir. 2005); Albert, 239 F.3d at 265.

Mr. Mo's allegedly defamatory statements are either not statements of fact or are protected by section 74 of the New York Civil Rights Law ("CRL"). Section 74 provides, in pertinent part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . ." CRL § 74. New York courts have extended this privilege to comments made by attorneys to the press in connection with the representation of their clients. McNally v. Yarnall, 764 F. Supp. 853, 856 (S.D.N.Y. 1991)(citing Branca v. Mayesh, 101 A.D.2d 872, 872, 476 N.Y.S.2d 187, 187 (2d Dep't 1984), and Ford v. Levinson, 90 A.D.2d 464, 465, 454 N.Y.S.2d 846, 848 (1st Dep't 1982)). This includes out of court statements that "relat[e] to the underlying litigation" and that "relate directly to a possible position to be taken by [the defendant] as a defense to [the plaintiff's] charges." McNally, 764 F. Supp. at 856; see also Procter & Gamble Co. v. Quality King Distributors, Inc., 974 F. Supp. 190, 197 (E.D.N.Y. 1997) (manufacturer held immune from defamation claim based on letter and press release stating that it had sued distributor for selling fake products). Mr. Mo's statements that Ms. Lan lied about being sexually harassed and that her suit is frivolous clearly relate to positions taken as a defense to her claims. The remainder of Mr. Mo's allegedly

19

defamatory statements are statements of opinion, not fact.  That
they employ rhetorical hyperbole does not make them actionable as
defamation.  See Mikovich v. Lorain Journal Co., 497 U.S. 1, 16-17
(1990) (citing Greenbelt Cooperative Publishing Association, Inc.
v. Bresler, 398 U.S. 6, 13-14 (1970)); Old Dominion Branch No. 496,
National Association of Letter Carriers v. Austin, 418 U.S. 264,
283-87 (1974) (plaintiff's description of defendant in a labor
dispute as a traitor who possessed rotten principles and lacked
character not basis for a defamation action); Dillon v. City of New
York, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)
("Loose, figurative or hyperbolic statements, even if deprecating
the plaintiff, are not actionable").  The plaintiff has failed to
state a claim for defamation against Mr. Mo.

The Lius' allegedly defamatory statements consist primarily of
their opinions about Ms. Lan and her motives for filing suit or of
factual statements that either appear from the record to be true or
are simply not defamatory.[10]  The sole exception is a statement the

––––––––––––––––––––

[10] A number of the allegedly defamatory statements concern Ms.
Lan's desire to move to the United States with her partner and have
a child here or to apply for political asylum here.  It is unclear
how these statements could be defamatory.  Furthermore, the
statements regarding Ms. Lan's desire to have a child in the United
States appear to be true based on e-mails from Ms. Lan's partner to
her former attorney.  (E-mail dated Feb. 14, 2011, attached as Exh.
E to Reply Affidavit of Ming Hai dated Sept. 15, 2011 ("Hai
Reply"); Email dated May 2, 2011, attached as Exh. E to Hai Reply).

plaintiff attributes to a posting from January 2011 by Mr. Liu for the Chinese website Sinovision. Ms. Lan claims that Mr. Liu falsely said that "Sang Lan is too lazy, can't get a job. I helped her to get the job at the Star TV, through my connections with high rank Chinese government officials, but she lost that job later because she didn't want to do any work." (Third Amend. Compl., ¶ 70). She alleges that as a result of Mr. Liu's various statements, including his claim that she lost a job because of laziness, she has suffered the loss of job opportunities, advertising opportunities, and various contracts. She has therefore successfully stated a claim for defamation against Mr. Liu but not Ms. Liu.

### 5. Civil Conspiracy

Under New York law, civil conspiracy simply is not a free-standing cause of action. Instead, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986) (internal citation omitted).

### 6. Prima Facie Tort

To state a claim for prima facie tort, the plaintiff must plead the following four elements: (1) the intentional infliction of harm, (2) causing special damages, (3) without excuse or

justification, (4) by an act or series of acts that would otherwise be lawful but for the defendant's disinterested malevolence.  Chen v. United States, 854 F.2d 622, 627 (2d Cir. 1988) (internal quotations omitted) (citing Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 (1984) and Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 332-333, 464 N.Y.S.2d 712, 720-21 (1983)).  Disinterested malevolence requires that "the genesis which will make a lawful act unlawful . . . be a malicious one unmixed with any other and exclusively directed to injury and damage of another."  Burns, 59 N.Y.2d at 333, 464 N.Y.S.2d at 721. Here, the plaintiff has both failed to plead any special damages and, more importantly, has alleged several motives other than disinterested malevolence for the defendants' actions, including financial gain, politically-motivated interest in controlling Ms. Lan's actions and media image, and the desire to intimidate her from filing suit.  As a result, Ms. Lan has failed to state a claim for prima facie tort.

