UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANG LAN,<br><br>                                Plaintiff,<br><br>v.<br><br>Time Warner, Inc., Kao-Sung Liu a/k/a K.S. Liu, Gina Hui-Hung Liu a/k/a Hui-Hung Sie a/k/a Gina Liu, individually and as trustees or managers of Goodwill For Sang Lan Fund, Hugh Hu Mo, Does #1-30, unknown defendants, jointly and severally,<br><br>                             Defendants. | Civil Action Case: 1:11-CV-02870-LBS-CJF<br><br><br>Plaintiff Demands Trial By Jury<br>As To All Counts Triable by Jury |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TIME WARNER INC.'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

Dated: February 15, 2013

X. Bing Xu, Esquire (BX8888)
Attorney for Plaintiff
5705 Hansel Avenue
Orlando, Florida 32809
(407)851-1000
bing@binglawfirm.com

Attorney for Plaintiff

## **Table of Content**

**Table of Content**................................................................................................ i

**Table of Authorities** ...................................................................................... ii

I.   BACKGROUND ......................................................................................... 1

II.  APPLICABLE LAWS AND STANDARDS OF REVIEW................................ 4

III. ARGUMENT ............................................................................................... 5

A.  Time Warner's Motion To Dismiss Count One (Breach Of Contract) Should Be Denied Because Plaintiff's Contract Claim Is Based On Induced Forbearance and Should Be Enforced By The Doctrine Of Part Performance And Exception Of Statute Of Fraud. Action Was Timely Because It Was Commenced After Breach Within The Statute Of Limitations Or Tolling Of Statute Of Limitations By Concealment And Foreseeable Reliance ........................................................... 5

1.  Oral or Partial Written Contract........................................................... 5

2.  Implied Contract .................................................................................. 6

3.  Statute of Fraud.................................................................................... 8

4.  Contract Terms..................................................................................... 9

B.  Time Warner's Motion To Dismiss Count Two (Promissory Estoppel) Should Be Denied Because Plaintiff's Claim Is Supported By Allegations Of Time Warner's Clear And Unambiguous Promise; Plaintiff's Reasonable And Foreseeable Reliance Induced By Time Warner. Plaintiff Suffered Unconscionable Injury And Injustice Cannot Be Avoided If Time Warner's Promise Is Not Enforced ............... 12

C.  Time Warner's Motion To Dismiss Count Three (Undertaking And Reliance) Should Be Denied Because Events And Conduct Of Time Warner When Viewed In Totality Did Place Plaintiff In A Worse Position And Plaintiff's Reliance Is Justified. ................................................................................................... 15

1.  Statute of Limitations........................................................................ 16

2.  Breach of Contract ............................................................................ 17

3.  Fraudulent Concealment Or Equitable Estoppel................................ 18

D.  Motion to Dismiss Should Be Denied Because Plaintiff Is Entitled To Plead Alternative Claims At This Stage Of The Litigation .................................... 24

IV. CONCLUSIONS ....................................................................................... 24

## Table of Authorities

Cases

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) ......................... 12

*Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 1949 (2009) .................................................... 4

*Bailey v. Glover*, 88 US 342, 21 Wall 342, 22 L Ed 636 (1875) .................................................. 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007) ........... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ...................................................................... 5

*Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)............................ 5

*City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986).................... 4

*Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) ........................................................................ 5

*Cosmocom, Inc. v. Marconi Communications Int'l Ltd.*, 261 F. Supp.2d 179, 187
   (E.D.N.Y. 2003)........................................................................................................................ 24

*Cyberchron Corp. v Calldata System Development, Inc*. 47 F.3d 39 (2d Cir. 1995) ............. 12, 14

*Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir.1993) ......................................................................... 23

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2D 1081 (2007) ................. 4

*Express Industries and Terminal Corp. v. New York State Department Of Transportation*,
   693 N.Y.S.2d 857 (1999)...................................................................................................... 7, 11

*Florence v Goldberg*, 44 N.Y.2d 189, 375 N.E.2d 763 (1978) ................................................... 15

*Gross v. Vogel*, 437 N.Y.S.2d 431, 432 (1981) ............................................................................ 8

*Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d Cir. 1994) ............................................................ 5

*Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 2009-1 Trade Cas.
   (CCH) ¶ 76627 (S.D.N.Y. 2009) ............................................................................................ 20

*Hoffman v. Red Owl Stores, Inc.*, 26 WIS.2d 683, 133 N.W.2d 267 (1965) ............................... 12

*Jakacic v. Jakacic*, 279 A.D.2d at 551, 719 N.Y.S.2d 675.......................................................... 17

*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) ........................................................................ 4

*Louros v. Cyr*, 175 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) ........................................................ 24

*Lyons v. Quandt*, 91 A.D.2d 709, 710, 457 N.Y.S.2d 615) ........................................................ 18

*Marketing Specialists, Inc. v. Bruni*, 129 F.R.D. 35, 39 (W.D. N.Y. 1989) aff'd, 923 F.2d
   843 (2d Cir. 1990) .................................................................................................................... 6

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) .............................................................. 4

*Matter of Boice*, 640 N.Y.S.2d 681, 682 (3d Dep't 1996)............................................. 6

*Merrick v. New York Subways Advertising Co.*, 178 N.Y.S.2d 814 (Sup 1958) ............................ 6

*Messner Vetere Berger McNamee Schmetterer Euro RSCG*, Inc., 689 N.Y.S.2d 674 (1999) ............................................................................. 8

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993)............................................. 4

*Nallan v. Helsey-Spear, Inc.*, 50 N.Y.2d 507, 407 N.E.2d 451 (1980) ........................................ 15

*North American Communications, Inc. v. InfoPrint Solutions Co.*, LLC, 817 F. Supp. 2d 642 (W.D. Pa. 2011) ................................................. 20

*Panish v. Panish*, 24 A.D.3d 642, 643, 808 N.Y.S.2d 325........................................... 18

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities LLC*, 568 F.3d 374, 382-383 (2nd Cir. 2009) ................................. 4

*Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) ................................ 23

Raffaele v. Designers Break, Inc., 750 F. Supp. 611, 612 (S.D.N.Y. 1990) ..................... 1, 5

*Rafter v. Liddle*, 704 F. Supp. 2d 370 (S.D. N.Y. 2010)..................................... 19

*Robert S. Nusinov, Inc. v. Principal Mut. Life Ins. Co.*, 80 F. Supp. 2d 101, 107 (W.D.N.Y. 2000), aff'd, 229 F.3d 1136 (2d Cir. 2000).......................... 6