### 7. Invasion of Privacy

Although New York has no common law right to privacy, the state recognizes a statutory right to privacy under sections 50 and 51 of the New York Civil Rights Law.  CLR §§ 50, 51; Burck v. Mars, Inc., 571 F. Supp. 2d 446, 450 (S.D.N.Y. 2008). To state a claim for violation of section 51, a plaintiff must show that the

defendant (1) used her name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without her written consent. Burck, 571 F. Supp. 2d at 451.  The statute of limitations for an invasion of privacy claim is one year.  CPLR § 215(3).  Ms. Lan has presented evidence that the defendants used her name and portrait as part of a compact disc cover without her consent, allegedly for the purpose of promoting their businesses.  (Photocopy of compact disc cover and accompanying translation, attached as Exh. F to Lan Aff.).  This is sufficient to state a plausible claim for invasion of privacy.  Moreover, Ms. Lan alleges that the defendants' use of her name and likeness continued up through 2011, bringing her claim within the statute of limitations.  (Third Amend. Compl., ¶ 85). Thus, Ms. Lan likely has successfully asserted a timely claim for invasion of privacy.

8. <u>Promissory Estoppel</u>

In New York, promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party to whom the promise was made. <u>Cyberchron Corp. v. Calldata Systems Development, Inc.</u>, 47 F.3d 39, 44 (2d Cir. 1995) (internal quotations and citations omitted).  Ms. Lan asserts that the Lius made clear and unambiguous promises, verbally and in writing, to provide for her living expenses, home,

boarding, and care at various times from 1999 until 2011.  Ms. Lan has not, however, alleged any specific terms of those promises regarding the form, frequency, or amount such support or provided any evidence of such terms.  Vague, general promises of support are insufficient to state a claim for promissory estoppel.  Yedvarb v. Yedvarb, 237 A.D.2d 433, 434, 655 N.Y.S.2d 84, 85 (2d Dep't 1997) ("[T]he alleged promise by the defendant to always take care of the plaintiff, which contained no specifics as to the form, frequency, and amount of payment, was too vague to spell out a meaningful promise.") (internal quotation marks omitted); Matter of Kittay, 118 A.D.2d 647, 647-48, 500 N.Y.S.2d 6, 6-7 (2d Dep't 1986) (alleged agreement by petitioner to serve as decedent's social and traveling companion in return for decedent promising to "take care of" and "support" petitioner for rest of her life too vague to support promissory estoppel claim).  Furthermore, to the extent that Ms. Lan's claim depends on any promises the defendants made to Ms. Lan prior to 2005, it is barred by the six-year statute of limitations.  See Schmidt v. McKay, 555 F.2d 30, 36 (2d Cir. 1977).  Accordingly, Ms. Lan's promissory estoppel claim must be dismissed.

### 9. Intentional Infliction of Emotional Distress

Under New York law, intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal

connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996).   For conduct to be considered "extreme and outrageous," it must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"   Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (1993)).   None of the defendants' alleged conduct rises to that level.   Mr. Mo's statements to the media are no more beyond all possible bounds of decency than they are defamatory, and the plaintiff has not alleged any potentially extreme and outrageous conduct by the Lius.   Finally, although many of the anonymous online comments referred to in Ms. Lan's complaint are abusive or threatening, any effect they may have had on Ms. Lan's emotional state is not attributable to the defendants, even if the comments were to qualify as extreme and outrageous.

### 10. Negligent Infliction of Emotional Distress

In order to state a claim for negligent infliction of emotional distress, a plaintiff must allege that she was owed a duty, that the defendant breached that duty, and that the plaintiff suffered emotional injury as a result.   See Green v. Leibowitz, 118 A.D.2d 756, 757, 500 N.Y.S.2d 146, 148 (2d Dep't 1986).   In

addition, the defendant's conduct must have unreasonably endangered the plaintiff's physical safety.  Id. at 757, 500 N.Y.S.2d at 148. Because Ms. Lan does not assert any danger whatsoever to her physical safety, her claim for negligent infliction of emotional distress must be dismissed.

    D. Sanctions

The defendants seek sanctions in the form of attorney's fees pursuant to Rule 11 from both Ms. Lan and Mr. Hai on the grounds (1) that the plaintiff's claims are frivolous, (2) that the plaintiff's initial motion to amend the complaint, filed on June 9, 2011, violated Rule 11, (3) that the pleadings are rife with factual and legal contentions that have no basis in fact, and (4) that Mr. Mo was added as a defendant for the improper purpose of attempting to force him to withdraw from the case.

The plaintiff's initial motion to amend the complaint plainly does not merit sanctions.[11]  Although the defendants claim that Mr. Hai's declaration in support of the motion materially misrepresented the extent of the changes in the Second Amended

---

[11] Some of the differences between the First Amended Complaint and Second Amended Complaint that the defendants argue are sanctionable in light of Mr. Hai's affirmation -- in particular the inclusion of two claims against Ted Turner in the Second Amended Complaint, even though the plaintiffs had voluntarily dismissed him from the case by that point -- appear to be attributable simply to Mr. Hai's unusually cavalier approach to writing and editing.