*Rutledge v Boston Woven Hose & Rubber Co.* (1978, CA9 Cal) 576 F2d 248, 1978-1 CCH Trade Cases ¶62117 ................................................. 21

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) .................... 4

*Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir. 1977) ...................................... 22

*Sitkowski v. Petzing*, 175 A.D.2d 801, 802, 572 N.Y.S.2d 930)........................... 17

*Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 2004 WL 691680 (S.D.N.Y. 2004)................................................. 7

*Spencer*.............................................................................. 7

*Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.*, 383 F. Supp. 2d 428 (S.D.N.Y. 2003)................................................. 7

*Tavarez v. Lelakis*, 143 F.3d 744 (2d Cir. 1998) ......................................... 16

*Texas v Allan Constr. Co.* (1988, CA5 Tex) 851 F2d 1526, 1988-2 CCH Trade Cases ¶68183 ................................................................. 21

*The Matter of Kitty*, 118 A.D.2d 647, 500 N.Y.S.2d 6 (1986) ............................. 9

*Totalplan Corp. of Am. v. Colbone*, 14 F.3d 824, 833 (2d Cir. 1994)....................... 12

*Werner v. Xerox Corp.*, 732 F.2d 580, 582-83 (7th Cir. 1984)..................................................... 12

*Woolley v. Stewart*, 222 N.Y. 347, 350–351 (1918) ................................................................. 8, 9

*Yedvarb v. Yedvarb*, 237 A.D.2d 433, 655 N.Y.S.2d 84, 1997 N.Y. Slip Op. 02762 (1997)... 9, 10

*Zane v. Minion*, 882 N.Y.S.2d 255, 63 A.D.3d 1151 (2009)................................................... 17, 18

Statutes

N.Y. C.P.L.R. §213(1)(2) ........................................................................................................... 22

Rules

Fed. R. Civ. P. 8(a)(2).................................................................................................................. 4

FRCP Rule 8(e)(2) ....................................................................................................................... 5

Treatises

5 *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* §1216 (3d
    ed. 2004) .............................................................................................................................. 4

*Restatement (Second) of Torts* §323 ......................................................................................... 16

Restatement of Contracts (2d) §90 ........................................................................................... 12

Plaintiff, Sang Lan respectfully submits this Memorandum of Law in Opposition to Time Warner's Motion ("Time Warner's Motion" [Doc. 127]) to Dismiss Plaintiff's Fourth Amended Complaint (the "Complaint" [Doc. 126]). Plaintiff is responding by separate Memorandum to the joint Motion to Dismiss filed by Defendant Kao Sung Liu, Defendant Gina Hui-Hung Liu (the "Lius"), and Defendant Hugh H. Mo, pro se ("Mo").

## I.        BACKGROUND[1]

Plaintiff Sang Lan is a citizen of the People's Republic of China and a former member of the Chinese National Gymnastics Team. The sixteen-year-old suffered a crippling injury during the 1998 Good Will Games in New York, sponsored and organized by Time Warner, Inc. ("Time Warner"). ¶1-2. Defendants Lius, husband and wife, were "guardians" for the minor after the injury, and from 1998 through July 2008, served as trustees or managers of the "Goodwill for Sang Lan Fund" to solicit public donations (the "Fund"). Defendant Mo was attorney for the Lius and Sang Lan and also acted as either attorney, or trustee or manager of the Sang Lan Fund[2].¶3-4.

As the 1997 Chinese National Gymnastic Champion, the teen athlete was considered the strongest contender for world titles, including the gold medal in the Olympic Games and 1998 Goodwill Games. ¶11-15, 18-19. Because of the rigorous training and discipline required for the sport, Sang Lan went to live with her teammates and coaches in Beijing, hundreds of miles from home. Her parents, limited in means and restricted by rules, rarely saw their daughter. Indoctrinated at this tender age, Sang Lan relied upon and trusted her coaches and team leaders,

---

1    ¶ refers to the corresponding paragraph in the Fourth Amended Complaint. Time Warner disputes with some allegations of the Complaint, e.g. Time Warner Memo at 7 (aware of Turner not support), 10 (made additional support demand). It attempts to draw inferences favorable to it and, occasionally,  misstates, misrepresents and makes up facts not alleged in the Complaint. Time Warner's Alleged Factual Background in its Memorandum of Law should be disregarded. Raffaele v. Designers Break, Inc., 750 F. Supp. 611, 612 (S.D.N.Y. 1990).

2    Where context permits, Lius and Mo are collectively referred to as the "Fiduciaries."

who supervised her life and finances and became surrogate parents for Sang Lan and her teammates. ¶15-17.

Plaintiff alleges that the sponsor and organizer of the Games, Time Warner, breached its legal duty by failing to: provide reasonably safe equipment or layout of equipment; supervise the competition floor for the 1998 Goodwill Games to ensure safety; provide an environment and the competition area free from distraction or interference; and ensure that there would be an orderly presentation of the events during the competition so that it would be safe for the athletes to compete. ¶26-37. Specifically, Plaintiff alleges that the competition floor under Time Warner's supervision on July 21, 1998 was not a safe environment, in that Time Warner's staff did not ensure that the practice area and the competition was free from distraction or interference around the landing areas, and that no one would be allowed to remove the mattress during the middle of practice routines by others. ¶55-61. Time Warner's breach of its duty proximately caused Plaintiff's fall. Plaintiff suffered serious injury and her losses were substantial. ¶37-54. As a world title and 1998 Goodwill Game Championship strongest contender, Sang Lan  had important rights to assert, including an action seeking damages from Time Warner, the 1998 Goodwill Games, the US Gymnast Federation, the insurance carriers, equipment manufacturers, event promoters, the landlord's premises liability insurer, the arena owners, and any and all persons or entities which could have been liable to her for failure to exercise due care under the circumstances. ¶77. Time Warner's response and reaction to the accident made it clear that Time Warner was very concerned about its liability toward Plaintiff. ¶78-82. Time Warner made a concerted effort to conceal or deny access to any and all evidence related to its responsibility for the injury, including anything even peripherally related to negligence on its part.  ¶59-71, 78-82. After the accident, Plaintiff was dependent on Time Warner for medical, financial, and logistical

support. Fully aware of its power and position, Time Warner made it clear to Plaintiff's Fiduciaries that medical care and support would not be available if Time Warner was sued over negligence. ¶83-84, 228. To induce forbearance on the part of Plaintiff, Time Warner made promises publicly (through the media and through press releases which are set forth with greater detail in paragraphs ¶85 through 88 of the Fourth Amended Complaint) with a reasonable expectation to induce Plaintiff's forbearance. ¶216-239, 246-249. Time Warner's clear and unambiguous promises to secure Sang Lan's future to the effect that "Sang Lan's parents need not dig into their pocket to help their daughter" did induce such forbearance. ¶86.