Complaint, that argument is baseless; even though Mr. Hai stated that "[t]he amendment is limited to defendants Hugh Mo and the Liu's [sic] only," (Hai Decl., ¶ 5), the context of the declaration makes clear that he meant that statement to include Mr. Sie, the Lius' son. Thus the fact that the Second Amended Complaint adds two causes of action against Mr. Sie is not a misrepresentation at all. Moreover, although Mr. Hai did affirm that one purpose of the amendment was to conform the pleadings to the attached affidavit of an alleged witness to Mr. Sie's harassment of Ms. Lan, he did not affirm that this was its sole purpose. Thus, the declaration's failure to discuss his inclusion of numerous other changes in the complaint was not a material misrepresentation.

Similarly, the defendants' claim that the pleadings are sanctionable because they contain factual and legal contentions lacking a basis in fact is without merit. The defendants' primary objection appears to be that the First Amended Complaint identified Mr. Sie as having renounced his U.S. citizenship and accepted Hong Kong citizenship, but that the Second Amended Complaint alleged Mr. Sie to be a New York citizen. The defendants are correct that Mr. Sie is not a New York citizen, but Ms. Lan voluntarily dismissed her claim against him on July 6, 2011, seventeen days after she was served with the defendants' Rule 11 motion and well within the twenty-one day safe harbor period. Fed. R. Civ. P. 11(c)(2). This

27

precludes an award of sanctions with respect to the withdrawn claim, as the advisory committee notes to the 1993 amendments to Rule 11 make plain:  "[u]nder the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect the party against a motion for sanctions."  Fed. R. Civ. P. 11(c) advisory committee's note.

With regard to the defendants' most serious ground for sanctions, some of the plaintiff's claims are clearly frivolous insofar as they are based on causes of action that do not exist under New York law or completely fail to allege even the basic elements of the relevant cause of action.  These include the plaintiff's claims for civil conspiracy, defamation by Mr. Mo, prima facie tort, intentional infliction of emotional distress, and negligent infliction of emotional distress, as well as several of the alleged grounds for breach of fiduciary duty.

The remainder of the plaintiff's causes of action either state a claim or, even if they are subject to dismissal, are not clearly frivolous.  It may well be that subsequent developments in this case will ultimately reveal these claims to be frivolous given Mr. Hai's conduct throughout this case and the manifest meritlessness of several of the plaintiff's claims.  Nonetheless it remains

possible that some of the plaintiff's claims will prove non-frivolous.

Because the defendants seek sanctions in the form of attorneys' fees, it will be necessary to parse out which, if any, of the plaintiff's claims are non-sanctionable in order to determine what portion of the defendants' total fees should be awarded. In the interest of judicial economy, resolution of the defendants' motion for sanctions should therefore be deferred until the issue of whether all or merely some of the plaintiff's claims are sanctionable has a more conclusive answer.[12]

Conclusion

For the reasons set forth above, the plaintiff's motion to amend the complaint (Docket no. 43) should be granted. The defendants' motion to dismiss for lack of subject matter jurisdiction (Docket no. 34) should be denied. The defendants' motion to dismiss for failure to state a claim (Docket no. 28) should be granted with regard to the plaintiff's claims for defamation against Mr. Mo and Ms. Liu, civil conspiracy, prima

---

[12] Mr. Hai, in turn, seeks sanctions against Mr. Mo based on Mr. Mo's refusal to pay $500 to settle the defamation claim and Mr. Mo's allegedly improper motive in bringing a Rule 11 motion in the first place. His application must be denied both because Mr. Mo's refusal to settle a frivolous claim against himself is plainly not sanctionable and because there is no evidence that Mr. Mo had any improper motive for filing his Rule 11 motion.

facie tort, promissory estoppel, intentional infliction of emotional distress, negligent infliction of emotional distress, and eight of her ten alleged breaches of fiduciary duty. The motion should granted with leave for the plaintiff to re-plead with regard to her claims for unjust enrichment, conversion, and breach of fiduciary duty based on misappropriation of funds. The motion should be denied with respect to the plaintiff's claim for breach of fiduciary duty based on the defendants' unauthorized use of her likeness in 2008, for invasion of privacy, and for defamation against Mr. Liu. The defendants' motion for sanctions (Docket no. 47) should be denied without prejudice to being reviewed when the extent to which sanctions are proper becomes clear.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Leonard B. Sand, Room 1650, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       November 21, 2011

Copies mailed this date to:

Ming Hai, Esq.
Law Office of Ming Hai
36-09 Main Street, Suite 7B
Flushing, New York  11354

Sang Lan
835 3rd Avenue
Franklin Square, New York  11010

Hugh Hu Mo, Esq.
The Law Firm of Hugh H. Mo, PC
225 Broadway, Suite 2702
New York, New York  10007

31