Time Warner partially performed the contract by providing some financial support as promised. ¶234-236. Time Warner accepted and dealt exclusively with the Lius as Sang Lan's guardians appointed by the Chinese team leaders. ¶101-102. The Complaint further alleges that Sang Lan was afraid and thus refrained from doing anything that could be perceived as an interference or interruption of Fiduciaries duties because the Fiduciaries' control over Plaintiff's financial, medical, and all other matters or affairs in the United States was strict and exclusive. Plaintiff was precluded from contacting or making any inquiry to Time Warner, her doctors, insurance company or the media. Plaintiff had no information and no say in dealing with Time Warner. ¶151-166, 235-236. After the Fiduciary released control over Plaintiff's affairs, money and medicine in July or August 2008, Plaintiff requested information from the Fiduciaries, who failed or refused to provide information about their dealings with Time Warner. Later, Plaintiff requested information from Time Warner and made demands to finalize the plan to secure her future. Time Warner refused. ¶237-239. Regardless, the earliest opportunity to discover improprieties was when Liu, Sie and Mo handed over the money in July 2008. The initial complaint was filed in April 2011, within the three (law) or six (equity) years of the statute of

limitation on actions based on claims for breach of fiduciary duty. ¶165-166.

## II.   APPLICABLE LAWS AND STANDARDS OF REVIEW

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2D 1081 (2007).

A case must not be dismissed pursuant to Rule 12(b)(6) so long as plaintiffs' complaint contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 1949 (2009)). When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. See *City of Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986); *Mills v. Polar Molecular Corp*, 12 F.3d 1170, 1174 (2d Cir.1993); see also, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). Bell Atlantic Corp., 550 U.S. 544.

Even where recovery appears very remote, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), or difficult to prove, *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities LLC*, 568 F.3d 374, 382-383 (2nd Cir. 2009), dismissal is not an appropriate remedy. To defeat such a motion, the factual allegations must simply be "enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting 5 *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* §1216 (3d Ed. 2004)).

On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint, *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989); and only to documents attached as exhibits or incorporated by reference. *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)(citations omitted). "[A]dditional factual allegations contained in defendant's memorandum of law and affidavits will be disregarded." *Raffaele v. Designers Break, Inc.*, 750 F. Supp. 611, 612 (S.D.N.Y. 1990). Thus, factual disputes are properly resolved only on summary judgment or at trial, not on a motion to dismiss. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Under FRCP Rule 8(e)(2) a party is permitted to set forth inconsistent statements either alternatively or hypothetically within a single count or defense, or in separate claims or defenses. The pleader also may state as many separate claims or defenses as she has, regardless of consistency or whether they are based on legal, equitable, or maritime grounds. *Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d Cir. 1994).[3]

III.   <u>ARGUMENT</u>

A.   <u>Time Warner's Motion To Dismiss Count One (Breach Of Contract) Should Be Denied Because Plaintiff's Contract Claim Is Based On Induced Forbearance and Should Be Enforced By The Doctrine Of Part Performance And Exception Of Statute Of Fraud. Action Was Timely Because It Was Commenced After Breach Within The Statute Of Limitations Or Tolling Of Statute Of Limitations By Concealment And Foreseeable Reliance</u>

Time Warner suggests three bases for dismissal: the doctrine of contractual indefiniteness, the Statute of Frauds, and the Statute of Limitations. In doing so, it advances an incorrect statement of the law of contracts.

1.   <u>Oral or Partial Written Contract</u>

---

[3]   Both Time Warner and Fiduciaries used inconsistent statements as a ground for dismissal. Since they are frivolous as a matter of law, discussions of this issue will be limited due to page limitations.

If a complaint alleges a contract partly written and partly oral, and the written part makes reference to matters which clearly refer to the oral understanding between the parties, the contract is properly pleaded, and the defendant's objection to the complaint as insufficient because of the applicability of the parole evidence rule to various matters pleaded may not be raised in advance of the trial. *Merrick v. New York Subways Advertising Co.*, 178 N.Y.S.2d 814 (Sup 1958).  Plaintiff submits that the contract with Time Warner is partly oral and partially written in the documents generated and prepared by Time Warner, and that the existence or non-existence of the contract should be submitted to a jury.

2.     Implied Contract

Even if the allegations in the Complaint are insufficient to support the existence of a contract in writing, Plaintiff's claims can establish a contract implied in fact by a showing of the conduct of parties' partial performance. *Matter of Boice*, 640 N.Y.S.2d 681, 682 (3d Dep't 1996). Plaintiff has the burden of proving the existence of an implied contract. *Marketing Specialists, Inc. v. Bruni*, 129 F.R.D. 35, 39 (W.D. N.Y. 1989) aff'd, 923 F.2d 843 (2d Cir. 1990). The essential element is that plaintiff must establish that the parties' conduct and surrounding facts and circumstances show a mutual intent to contract and a meeting of the minds. *Robert S. Nusinov, Inc. v. Principal Mut. Life Ins. Co.*, 80 F. Supp. 2d 101, 107 (W.D.N.Y. 2000),  aff'd, 229 F.3d 1136 (2d Cir. 2000).

Courts do not ignore the totality of the facts and surrounding circumstances, which can establish the operative terms of a contract, as defendant asks the Court to do here. In this case, it is alleged that Sang Lan and Time Warner bargained for the forbearance of the plaintiff, by promising financial support in exchange. The express and unambiguous terms of the promised support by Time Warner in exchange for Plaintiff's forbearance established the mutual consent

and meeting of the minds. Plaintiff acted accordingly and relied on the promises of Time Warner to her detriment in that she gave up all her rights to bring an action against Time Warner and affiliated companies, and instead acted for the benefit of Time Warner.

More importantly, both parties performed or partially performed the obligations and duties for which they bargained. A court may find an implied-in-fact contract where the parties' consent to an agreement may be inferred from the acts of the parties and the surrounding circumstances. *Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.*, 383 F. Supp. 2d 428 (S.D.N.Y. 2003) (An implied-in-fact contract "is based on the conduct of the parties from which a fact-finder may infer the existence and terms of a contract"). The relevant inquiry is whether the party to be charged has conducted him or herself in such a manner that his or her assent may be fairly inferred. Id.

The existence and terms of an implied-in-fact contract are generally issues of fact that are determined at trial. *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 2004 WL 691680 (S.D.N.Y. 2004), aff'd, 124 Fed. Appx. 73  (2d Cir. 2005), cert. denied, 126 S. Ct. 660 (U.S. 2005).  As such, the effort here by Time Warner to have the claims adjudicated at this early state of the litigation is – at minimum – misplaced. In support of that effort, Time Warner cites *Express Industries and Terminal Corp. v. New York State Department Of Transportation*, 693 N.Y.S.2d 857 (1999). Express Industries involved a shipping company that executed a permit for continued use of a pier and returned it to the Department of Transportation (DOT), and later sued the DOT after it issued the permit to another applicant. The New York Court of Appeals held that the permit application by the shipping company did not create an enforceable contract. In doing so, the Court in rejected the argument posited here by Time Warner and took a position in favor of Plaintiff's claim. In doing so, the Court stated that not all terms of a contract

7

need be fixed with absolute certainty, since at some point virtually every agreement can be said to have a degree of indefiniteness. While a manifestation of mutual assent to essential terms is required, it is equally important that parties are held to their promises, and courts should not be "pedantic or meticulous" in interpreting contract terms. Express Industries and Terminal Corp. 589-590.

      3.    <u>Statute of Fraud</u>

Time Warner insists that the Statute of Frauds applies to the Plaintiff's contract claim, but misstates New York law on the issue. In *Messner Vetere Berger McNamee Schmetterer Euro RSCG*, Inc., 689 N.Y.S.2d 674 (1999), the Court responded to an inquiry by the U.S. Court of Appeals for the Second Circuit via certified questions regarding the adequacy at the pleading stage of a claim invoking the part performance exception to the Statute of Frauds.

An oral contract that falls within the scope of the Statute of Frauds is not enforceable. A party may, however, lose the benefit of the defense of the Statute of Frauds, "or waive its protection, by inducing or permitting without remonstrance another party to the agreement to do acts, pursuant to and in reliance upon the agreement, to such an extent and so substantial in quality as to irremediably alter [the] situation and make the interposition of the statute against performance a fraud." *Woolley v. Stewart*, 222 N.Y. 347, 350–351 (1918). To qualify as part performance, inaction—like affirmative acts—would have to be pleaded as a term of the oral agreement, alleged to be "unequivocally referable" to the oral agreement and coupled with an element of detrimental reliance. There would otherwise be "nothing to show that the plaintiff changed his position to his prejudice because of the contract so as to give rise to an estoppel". *Gross v. Vogel*, 437 N.Y.S.2d 431, 432 (1981).

Both Plaintiff and Time Warner performed or partially performed the essential terms of

the contract. Time Warner partially performed the contract by providing some support as promised. Time Warner honored some or part of the contract by providing support or assistance to cover the costs of travel and living expenses of plaintiff's parents while they travelled to and were in the United States, and also by paying for certain experimental drugs or medicines or supplies not available in China, providing transportation costs, living expenses, visa fees, and airline costs. Time Warner also solicited donations for Plaintiff, though she was not provided with a record or documentation evidencing such activities. Plaintiff, in reliance of the promise for financial support to secure her future, gave up her rights to sue (forbearance). Thus, Time Warner loses the defense of the Statute of Frauds, waiving its protection, by inducing or permitting without remonstrance Sang Lan to do acts, "pursuant to and in reliance upon the agreement, to such an extent and so substantial in quality as to irremediably alter the situation and make the interposition of the statute against performance a fraud." Woolley, supra.

4.     Contract Terms

Time Warner's reliance on *The Matter of Kitty*, 118 A.D.2d 647, 500 N.Y.S.2d 6 (1986) and *Yedvarb v. Yedvarb*, 237 A.D.2d 433, 655 N.Y.S.2d 84, 1997 N.Y. Slip Op. 02762 (1997), is misplaced. Both cases involved defendants in a marital or living companion relationship with a plaintiff that had made gratuitous promises to provide support for life. In *Kitty*, plaintiff filed suit against the estate of the deceased defendant alleging the promise of support. In *Yedvarb*, the wife sued her husband for his promise to "always take care" of her, a promise between spouses. Both cases involve circumstances where there was already an existing relationship between plaintiff and defendant, and the plaintiff was attempting to add to that relationship.

Plaintiff alleges that her acceptance of Time Warner's promised support was a result of bargained for or induced forbearance. Time Warner promised to provide security for life to

mitigate liability, a result a lawsuit would presumably have achieved. Sang Lan's circumstances must to be compared to those of the cited cases if such a comparison is to be used to deny her the rights she claims. The purpose of Time Warner's representation was to induce a forbearance, whereas – according to the brief recitation of facts contained in *Yedvarb* and *Kitty* – the "promises" were completely gratuitous. When Time Warner made a clear and unambiguous promise, Sang Lan's reliance was very reasonable when taking into consideration of totality of the circumstances in addition to other factors at play at that time, such as the concern about the uncertainty or risk of litigation; Time Warner's persistent denial of the existence or possession of any tape or recording device which would show or tended to show the cause of the accident or the culpability of Time Warner and others liable to Plaintiff; and the threat of retaliatory litigation for defamation by Time Warner against the Fiduciaries and, above all, the concern about losing Time Warner's medical, financial and other economic support. See the detailed allegations set forth in ¶77-96 and ¶205-243.

Time Warner reliance on *Kitty* was misplaced. *Kitty* alleged that she and the decedent entered into an express oral agreement wherein she was to serve as the decedent's social and traveling companion and confidante in return for which he was to "take care of" and "support" her for the rest of her life. There were no witnesses to this oral agreement, nor was there any reason the defendant in Kitty would have known what it would take to provide such the support. In other words, there was no way for the defendant to know what he was getting himself into. The same cannot be said for Time Warner's position in the instant litigation.

The obligations to which it would be bound were well known to Time Warner when its promise was made, for these representations were made several times over a long range of years following Sang Lang's injury. And while Sang Lan was not provided with the information

necessary for her to understand the financial impact of the care that was required for her treatment, the same cannot be said for Time Warner or the other Defendants. These Defendants – over the span of several years – represented that they were not only taking care of all of Sang Lan's needs, but that they would continue to do so. They now ask the Court to relieve them of their obligations, and allow them to walk free on the basis that they had no idea what they were talking about. This would be an injustice of no small magnitude. The Defendants knew exactly what they were talking about. They knew to the last penny, prescription, hospitalization, rent payment and grocery bill what it took to provide for Sang Lan. That they withheld such information from the Plaintiff should not excuse their dereliction.

Contrary to Time Warner's contention, Plaintiff's needs and support are not difficult to determine for the needs for care of a paraplegic are readily measurable by objective standards. The reasonable financial plan necessary to secure Sang Lan's financial future will be to pay costs or expenses of care necessary to sustain a modest living standard for a paraplegic; to pay for her costs of travel or living expenses related to or necessary for Plaintiff's medical treatments, rehabilitation and general care. As noted above, the Defendants claim to have already spent considerable time tending to these matters for Sang Lan. In short, there is no one on this planet

Like the *Express Industries* court has pointed out, not all terms of a contract need be fixed with absolute certainty, since at some point virtually every agreement can be said to have a degree of indefiniteness, and thus, while there must be a manifestation of mutual assent to essential terms, parties also should be held to their promises, and courts should not be pedantic or meticulous in interpreting contract expressions. *Express Industries and Terminal Corp. v. New York State Department Of Transportation*, 93 N.Y.2d 584 (1999), 715 N.E.2d 1050, 693 N.Y.S.2d 857, 1999 N.Y. Slip Op. 06555.

B.    Time Warner's Motion To Dismiss Count Two (Promissory Estoppel) Should Be Denied Because Plaintiff's Claim Is Supported By Allegations Of Time Warner's Clear And Unambiguous Promise; Plaintiff's Reasonable And Foreseeable Reliance Induced By Time Warner. Plaintiff Suffered Unconscionable Injury And Injustice Cannot Be Avoided If Time Warner's Promise Is Not Enforced

Promissory Estoppel under New York law has generally three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the Plaintiff seeking to enforce the promise; (3) harm or injury suffered by Plaintiff. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989); see also *Totalplan Corp. of Am. v. Colbone*, 14 F.3d 824, 833 (2d Cir. 1994); *Cyberchron Corp. v Calldata System Development, Inc*. 47 F.3d 39 (2d Cir. 1995). The injury requirement mandates that there should be more than the loss of profit, fees, or loss of money. *Cyberchron Corp. v Calldata System Development, Inc*. 47 F.3d 39 (2d Cir. 1995). Both the Restatement of Contracts (2d) §90,[4] and the courts suggest that the doctrine should be enforced when necessary to avoid injustice. *Cyberchron Corp. v Calldata System Development, Inc.*, 831 F. Supp. 94, 112 (E.D.N.Y. 1993). *Werner v. Xerox Corp.*, 732 F.2d 580, 582-83 (7th Cir. 1984) (citing *Hoffman v. Red Owl Stores, Inc.*, 26 WIS.2d 683, 133 N.W.2d 267 (1965)).

Contrary to Time Warner's contentions, there is no doubt as to what Time Warner has promised Sang Lan. Time Warner has promised that it "will do everything within [its] power to ensure that Sang Lan's (financial) future is secured." (Quoting Dr. Schiller, President of Time Warner), ¶85. "Her family won't have to worry about digging into their pockets to help their daughter in any way." (Promise by Goodwill Games President Michael Plant), ¶85. The daily press releases, and documents generated by Time Warner made available to the world, were clear

---

[4]  Promise Reasonable Inducing Action or Forbearance.  A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

and unambiguous. ¶77-85.

The question turns on the "unconscionable" injury and whether injustice should be avoided. Plaintiff believes those questions should be answered by a jury, or the court on a motion for summary judgment, after the parties have had the opportunity to develop the facts to a degree of certainty that would allow a proper adjudication. Here, within the four corners of the Complaint, it is shown, or can be inferred, that Plaintiff was pressured into giving up her valuable and important rights in exchange for Time Warner's clear and ambiguous promises. Taking into consideration Plaintiff's background, training, the traumatic experience she had undergone, her age, education, and the totality of the circumstances, her actions – including her reliance – were reasonable. Her Fiduciaries also felt the pressure from Time Warner - including the threat of litigation - to accept the Defendant's offer of financial support in exchange for her forbearance or refraining from bringing any lawsuits. The acts, actions or conduct of both parties show that after the accident, Plaintiff was dependent on Time Warner for medical, financial, and logistic support, and that Time Warner made it clear to Plaintiff and her Fiduciaries that the medical care and other support would only be available if they refrained from filing suit. ¶83-84, 228. Time Warner was fully aware of its power and position, and more than willing to exercise both. ¶84. To induce forbearance on the part of Plaintiff, Time Warner made promises publicly (through the media and through press releases). Thus, Plaintiff's reliance was foreseeable and reasonable given the risks and importance of Time Warner's support as valued by Plaintiff and her Fiduciaries. ¶228-22.  Time Warner's clear and unambiguous promises to secure Sang Lan's future and its promise that "Sang Lan's parents need not dig into their pocket to help their daughter" did induce such forbearance. ¶86.

In Cyberchron, the court found the defendant's conduct in exerting pressure on the

plaintiff [Cyberchron] to produce an item at great expense, only to have the defendant abruptly terminate the transaction to purchase inferior equipment at a later date from another company, was unconscionable. The Court found there was (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance thereon, and (3) an unconscionable injury resulting in injustice that could be remedied only by invoking the doctrine of promissory estoppel. *Cyberchron Corp. v Calldata System Development, Inc.* 47 F.3d 39, 44-45 (2d Cir. 1995). The facts of Sang Lan's case are more egregious those found in Cyberchron. Here, Time Warner was aware of her important and valuable right to sue, and was also aware of Sang Lan's needs and reliance on its support and treatment. Time Warner used its unique position and power to pressure Sang Lan and her Fiduciaries into giving up her rights in exchange for its promise for financial support to secure her future. It made this clear and unambiguous promise, Sang Lan relied on its promise, and her reliance was both reasonable and foreseeable.  Just as in Cyberchron, an unconscionable injury has resulted in injustice that can be remedied only by invoking the doctrine of promissory estoppel.

The no question that there is an unconscionable injury here, and the facts that support such a finding are numerous and glaring.  At the age of sixteen, as result of Time Warner's negligence, Sang Lan suffered devastating loss. Given the facts of this case, it should not be difficult to foresee that she would need financial support. She will forever rely on others for daily activity. The accident robbed her of a normal life and her teenage years. Before the accident, Sang Lan was an active and successful athlete with the bright and promising future of a world-class gymnast, full of potential and opportunities. But for the accident, she was widely predicted to win several championships at international competitions, such as the Olympic Games, the World Championship and the Goodwill Games.

The spinal injury caused a total loss of the use of her arms and hands as well as bodily functions. She depends on others to assist her to go to the bathroom multiple times daily. In addition to the emotional pain and humiliation from losing control over her bodily functions, she suffers recurring urinary tract infections, which expose her to potentially fatal kidney diseases. ¶38-54. Having made clear and ambiguous promises, and reaping commercial benefits from this tragic event, Time Warner now takes the position that it has never promised support. This injustice should be remedied by enforcing its promises and denying Time Warner's Motion to Dismiss on the grounds stated.

C.   <u>Time Warner's Motion To Dismiss Count Three (Undertaking And Reliance) Should Be Denied Because Events And Conduct Of Time Warner When Viewed In Totality Did Place Plaintiff In A Worse Position And Plaintiff's Reliance Is Justified.</u>

Under New York Law, one who assumes a duty to act, even though gratuitously, may thereby become subject to a duty of acting with proper care, if his conduct in undertaking of service somehow places the injured party in a more vulnerable position than if the actor had done nothing. *Nallan v. Helsey-Spear, Inc.*, 50 N.Y.2d 507, 407 N.E.2d 451 (1980). *Florence v Goldberg*, 44 N.Y.2d 189, 375 N.E.2d 763 (1978).

As in *Nallan* and *Florence*, Time Warner assumed a duty to act  - to provide financial support.  As a result of its actions, Plaintiff refrained from seeking compensation from Time Warner for its negligence. Once Time Warner undertook the duty of providing of financial support to the Plaintiff, and Plaintiff relied on that undertaking, the breach of that promise by Time Warner placed Plaintiff in a worse position than if Time Warner had done nothing.

Had Time Warner done nothing, Plaintiff would have been compelled to seek available remedies against Time Warner for its negligence. It follows that Time Warner had a motive to undertake the duty of seeing to Sang Lan's care, which it ultimately turned into a publicity tool to

obtain higher ratings for its broadcast. Because of its position and power over the teenager in a time of a traumatic event, the undertaking of this duty, as to which Time Warner now reneges, certainly placed Plaintiff in a more vulnerable position than if Time Warner had done nothing. Having assumed the undertaking of providing financial support and precluding her from asserting her rights against it, Time Warner increased the harm to Plaintiff. This harm was suffered by Plaintiff because of her reliance on the undertaking. *Tavarez v. Lelakis*, 143 F.3d 744 (2d Cir. 1998).

As for Defendant's citation to Section 323 of the Restatement (Second) of Torts – upon which it so heavily relies - the language set out at page 17 of its memoranda is incomplete. The language of the Restatement is set out in an indented paragraph, but does not include all of the language from the comment. The balance – which supports Plaintiff's position as explained above - states as follows:

> Where, however, the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other , in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated. *Restatement (Second) of Torts* §323, cmt. c.

Here, Time Warner's assistance has put Sang Lan in a worse position than she was in before since, in reliance upon Time Warner's undertaking, she has been induced to forego other opportunities of obtaining assistance, to wit, a lawsuit against Time Warner. The result is that Time Warner is not free to discontinue its services where a reasonable person would not do so.

1.    Statute of Limitations

Time Warner proffers tentatively, as an alternate ground for dismissal, that the statute of limitations for each of Plaintiff's claims is no longer than six years, because "Plaintiff's cause of

action accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." Time Warner's reasoning is flawed. Plaintiff is not suing Time Warner for personal injury. The Complaint alleges that Plaintiff gave up her rights to sue for Time Warner's promised financial support. Apparently, the compromised agreement of support in exchange of forbearance was preferred over a costly lawsuit with an uncertain outcome.

2.    Breach of Contract

Time Warner argues that the statute of limitations applies because the breach occurred in 1999 and Plaintiff had actual knowledge of its breach of its contract obligations by not giving donations. Sang Lan disagrees because she alleges Time Warner publicly maintained that it kept its promises until a formal demand by Sang Lan in 2011.

The issue of breach was addressed in *Zane v. Minion*, 882 N.Y.S.2d 255, 63 A.D.3d 1151 (2009) N.Y. Slip Op. 05541. In Zane, the plaintiff conveyed his half interest in real property in exchange for a promise by defendant to refinance of two mortgages on the property and, thereafter, to re-convey Defendant's interest to Plaintiff by naming him as the beneficiary of her interest in the property in her will.  In reliance on those promises, the Zane plaintiff made the transfer. Approximately 10 years later, the Zane defendant refused the plaintiff's request that defendant honor the promise.

Ultimately, and notwithstanding the fact that the Zane plaintiff made no allegation of deception or concealment, the New York Court of Appeals held that the plaintiff's claim accrued when the defendant allegedly failed to honor her promises and that plaintiff's causes of action are not barred by the statute of limitations. Zane, 257; *Jakacic v. Jakacic*, 279 A.D.2d at 551, 719 N.Y.S.2d 675, quoting *Sitkowski v. Petzing*, 175 A.D.2d 801, 802, 572 N.Y.S.2d 930). (see *Panish v. Panish*, 24 A.D.3d 642, 643, 808 N.Y.S.2d 325; *Lyons v. Quandt*, 91 A.D.2d 709, 710,

457 N.Y.S.2d 615).

In Sang Lan's case, she gave up her valuable rights to sue Time Warner in exchange for its clear and unambiguous promise to secure her future and financial support. Sang Lan relied on Time Warner's promise and was told by Time Warner that support was there. Approximately 11 years after her reaching majority, Time Warner refused Sang Lan's request that Time Warner honor its promise. Sang Lan has alleged in detail the facts and circumstances showing that Time Warner's deception, concealment, exclusive dealing with her Fiduciaries and other conduct prevented her from discovery.

As in Zane, the breach here did not occur until Plaintiff made a demand for performance when her Fiduciaries relinquished their control over her affairs, and that demand was refused. After the Fiduciary released control over Plaintiff's affairs, money and medicine in July or August 2008, Plaintiff requested information from the Fiduciaries, who failed or refused to provide information about their dealings with Time Warner. Thereafter, Plaintiff requested information from Time Warner and made demands to finalize the plan to secure her future. Time Warner refused. ¶237-239. Thus, the earliest opportunity to discover improprieties was when the Fiduciaries handed over the money to Plaintiff in July 2008. The initial complaint was filed in April 2011, within the six years of the statute of limitation on actions based on claims for breach of contract. ¶165-166.

3.    Fraudulent Concealment Or Equitable Estoppel

Additionally, the statute of limitation defense is not available to Time Warner because of fraudulent concealment or equitable estoppel. Time Warner makes much of a new article in which Sang Lan, at 17, was reported to have complained about Time Warner [Turner] not providing support. Despite the fact that Time Warner's conflicting statements about the

donations to the Fund occurred in 2011, or that Time Warner' publicly denied any suggestion that it did not provide support, Time Warner now imputes to a minor in 1999 the knowledge that "Turner would not provide support her indefinitely", and holds forth as proof that Sang Lan was aware that no support was forthcoming by alleging that she "consulted with Defendant Mo" to resolve "an ongoing, identified legal problem with Time Warner and others." Time Warner's Motion, P20.[5]

Time Warner fails to mention that after the minor's remarks to the media, Time Warner's executives promptly refuted her accounts and affirmatively stated that Time Warner "solicited donations" and that it provided support. After Time Warner's conduct and public statement, Sang Lan could not have known that Time Warner's statements, then relied on by Sang Lan, were all false as Time Warner now admitted in 2011. Sang Lan had no reason to doubt Time Warner, who had provided support to her.

The United States Supreme Court identified the concepts underlying the doctrine of fraudulent concealment more than a century ago:

> "[W]hen there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to the party suing, or those in privity with him." *Bailey v. Glover*, 88 US 342, 21 Wall 342, 22 L Ed 636 (1875).

In New York, fraudulent concealment tolls the running of the statute of limitations until the plaintiff discovers the fraud, or could have discovered it with reasonable diligence. N.Y.McKinney's CPLR 213(8). *Rafter v. Liddle*, 704 F. Supp. 2d 370 (S.D. N.Y. 2010). In order to plead fraudulent concealment, such that a statute of limitations may be tolled, a plaintiff must

---

[5]      Even if this was true, it remains that Mo may have misinformed Plaintiff of Time Warner's actions in order to prevent her from suing the entity, and discovering the malfeasance of Mo and the Lius.  Certainly there was SOME reason that Mo had for not suing Time Warner, the possibility that Time Warner was already providing support is one of them.

show that: (1) defendants engaged in a course of conduct to conceal evidence of their alleged wrongdoing; and (2) plaintiff failed to discover facts giving rise to her claims despite her exercise of due diligence. *North American Communications, Inc. v. InfoPrint Solutions Co.*, LLC, 817 F. Supp. 2d 642 (W.D. Pa. 2011) (applying New York law), *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 2009-1 Trade Cas. (CCH) ¶ 76627 (S.D.N.Y. 2009).

Sang Lan alleges in the Complaint a pattern of deception or concealment of material information important or related to Sang Lan or her cause of action. Plaintiff also alleges that Time Warner consistently denied any suggestions that it did not provide support to Sang Lan. Evidence shows that it did, and used the tragic event to its advantage to dispel any notion that Time Warner was not providing support, particularly where the media was involved. ¶71. Plaintiff has alleged conduct or acts of active concealment of evidence to prevent Plaintiff or her Fiduciaries from gaining access to tapes or video images. Time Warner allegedly "doesn't want it anymore but doesn't want anybody else to have it." Ms. Kathy Scanlan's phone call to Carter.) ¶64. Time Warner publicly responded rather swiftly that any suggestions about Time Warner's lack of support to Sang Lan were untrue and assured the public in no uncertain terms that it had provided support (Plant's statement). ¶85.e. Prior to July 2008, Time Warner and Fiduciaries presented a united front, consistently representing to Sang Lan that there was a support plan in place, and that Sang Lan had no need to worry about her physical, emotional, or financial security. As soon as the Fiduciaries closed the Fund, however, Sang Lan had the opportunity to review at least some of her financial and medical records. When she did, in spite of everything she had been told by the Defendants, and against a desperate need to believe what she had been told before, she began to suspect that she had been deceived. It was only at this point that she began to investigate the circumstances of the matters she had entrusted to the Defendants. When

she confronted the Defendants about her suspicions, she was met by responses that were inconsistent, and a dogged refusal to be truthful and provide accounting records. Time Warner and the Fiduciaries gave contradictory and confusing statements to Sang Lan, and again presented a united front. But this time there were no assurances of a support plan, and there was no mention of Sang Lan's security. Now the Defendants stand in a united front to prevent Sang Lan from obtaining what they had promised her before.

Silence or a denial of wrongdoing may amount to concealment, however, where circumstances made the plaintiff's reliance on the defendant's silence or denial reasonable. *Rutledge v Boston Woven Hose & Rubber Co*. (1978, CA9 Cal) 576 F2d 248, 1978-1 CCH Trade Cases ¶62117; *Texas v Allan Constr. Co*. (1988, CA5 Tex) 851 F2d 1526, 1988-2 CCH Trade Cases ¶68183. Sang Lan alleges that Time Warner actively concealed its knowledge and existence of any and all tapes recording the event leading to the accident; that Time Warner threatened to sue them for remarks attributable to Sang Lan. Time Warner chose to deal with the Fiduciaries, presumably because of her status as a minor and the language barrier. Sang Lan had no knowledge of the dealings between Time Warner and Fiduciaries. However, Sang Lan had no reason to doubt Time Warner's public announcement and was certainly not in a position to challenge Time Warner for reasons alleged in the Complaint. It was reasonable for Sang Lan to rely on those statements that the support was there and was being handled between Time Warner and the Fiduciaries. The earliest opportunity for Sang Lan to have knowledge and access to information regarding her affairs and the fund would be after approximately July or August 2008 when her Fiduciaries relinquished or terminated their control over her affairs and money. The detailed active concealment by Time Warner is set forth in ¶62-71.

The Complaint alleges that Sang Lan was afraid and thus refrained from doing anything,

which could be perceived as an interference of Fiduciaries duties because the Fiduciaries' control over Plaintiff's financial, medical, and all other matters or affairs in the United States was strict and exclusive. Time Warner preferred to deal with the Fiduciaries exclusively. Plaintiff was precluded from contacting or making an inquiry to Time Warner, her doctors, the insurance company or the media. That fear or concern was a sufficient reason because the importance of medical supplies and financial support for her future as a paralyzed and disabled person who will depend on assistance for the rest of her life. As a minor, Plaintiff had no information or say in dealings with Time Warner. ¶151-166, 235-236. After the Fiduciaries released control over Plaintiff's affairs, money and medicines, Plaintiff requested information from the Fiduciaries, who failed or refused to provide information about their dealings with Time Warner. Time Warner initially ignored but later refused or denied Plaintiff's requests.

Time Warner cites *Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir. 1977); N.Y. C.P.L.R. §213(1)(2), but Schmidt will not support its position. In Schmidt, plaintiff sued union officials, asserting claims of breach of contract, promissory estoppel, and fraud based on an alleged promise to cause past service credits to be picked up for pension plan purposes. The U.S. Court of Appeals for the Second Circuit reversed the dismissal on the statute of limitations. The court held that: (1) since the alleged contract did not specify time for union's performance, under New York law defendant officials were entitled to a reasonable time … and such time had not elapsed as quickly as 11 days after date enforceable contract, if any, arose, and thus six-year statute of limitations had not run six years and 11 days after that date; (2) the six-year statute of limitations had not run on the claim of promissory estoppel for the same reason; and (3) with respect to the fraud claim, there was a genuine issue precluding summary judgment as to whether plaintiff, acting within reasonable diligence, could have discovered the alleged fraud within two years

before the suit was brought.

Time Warner also cites *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Again, the case provides no support for Defendant's position. *Pinaud is a [42 USCA]* §1983 civil rights action. The issue in *Pinaud* was prosecutorial immunity. On the issue of statute of limitations, the Second Circuit held that to invoke the equitable tolling doctrine, plaintiff must submit non-conclusory evidence of conspiracy or other fraudulent wrongs which precluded the possible discovery of harms that he suffered. *Pinaud* at 1158. Sang Lan has done that. See also *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir.1993) (tolling statute of limitations until time when plaintiff received an affidavit from a witness at his trial detailing the existence of a conspiracy by state officials to present perjurious testimony against plaintiff).

Plaintiff argues that this court should apply an objective test based on what a reasonable person would have done in the plaintiff's situation, with her education, training and background if given the same information the plaintiff has had. Plaintiff submits that due diligence does not require her to treat defendants from the outset as if she were dealing with thieves[6], not when Time Warner made statement after statement to the public - and to her - affirmatively asserting that Time Warner was "providing support"; that Time Warner's executives all personally solicited support on her behalf. When a plaintiff has no reason to suspect wrongdoing by a defendant, she should not be imputed to have notice of wrongdoing.[7] At the very least, a jury should decide whether or not Time Warner's statements and conduct constitute partial performance of an agreement, and whether Time Warner's active concealment, deception and

---

[6]   Hobson v Wilson (1984) 237 US App DC 219, 737 F2d 1, cert den 470 US 1084, 85 L Ed 2d 142, 105 S Ct 1843.

[7]   See Richards v Mileski (1981) 213 US App DC 220, 662 F2d 65, 32 FR Serv 2d 437, on remand (DC Dist Col) 567 F Supp 1391.

other conduct, tolls the statute of limitations.

D.  Motion to Dismiss Should Be Denied Because Plaintiff Is Entitled To Plead Alternative Claims At This Stage Of The Litigation

From the same set of facts, Plaintiff pled three separate but alternative claims. From the allegations of the Complaint and the responses to it, parties disagree on the terms of the agreement and also on whether or not facts justify the tolling of the statute of limitations. When the terms of an agreement are in dispute, as here, the Court has specifically declined to dismiss an unjust enrichment claim at the summary judgment stage, let alone at the pleadings stage. *Cosmocom, Inc. v. Marconi Communications Int'l Ltd.*, 261 F. Supp.2d 179, 187 (E.D.N.Y. 2003). In language particularly appropriate for this motion, the Court in Cosmocom held that the "preclusion of Plaintiffs unjust enrichment claim at this early juncture, before any substantive discovery has occurred, would leave Plaintiff with virtually no relief sounding in quasi-contract if, at a later stage, the Agreement ... was found to be invalid." *Louros v. Cyr*, 175 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (An alternative theory of unjust enrichment is permitted where the existence or enforceability of a contract is in dispute.) Given the factual disputes surrounding Plaintiff's contract, promissory estoppel and undertaking plus reliance claims, Time Warner's motion to dismiss Plaintiff's claim as a matter of law, at this early stage of the litigation, should be denied.

IV.  CONCLUSIONS

Plaintiff has alleged sufficient facts to support her claims, based on the information available to her prior to discovery. Defendants have failed to move under the proper Rule of Federal Procedure governing such dismissals, to enunciate the legal principles underlying the claims or to apply the correct laws to the facts here. For these and the foregoing reasons, Plaintiff Sang Lan respectfully requests that the Court deny Time Warner's Motion to Dismiss in its

entirety.

Respectfully submitted this February 15, 2012.

_____
X. Bing Xu, Esquire (BX8888)
Attorney for Plaintiff
5705 Hansel Avenue
Orlando, Florida 32809
(407)851-1000
bing@binglawfirm.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 15, 2013, the foregoing was or caused to be electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing and make available for reviewing and receipt by the following counsel of record:

| | |
|---|---|
| James A. Lamberth, Esq. | Hugh H. Mo, Esq. |
| Alan Bakowski, Esq. | Frank Chiu, Esq. |
| TROUTMAN SANDERS LLP | *Attorneys for Defendants* |
| *Attorneys for Defendant Time Warner, Inc.* | *Kao Sung Liu i/s/h/a K.S. Liu,* |
| Suite 5200, Bank of America Plaza | *Gina Hiu-Hung, and Hugh Mo pro se* |
| 600 Peachtree Street, N.E. | 225 Broadway, Suite 2702 |
| Atlanta, GA 30308-2216 | New York, New York  10007 |
| Direct: (404) 885-3362 | (212) 385-1500 |
| Direct Fax: (404) 962-6611 | (212) 385-1870 (f) |
| james.lamberth@troutmansanders.com | hhmo8@verizon.net |

I FURTHER CERTIFY that a copy of the foregoing was or caused to be served by [  ] email [  ] mail [  ] personal service [  ] to following additional party or counsel of record: Not applicable.

_____
X. Bing Xu, Esquire (BX8888)
Attorney for Plaintiff

25