```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
SANG LAN,                               :   11 Civ. 2870 (LBS) (JCF)
                                        :
              Plaintiff,                :        REPORT AND
                                        :        RECOMMENDATION
                                        :
        - against -                     :
                                        :
TIME WARNER, INC.,KAO-SUNG LIU          :
A/K/A K.S. LIU, GINA HIU-HUNG LIU       :
A/K/A HUI-HUNG SIE A/K/A GINA LIU,      :
Individually and as Trustees or         :
Managers of Goodwill for Sang Lan       :
Fund, HUGH HU MO, DOES 1-30,            :
Unknown Defendants, Jointly and         :
Severally,                              :
                                        :
              Defendants.               :
- - - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE LEONARD B. SAND, U.S.D.J.:

Plaintiff Sang Lan filed this action on April 28, 2011. Defendant Time Warner, Inc. ("Time Warner") and defendants Kao-Sung Liu, Gina Hiu-Hung Liu, and Hugh Hu Mo (collectively, the "Individual Defendants") separately move to dismiss the plaintiff's Fourth Amended Complaint ("4th Am. Compl.") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  I recommend that Time Warner's motion to dismiss be granted and that the Individual Defendants' motion be granted in part and denied in part.

Background

The following facts from the Fourth Amended Complaint are taken as true for the purposes of these motions to dismiss.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam).

Ms. Sang[1] is a former world-class gymnast from China. (4th Am. Compl., ¶¶ 11-19). She was slated to compete in the 1998 Goodwill Games (the "Games"), a quadrennial competition conceived by Ted Turner and later sold to Time Warner as a consequence of Mr. Turner's company merging with AOL.[2] (4th Am. Compl., ¶¶ 20, 22, 28). While warming-up for the vault event, Ms. Sang was seriously injured, allegedly through the negligence of Time Warner and other organizers of the competition. (4th Am. Compl., ¶¶ 29-34, 55-56). Her injuries are extensive: the fall fractured two vertebrae and injured her spinal cord, rendering her permanently paralyzed from the mid-chest down; she suffers from additional complications related to the paralysis. (4th Am. Compl., ¶¶ 38-52).

In the aftermath of the accident, various people associated with the Games made public statements regarding Ms. Sang. Michael Plant, President of the Games, stated that Ms. Sang's "immediate medical needs" would be taken care of by insurance. (1998 Goodwill Games Press Conference Quotes dated July 22, 1998 ("July 22 Press Conference"), attached as Exh. F to 4th Am. Compl., at 2).[3] He

---

[1] According to the current complaint, the plaintiff's surname is Sang, and she is referred to as Sang Lan following the Chinese custom of placing the surname before the given name. (4th Am. Compl. at 3 n.1). I will therefore refer to her as Ms. Sang. Prior iterations of the complaint referred to the plaintiff as Ms. Lan.

[2] For the sake of simplicity, I will refer to Time Warner, Inc., as well as the various companies involved with the Games that were later acquired by Time Warner, Inc., as "Time Warner."

[3] The exhibit identifiers on the copy of the Fourth Amended Complaint submitted by Time Warner differ from those on the docketed complaint, which are the identifiers I use here.

continued, "I can't speak to the long-term, but it is our commitment to do what we can.  As I said, Ted Turner and [then-Chief Executive Officer of Time Warner] Gerald Levin are both concerned.  We had a lot of insurance that will provide adequate care for Sang Lan." (July 22 Press Conference at 2).  According to a newspaper article, Mr. Plant solicited contributions for Ms. Sang from corporate sponsors of the Games and also stated that Ms. Sang's family "won't have to worry about digging into their pockets to help their daughter in any way." (Bill Egbert, Injured Gymnast, Turner Reneged, NY Daily News, June 3, 1999 ("NY Daily News Article"), attached as Exh. J to 4th Am. Compl.).  In response to a question as to whether the corporations involved had "discussed how far Goodwill and Turner and Time Warner's responsibility extends . . . not necessarily financially, but emotionally and morally," Dr. Harvey Schiller, then President of Turner Sports, stated that executives throughout the company had

> offered to assist in any way possible.  What we don't want to do is take away the focus [sic] from the care that she is getting right now and you can be assured that this corporation and hand-in-hand with US Gymnastics, as well as the International Federation, will do everything within our power to assure that her future is secure.[4]

(1998 Goodwill Games Press Conference Quotes dated July 24, 1998 ("July 24 Press Conference"), attached as Exh. G to 4th Am. Compl., at 2).  In an article dated July 24, 1998 on the CNN/Sports

---

[4] The plaintiff alters this quotation in the Fourth Amended Complaint, rewriting the phrase "will do everything within our power to ensure that her future is secure" to read "will do everything within our power to ensure that Sang Lan's (financial) future is secure." (4th Am. Compl., ¶ 85(b)).

Illustrated website, Dr. Schiller is reported to have said, "In terms of our organization, we will do all we can to make sure that Sang Lan and her family are accommodated in the best possible way . . . . We are not out to exploit this. Our focus is on today. We want her to get the best possible care." (Paralyzed gymnast's parents begin sad journey to her bedside, CNN Sports Illustrated, July 24, 2008 ("CNN Article"), attached as Exh. H to 4th Am. Compl., at 2-3). And Dr. Brock Schnebel, Chief Medical Officer of the Games, stated:

> Now[] that her surgery has been performed, she has a long way to go to recover from this.  There will be a long period of rehabilitation so all these different issues have to be considered.  The surgery isn't the biggest part of this, there is a lot more to come.  Mike Plant of the Goodwill Games, Turner Broadcasting, and Time Warner . . . ha[ve] reassured me . . . that they will do everything in their collective power to provide the necessary resources to continue her care.  So we can feel comfortable that we've done everything we can for her.

(1998 Goodwill Games Press Conference Transcript dated July 26, 1998 ("July 26 Press Conference"), attached as Exh. I to 4th Am. Compl., at 3).

The leaders of the Chinese gymnastics team selected Mr. Liu and Ms. Liu, his wife, to be Ms. Sang's "'guardians' to handle all matters related to [her]," including dealing with Time Warner. (4th Am. Compl., ¶¶ 99, 101).  The Lius, along with their attorney Mr. Mo, informed Ms. Sang that, if Time Warner were challenged, such as in a negligence action concerning the accident, "any hope of getting assistance from Time Warner would be extinguished." (4th Am. Compl., ¶¶ 84, 87).  A fund, called the Goodwill for Sang Lan Fund (the "Fund"), which Time Warner asserted that it

contributed to and solicited donations for, was set up for Ms. Sang's benefit. (4th Am. Compl., ¶¶ 3, 90-92, 124). Shortly after it was established in 1998, the Lius began serving as the Fund's trustees or managers, exercising exclusive control over the money, as well as over Ms. Sang's medicine and medical supplies. (4th Am. Compl., ¶¶ 3, 102, 120-121, 152, 154, 156, 160). Mr. Mo and his law firm provided legal and professional assistance to the Fund, Ms. Sang, and the Lius.[5]  (4th Am. Compl., ¶¶ 103-106, 109-111, 122-123).

According to Ms. Sang, the Lius and Mr. Mo failed in their duty to "work out the specifics of the oral contract or agreement with Time Warner to secure [Ms. Sang's] future," and, in 1999, Ms. Sang accused Turner of reneging on a promise to help her financially. (4th Am. Compl., ¶ 168; NY Daily News Article). In addition, the Lius purportedly made false claims about the management, legal compliance, and expenditure of the Fund. (4th Am. Compl., ¶¶ 126-128, 133, 135). When the Lius turned over the "alleged remaining balance of the Fund" in July 2008, they failed to provide accounting records or reports, making it impossible to determine the amount of money donated to the Fund. (4th Am. Compl., ¶¶ 136, 141, 143-144, 169-172). Ms. Sang requested access to the records, but was told by the Lius to seek them from Abacus Bank, a financial institution that held part of the corpus of the Fund. (4th Am. Compl., ¶¶ 125, 139-140). Abacus Bank, in turn, directed her to contact Mr. Mo, as the Fund's attorney, to receive

---

[5] Mr. Mo's law firm is not a defendant in this case.

authorization for the release of the information.  (4th Am. Compl., ¶ 140).  In addition, Ms. Sang asserts that the Lius failed to return to her gifts and other items donated by various well-wishers during her sojourn in the United States.  (4th Am. Compl., ¶ 76).

Ms. Sang further alleges that, from 1998 to the present, the Lius have used her likeness or other identifiable characteristics without her consent for the purpose of promoting their business.  (4th Am. Compl., ¶¶ 179-180).  In January 2011, the Lius purportedly made statements to the public that Ms. Sang was lazy, could not urinate or have bowel movements on her own, and planned to seek asylum in the United States.  (4th Am. Compl., ¶ 185).  These statements were broadcast via a website maintained and managed by Sinovision.  (4th Am. Compl., ¶ 186).  Ms. Sang also accuses the Lius of using the Sinovision site to "spew[] vulgur, obscene, and derogatory remarks . . . designed to cast [Ms. Sang] in a false light."  (4th Am. Compl., ¶¶ 194, 199).

As noted above, Ms. Sang filed this action on April 28, 2011.

Discussion

A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While a complaint need not make "'detailed factual allegations,'" it must contain more than mere "'labels and

6

conclusions' or '[f]ormulaic recitation[s] of the elements of a cause of action.'" Id. (quoting Twombly, 550 U.S. at 555). A complaint with "'naked assertions' devoid of 'further factual enhancement'" is insufficient. Id. (quoting Twombly, 550 U.S. at 557). Further, where the complaint's factual allegations permit the court to infer only a possible, but not a plausible, claim for relief, it fails to meet the minimum standard. Id. at 679. In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

In assessing a motion to dismiss, a court must take as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Erickson, 551 U.S. at 93-94; DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010). However, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

The court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002). "[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must

either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (alteration in original) (internal quotations marks omitted); see also Quick Cash of Westchester Avenue LLC v. Village of Port Chester, 11 Civ. 5608, 2013 WL 135216, at *3 (S.D.N.Y. Jan. 10, 2013) (quoting Friedl, 2010 F.3d at 93). "A district court, however, 'is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a party seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." PNCEF, LLC v. Oz General Contracting Co., No. 11 CV 724, 2012 WL 4344538, at *3 (E.D.N.Y. Aug. 2, 2012) (quoting United States v. International Longshoremen's Association, 518 F. Supp. 2d 422, 450-51 (E.D.N.Y. 2007)).

The Individual Defendants attach a single additional document to their motion papers. (Letter of Gina Liu dated June 5, 1999, attached as Exh. A to Declaration of Hugh H. Mo, Esq. dated Dec. 27, 2012 ("Mo Decl.")). Neither the Fourth Amended Complaint nor any previous complaint relies on this document. However, it was previously submitted by the plaintiff in opposition to a motion to dismiss an earlier complaint (Mo Decl., ¶ 4; Exh. H to Affidavit of Sang Lan dated July 21, 2011), and it is mentioned in my report and recommendation on that motion. (Report and Recommendation

dated Nov. 21, 2011 ("Nov. 21 R&R" or "November 21 R&R") at 14).
Nevertheless, in an abundance of caution, I will exclude this
document from consideration here.  See  Global Network
Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d
Cir.2006) ("[T]he conversion of a Rule 12(b)(6) motion into one for
summary judgment under Rule 56 when the court considers matters
outside the pleadings is strictly enforced and mandatory."
(internal brackets and quotation marks omitted)).

    B.   Time Warner's Motion to Dismiss

The plaintiff seeks damages from Time Warner for breach of
contract, promissory estoppel, and "undertaking and reliance."[6]

---

[6] No party in this action has raised any choice of law issue.
A court sitting in diversity applies the forum state's choice of
law rules to select applicable substantive law. Klaxon Co. v.
Stenton Electric Manufacturing Co., 313 U.S. 487, 496 (1941);
Cuccioli v. Jeckyll & Hyde Neue Metropol Bremen Theater Produktion
GmbH, 150 F. Supp. 2d 566, 574 (S.D.N.Y. 2001). The claims against
Time Warner are contract or quasi-contract claims, and thus are
subject to New York's "grouping of contacts" or "center of gravity"
approach. AIU Insurance Co. v. TIG Insurance Co., __ F. Supp. 2d
__, ___, 2013 WL 1195258, at *4 (S.D.N.Y. 2013); see also AllGood
Entertainment, Inc. v. Dileo Entertainment & Touring, Inc., 726 F.
Supp. 2d 307, 320-21 (S.D.N.Y. 2010) (applying "center of gravity"
test to quasi-contract claim). "Under this approach, courts may
consider a spectrum of significant contacts, including the place of
contracting, the places of negotiation and performance, the
location of the subject matter, and the domicile or place of
business of the contracting parties," as well as public policy
concerns. Lazard Freres & Co. v. Protective Life Insurance Co.,
108 F.3d 1531, 1539 (2d Cir. 1997) (quoting Brink's Ltd. v. South
African Airways, 93 F.3d 1022, 1030-31 (2d Cir. 1996)). Here, the
center of gravity approach would likely lead to the application of
New York law. In any case, the parties have relied exclusively on
New York law, so they have impliedly consented to its application.
See Wilde v. Wilde, 576 F. Supp. 2d 595, 603 (S.D.N.Y. 2008)
(citing Tehran-Berkeley Civil & Environmental Engineers v. Tippets-
Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989), and
Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52-
53 (2d Cir. 1984)); see also Federal Insurance Co. v. American Home
Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the

1.   <u>Breach of Contract</u>

Ms. Sang claims that she and Time Warner had an enforceable contract in which Time Warner promised to secure her financial future in return for her promise not to sue Time Warner regarding the accident. (4th Am. Compl., ¶¶ 222-242; Plaintiff's Memorandum of Law in Opposition to Defendant Time Warner Inc.'s Motion to Dismiss the Fourth Amended Complaint ("Pl. Opp. Memo. to Time Warner") at 9-10). Time Warner's promise was allegedly embodied in public comments that it would secure Ms. Lan's future and that her parents would not have to use their own money to care for her. (4th Am. Compl., ¶ 85; July 22 Press Conference; July 24 Press Conference; CNN Article; July 26 Press Conference; NY Daily News Article). Specifically, the plaintiff points to Mr. Plant's statements that (1) Time Warner had "committ[ed] to do what we can" and to "provide adequate care for Sang Lan" (4th Am. Compl., ¶ 85(a); July 22 Press Conference) and (2) Ms. Sang's parents would not have to "dig[] into their pockets to help their daughter in any way" (4th Am. Compl., ¶ 85(e); NY Daily News Article); Dr. Schiller's statements that Time Warner, along with the U.S. and International Gymnastics Federation, would "do everything within our power to ensure that Sang Lan's future is secure" and that Time Warner would "do all we can to make sure that [she] and her family are accommodated in the best possible way" (4th Am. Compl., ¶ 85(b); July 24 Press Conference at 2; CNN Article at 2-3); and Dr.

_____

parties agree that New York law controls, this is sufficient to establish choice of law.").

Schnebel's comment that Mr. Plant had reassured him that Time Warner would "do everything in their collective power to provide the necessary resources to continue her care" (4th Am. Compl., ¶ 85(d); July 26 Press Conference at 3).

Before a promise will be enforced by a court, "it must be sufficiently certain and specific so that what was promised can be ascertained. . . . Thus, definiteness as to material matters is the very essence of contract law." Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 249 (1981). The statements Ms. Sang identifies do not clear this hurdle. They contain "no specifics as to the form, frequency and amount of payment," and are therefore "too vague to spell out a meaningful promise."[7] In re Estate of Kittay, 118 A.D.2d 647, 648, 500 N.Y.S.2d 6, 7 (2d Dep't 1986) (promise that decedent would "'take care of' and 'support' [plaintiff] for the rest of her life" insufficiently definite to be enforceable); see also Yedvarb v. Yedvarb, 237 A.D.2d 433, 434, 655 N.Y.S.2d 84, 85 (2d Dep't 1997) ("[T]he alleged promise by the defendant to 'always take care of' the plaintiff, which contained no specifics as to the form, frequency, and amount of payment, was too vague to spell out a meaningful promise"); Saunder v. Baryshnikov, 110 A.D.2d 511, 512, 487 N.Y.S.2d 51, 52 (1st Dep't 1985) (statement that defendant "would 'take care of [plaintiff] and her financial needs for the

_____

[7]  Indeed, the Fourth Amended Complaint admits as much, asserting that the Lius and Mr. Mo failed in their duty "to work out the specifics of the oral contract or agreement with Time Warner to secure Sang Lan's future." (4th Am. Compl., ¶ 168).

rest of her life'" too "vague[] as to material details" to form enforceable promise).

The plaintiff attempts to distinguish <u>Kittay</u> and <u>Yedvarb</u> by pointing out that those cases "involved defendants in a marital or living companion relationship with a plaintiff." (Pl. Opp. Memo. to Time Warner at 9). However, nothing in those decisions indicates that the courts found the personal or social relationship between the parties relevant to the question of whether a contract had been formed. Rather, the courts pointed out that the absence of specifics as to form, frequency, and amount of payment was fatal to the claim that any enforceable promise had been made. <u>Kittay</u>, 118 A.D.2d at 648, 500 N.Y.S.2d at 7; <u>Yedvarb</u>, 237 A.D.2d at 434, 655 N.Y.S.2d at 85. Thus, the social relationship between the parties is not determinative of the question at issue. <u>See</u> <u>Saunder</u>, 110 A.D.2d at 512, 487 N.Y.S.2d at 52 (holding vague promise to take care of employee for life unenforceable).

Alternatively, Ms. Sang alleges that the contract for Time Warner to secure her financial future was implied in fact. (Pl. Opp. Memo. to Time Warner at 6-8). This argument suffers from the same deficiencies as her argument that there was an express contract. "[A]n implied-in-fact contract arises when the agreement and promise have simply not been expressed in words, but a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it." <u>National Gear and Piston, Inc. v. Cummins Power Systems, LLC</u>, 861 F. Supp. 2d 344, 359 (S.D.N.Y. 2012) (alteration in original) (internal quotation marks

12

omitted).  But even an implied-in-fact contract must be "reasonably certain in its material terms."  Id. (internal quotation marks omitted).  That is, when a plaintiff cannot point to "sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract," she has failed to state a cause of action.  Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2012).  In Gallas v. Greek Orthodox Archdiocese of North & South America, 154 Misc. 2d 494, 587 N.Y.S.2d 82 (N.Y. Sup. Ct. 1991), the court held, on a motion to dismiss, that there was no implied-in-fact contract where the defendant allegedly promised "to compensate [the plaintiff] for all her injury and damage" and in fact paid for her initial medical expenses because the alleged promise was "without limitation as to time, extent or amount." Id. at 504-05, 587 N.Y.S.2d at 89-90.  So it is here.

Because the complaint does not allege an enforceable agreement between Ms. Sang and Time Warner, I recommend this claim be dismissed.

### 2.   Promissory Estoppel

In New York, promissory estoppel has three elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party to whom the promise was made. Cyberchron Corp. v. Calldata Systems Development, Inc., 47 F.3d 39, 44 (2d Cir. 1995).  To support this claim, Ms. Sang relies on the same statements discussed above.  This claim should be dismissed

for the same reason that the breach of contract claim should be dismissed: the statements made by Time Warner did not constitute a clear and unambiguous promise which could support Ms. Sang's reasonable and foreseeable reliance.

### 3. Undertaking and Reliance

The cause of action for undertaking and reliance is based on the theory that "'[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully if he acts at all.'" Suthers v. Amgen Inc., 441 F. Supp. 2d 478, 489 (S.D.N.Y. 2006) (alteration in original) (quoting H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 167, 159 N.E. 896, 898 (1928)). Such "assumed duties" arise in two situations: where the danger of harm is increased by the partial performance of the defendant, or where the harm is caused because the plaintiff foreseeably relied on the undertaking to her detriment. See Tavarez v. Lelakis, 143 F.3d 744, 747 (2d Cir. 1998); see also Heard v. City of New York, 82 N.Y.2d 66, 72-73, 603 N.Y.S.2d 414, 417-18 (1993). According to the plaintiff, Time Warner assumed a duty to provide her financial support and partially performed this duty by providing for her care; she relied on this assumption of duty and was damaged by that reliance when she refrained from asserting her rights in a legal action. (Pl. Opp. Memo. to Time Warner at 15-16). There are fatal problems with this theory, however.

First, the operative inquiry in an assumed duty case of the first type is "'whether the putative wrongdoer has advanced to such

a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good.'" Nallan v. Helmsley-Spear, Inc., 50 N.Y.2d 507, 522, 429 N.Y.S.2d 606, 615 (1980) (quoting H.R. Moch, 247 N.Y. at 168, 159 N.E. at 898).  To the extent that Time Warner's actions can be shoehorned into this scenario, they cannot be said to state a claim.  According to the operative complaint, Time Warner had ceased its support by, at the latest, 1999, when Ms. Sang asserted that it had reneged on its promise.  At that point, Time Warner had not placed her in a more dangerous position than she would have been had it failed to act.  Time Warner had provided for some of her care; the Fund had been established for her benefit and, according to the allegations, funded.  Nothing Time Warner did prevented Ms. Sang from engaging in any course of action that was available to her prior to Time Warner's intervention.  Indeed, at that point, she would even have been able to file a timely legal action against Time Warner for her injuries at the Games.

That last point is also dispositive of an assumed duty claim of the second type.  When Time Warner allegedly withdrew its support -- which it had the right to do, as long as the withdrawal did not place Ms. Sang at an unreasonable risk of harm, see Taverez, 143 F.3d at 747 -- the plaintiff had not suffered any damage in reliance on that support.  The path that she asserts was foreclosed -- that of asserting rights against Time Warner in a legal action -- was still open to her in 1999, whether the hypothetical case would have been based on a contract theory or a

negligence theory.  <u>See</u> N.Y.C.P.L.R. ("CPLR") § 213(2) (six year statute of limitations for breach of contract); CPLR § 214(5) (three year statute of limitations for most actions for personal injury).

Moreover, Ms. Sang's detrimental reliance tort claim also fails for reasons similar to those that dispatched her contract and quasi-contract claims.  The reliance that underlies the assumed duty must be reasonable.  <u>See</u> <u>Heard</u>, 82 N.Y.2d at 74, 623 N.E.2d at 545 ("No liability arises, however, when the statements are made in circumstances where reliance is unforeseeable or unjustified.").  Thus, the "[d]efendant must have imparted the information under circumstances and in such a way that it would be reasonable to believe a plaintiff will rely upon it; [the] plaintiff must rely upon it in the reasonable belief that such reliance is warranted."  <u>Id.</u> at 75; 623 N.E.2d at 546.  Here, various Time Warner representatives made vague and indefinite statements to the press about taking care of Ms. Sang.  There is no allegation that any such statements were made directly to her or even to her purported guardians.  Indeed, the operative complaint states that Ms. Sang had no contact with representatives from the company and that the Lius failed to negotiate the details of any purported agreement for her care.  (4th Am. Compl., ¶¶ 168, 236).  Under these circumstances, it would not be reasonable for Time Warner to have believed that Ms. Sang would rely on its representations.  Nor was it reasonable for Ms. Sang to have done so.  I therefore recommend dismissal of this claim.

4.   Statute of Limitations

The counts against Time Warner should be dismissed for an additional, independent reason: they are all barred by the statute of limitations.  As noted above, the statute of limitations for a contract action is six years, as it is for an equitable estoppel claim.  See Schmidt v. McKay, 555 F.2d 30, 36 (2d Cir. 1977).  For an ordinary negligence or personal injury claim (like Ms. Sang's assumed duty claim) the statute of limitations is three years.  See Mancuso v. Kaleida Health, 100 A.D.3d 1468, 1469, 954 N.Y.S.2d 313, 314 (4th Dep't 2012).  Ms. Sang knew of the alleged breaches before June 3, 1999, the date on which an article was published in which she stated that Turner had reneged on its promises to support her.  (NY Daily News Article).  Pursuant to CPLR § 105(j) (stating that person who has not attained age of 18 is "infant") and CPLR § 208 (tolling statutes of limitations until plaintiff is no longer infant), the causes of action accrued on her 18th birthday, June 11, 1999.  (4th Am. Compl., ¶ 12).  Therefore, the latest these causes of action would have been timely is June 2002 and June 2005.  They were not, however, filed until April 2011.

The plaintiff's reliance on Zane v. Minion, 63 A.D.3d 1151, 882 N.Y.S.2d 255 (2d Dep't 2009), is misplaced.  In that case, the plaintiff alleged that, in exchange for conveying a one-half interest in real property to the defendant, the defendant would, at a later date, agree to refinance the property.  Id. at 1152, 882 N.Y.S.2d at 256.  When, ten years later, the plaintiff asked that the defendant do so, she refused.  Id. at 1153, 882 N.Y.S.2d at

17

257.   Ms. Sang seems to believe that this case stands for the proposition that the refusal of a demand to perform under a contract triggers the statute of limitations. (Pl. Opp. Memo. to Time Warner at 17-18). That is, of course, true if the refusal of the demand is the breach. But here, the purported breach occurred in 1999. The fact that Ms. Sang allegedly made a tardy demand in 2011 does not restart the statute of limitations.[8] If that were the rule, a statute of limitations would not afford any repose, because a putative plaintiff could merely demand a supposed contractual (or other) right at any time -- no matter how long -- after an alleged breach and thereafter file a timely action.

Finally, the plaintiff's argument that the statute of limitations must be tolled because Time Warner fraudulently concealed its failure to provide for her fares no better. This assertion relies on the notion that, after Ms. Sang complained that Time Warner had reneged, in 1999, the company asserted that it had solicited donations for her Fund. (Pl. Opp. Memo. to Time Warner at 19; 4th Am. Compl., ¶ 85(e); NY Daily News Article). However, the statement that Time Warner had, in the past, solicited donations for the Fund does not indicate that it continued to support Ms. Sang, as she alleges was promised. Therefore, this is not a misrepresentation. Moreover, as Time Warner points out, "[A] party seeking to avoid the bar of the statute of limitations on account of fraud must aver and show that he used due diligence to

---

[8] This theory would fail for another reason: Ms. Sang does not allege this purported demand in her complaint.

detect it." <u>Abercrombie v. Andrew College</u>, 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006) (internal brackets omitted). Ms. Sang has made no such allegations.

C.   <u>The Individual Defendants' Motion to Dismiss</u>

The Fourth Amended Complaint asserts nine causes of action seeking various remedies against the Lius or Mr. Mo, or both: (1) an accounting of the Fund by the Individual Defendants, as well as return of any amount found to be due, disgorgement of any funds commingled with the Individual Defendants' own funds, and damages (4th Am. Compl. at 60); (2) an accounting by the Lius of other property belonging to Ms. Sang, as well as damages (4th Am. Compl. at 61); (3) payment of damages for unjust enrichment by the Lius (4th Am. Compl. at 62); (4) an accounting by the Lius of property unlawfully converted from Ms. Sang, return of such property, and damages (4th Am. Compl. at 65); (5) payment of damages by the Lius for breach of fiduciary duty, as well as disgorgement of funds intermingled with the Liu's own funds (4th Am. Compl. at 67); (6) payment of damages by Mr. Mo for breach of fiduciary duty (4th Am. Compl. at 68); (7) payment of damages by the Lius for defamation, as well as injunctive relief (4th Am. Compl. at 69-70); (8) an accounting of profits made by the Lius as a result of their alleged invasion of Ms. Sang's privacy, disgorgement of and imposition of a constructive trust over such profits, and payment of damages (4th Am. Compl. at 71); and (9) payment of damages by the Lius (and 30 Doe defendants currently unknown) for "cyberharassment" (4th Am. Compl. at 72). Ms. Sang asks for punitive damages for defamation,

invasion of privacy, and cyberharassment.  In addition, she seeks costs, including attorneys' fees, for the causes of action for accounting, unjust enrichment, breach of fiduciary duty, invasion of privacy, and cyberharassment.  For the cause of action for conversion, she seeks costs without attorneys' fees.  The Individual Defendants move to dismiss each of these claims.

      1.   <u>Waiver and Statute of Limitations</u>

As a preliminary matter, the Individual Defendants advance two arguments addressed not to specific causes of action, but to the Fourth Amended Complaint generally.  First, they contend that, because Ms. Sang failed to object to my earlier report and recommendation addressing the motion to dismiss the Third Amended Complaint, she has "waived any further judicial review of numerous findings" in that opinion.  (Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Plaintiff's Action Pursuant to Fed. R. Civ. P. Rule 12(b)(6) ("Ind. Def. Memo.") at 6-7).  This is a puzzling claim, both factually and legally.

It is factually curious because Ms. Sang did indeed file timely and comprehensive objections to the November 21 R&R (Affirmation by Ming Hai in Response to Magistrate Judge's Recommendation and Report dated Nov. 30, 2011), which were addressed in the order adopting the R&R in part (Memorandum & Order dated May 9, 2012 ("May 9 Order")).  Additionally, the Individual Defendants seem to misinterpret statements in the report and recommendation as findings of fact, when they were merely interpretations of the allegations in the prior complaint.  (Ind.

Def. Memo. at 6-7; Nov. 21 R&R at 15-16).

Moreover, it is unclear how the Individual Defendants can harmonize their position with the fact that Ms. Sang was given leave to re-plead her deficient claims. (Nov. 21 R&R at 15, 18, 30; May 9 Order at 8-9). The purpose of allowing such re-pleading is so that the plaintiff can respond to identified deficiencies. Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 266 (S.D.N.Y. 2008).

> Not surprisingly, some later pleadings . . . necessarily may be at odds with allegations the party asserted in the original pleadings. It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleading.

Id. at 266-67 (internal quotation marks omitted); see also id. at 267 n.34 (collecting cases). Thus, it would be unfair (and inefficient) to allow amendment but nevertheless hold fast to interpretations made based on facts alleged in the earlier pleading. Of course, to the extent that the plaintiff merely repeats allegations from her earlier complaint with no added context, it is unlikely that my interpretation of those allegations will change. But that outcome does not depend on the Individual Defendants' mistaken theory of waiver.

Second, the Individual Defendants assert that the complaint must be dismissed because it fails to plead "specific factual allegations" that the events at issue all occurred within the various statutes of limitations that govern the claims. (Ind. Def. Memo. at 8-9). However, "[a] statute of limitations provides an

affirmative defense, and the burden is on the defendant to
establish when a federal claim accrues."  Gonzalez v. Hasty, 651
F.3d 318, 322 (2d Cir. 2011).   Therefore, this general argument
also fails.  I will address more specific limitations issues below.

### 2.   Accounting of the Fund

"Under New York law, an accounting is a distinct cause of
action rooted in equity.  Such action seeks an adjustment of the
accounts of the parties and a rendering of judgment for the balance
ascertained to be due."[9]  DiTolla v. Doral Dental IPA of New York,

---

[9] As noted above, the parties did not brief any choice of law
question.   Unlike the claims against Time Warner, the claims
against the Individual Defendants sound in tort -- even the
equitable claims are more like tort claims than like contract
claims -- and thus, under New York's interest analysis, New York
law, as the law of the place of the tort, would likely apply to
most of them.  See In re September 11 Litigation, __ F. Supp. 2d
__, __, 2012 WL 5870143, at *3 (S.D.N.Y. 2012) ("Under New York
choice of law rules, the state in which a tort occurred has the
strongest interest in applying its conduct-regulating rules.");
LaSala v. Bank of Cyprus Public Co., 510 F. Supp. 2d 246, 264 n.5
(S.D.N.Y. 2007) (applying choice of law principles governing tort
claims to claim for equitable relief that plaintiff characterized
as arising under tort law).   For the defamation and invasion of
privacy claims, the outcome might be different.   Under New York
law, defamation claims are usually governed by the law of the
plaintiff's domicile.  In re State Street Bank & Trust Co. Fixed
Income Funds Investment Litigation, 772 F. Supp 2d 519, 558
(S.D.N.Y. 2011).   When the publication is widely distributed, a
"comprehensive, multi-factor test" is applied to determine the
applicable law, including factors such as "where plaintiff suffered
the greatest injury; where the statements emanated and were
broadcast; where the activities to which the allegedly defamatory
statements refer took place; and the policy interests of the states
whose law might apply."   Id. at 559 (internal quotation marks
omitted).   This test might result in Chinese law applying to the
defamation claim.   Similarly, New York law indicates that claims
charging an invasion of the right to privacy "are governed by the
substantive law of the plaintiff's domicile because rights of
publicity constitute personalty."   Rogers v. Grimaldi, 875 F.2d
994, 1002 (2d Cir. 1989) (citing Southeast Bank, N.A. v. Lawrence,
66 N.Y.2d 910, 912, 498 N.Y.S.2d 775, 776 (1985)); Cuccioli, 150 F.
Supp. 2d at 574 & n.39.   However, as with the claims against Time

LLC, 469 F.3d 271, 275 (2d Cir. 2006).  Generally, a plaintiff must allege "(1) a relationship of a fiduciary or confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) the absence of an adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." Matsumura v. Benihana National Corp., No. 06 Civ. 7609, 2007 WL 1489758, at *4 (S.D.N.Y. May 21, 2007) (citing 300 Broadway Realty Corp. v. Kommit, 37 Misc. 2d 325, 325, 235 N.Y.S.2d 205, 206 (Albany Sup. Ct. 1962)).  Where there is a fiduciary relationship between the parties, it is not necessary to allege wrongdoing on the part of the defendant. Adam v. Cutner & Rathkopf, 238 A.D.2d 234, 242, 656 N.Y.S.2d 753, 759 (1st Dep't 1997); Morgulas v. J. Yudell Realty, Inc., 161 A.D.2d 211, 213-14, 554 N.Y.S.2d 597, 600 (1st Dep't 1990); In re Gershenoff, 2 Misc. 3d 847, 850, 774 N.Y.S.2d 644, 646 (N.Y. Sup. Ct. 2003).

Ms. Sang has sufficiently alleged a fiduciary relationship with the Lius in connection with the Fund.  A fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation," that is, "when confidence is reposed on one side and there is resulting superiority and influence on the other." A.G. Capital Funding Partners, L.P. v. State Street Bank & Trust Co., 11 N.Y.3d 146, 158, 866 N.Y.S.2d 578, 585 (2008) (internal quotation marks

_____

Warner, the parties have given their implied consent to the application of New York law. See Wilde, 576 F. Supp. 2d at 603.

omitted).  The relationship of trustee to beneficiary is a textbook example.  See, e.g., In re Heller, 6 N.Y.3d 649, 655, 816 N.Y.S.2d 403, 407 (2006); Langford v. Roman Catholic Diocese of Brooklyn, 177 Misc. 2d 897, 899 n.8, 677 N.Y.S.2d 436, 438 n.8 (Kings Sup. Ct. 1998).  According to the complaint, the Lius had complete control over the Fund, which was established for Ms. Sang's benefit.  (4th Am. Compl., ¶¶ 3, 120-121, 138, 156-157, 160). Similarly, as attorney for the Lius as trustees, Mr. Mo had fiduciary duties to Ms. Sang, the beneficiary.  See Weingarten v. Warren, 753 F. Supp. 491, 495-96 (S.D.N.Y. 1990); Heaven v. McGowan, 40 A.D.3d 583, 585, 835 N.Y.S.2d 641, 644 (2d Dep't 2007); see also In re Bond & Mortgage Guarantee Co., 303 N.Y. 423, 430, 103 N.E.2d 721, 725 (1952) ("[B]y reason of their status as attorneys of the trustee, they were no less fiduciaries than was the trustee himself." (internal quotation marks and parenthesis omitted)).  Thus Ms. Sang has alleged that the Individual Defendants were her fiduciaries with respect to the Fund.[10]

The Individual Defendants object that they had no fiduciary obligations to her within the six-year statute of limitations.[11]

---

[10] This is true whether or not the Fund met the technical requirements of a trust.  See Rhodes v. Little Fall Dairy Co., 230 A.D. 571, 573, 245 N.Y.S. 432, 434 (4th Dep't 1930) ("It is not necessary that there be a technical trust.  Equity will take jurisdiction where there is a relation of agency and confidence and the agent has received property of the principal for which he refuses to account." (internal quotation marks omitted)).

[11] The Individual Defendants do not argue that the accounting cause of action is merely a method to calculate monetary damages and so should be governed by a three-year statute of limitations. See Leveraged Leasing Administration Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 49 (2d Cir. 1996).  I therefore do not address

(Ind. Def. Memo. at 10-11).  They argue that the Lius' alleged role as the plaintiff's guardians must have ended when she returned to China in 1999[12] and that she fails to allege "that the Lius had any continuing fiduciary duties to her beyond providing the balance of the Fund to her in . . . July 2008, a duty which [they] fulfilled." (Ind. Def. Memo. at 11).  To the extent that this argument rests on the Individual Defendants' assertion that they fulfilled all obligations they had to Ms. Sang, it fails, because an allegation of wrongdoing is not required in this situation.[13]  See, e.g., Adam, 238 A.D.2d at 242, 656 N.Y.S.2d at 759.  The statute of limitations on a cause of action for an accounting "does not begin to run until the fiduciary has openly repudiated his or her obligation or the relationship has otherwise been terminated."  Robinson v. Day, __ N.Y.S.2d __, __, 103 A.D.3d 584, __, 2013 WL 709768, at *2 (1st Dep't 2013) (internal quotation marks omitted); Knobel v. Shaw, 90 A.D.3d 493, 496, 936 N.Y.S.2d 2, 7 (1st Dep't 2011).  Because, as

---

that possibility.  In any case, the action would still be timely, even using the shorter limitations period.

[12] The Fourth Amended Complaint does not make clear when Ms. Sang returned to China.  However, the Third Amended Complaint indicates that she returned ten months after her injury, which occurred in July 1998, meaning that she left the United States in approximately May 1999.  (3rd Amended Complaint ("3d Am. Compl."), ¶ 41).

[13] This is also the reason that the Individual Defendants are incorrect when they state that the "claim to an accounting rises or falls on the assertion that the Lius or [Mr.] Mo may have misappropriated monies in the Fund."  (Ind. Def. Memo. at 10).  Moreover, there is a plausible allegation of wrongdoing with regard to the Fund: the plaintiff asserts that $30,000 was disbursed to "unknown persons or entities" for travel expenses that had reportedly been paid by the Lius.  (4th Am. Compl., ¶ 133).

I have already observed, any fiduciary relationship "ceased in 2008 when [the Lius] ceased to manage the [] Fund" (Nov. 21 R&R at 17), the claim is timely.[14]

Next, the Individual Defendants assert that the plaintiff failed to allege that they refused her demand for an accounting. (Ind. Def. Memo. at 11).  A demand and refusal is not required in all cases.  Matsumura, 2007 WL 1489758, at *4 (noting that demand and refusal is required "in some cases").  It is required in situations such as where a partner requests the books and records of a partnership, see, e.g., Gross v. Gross, 38 A.D.3d 893, 894, 833 N.Y.S.2d 563, 564 (2d Dep't 2007); Kaufman v. Cohen, 307 A.D.2d 113, 124, 760 N.Y.S.2d 157, 168 (1st Dep't 2003), but this is not such a case.  Thus, it is not clear that a demand and refusal need be pled.  Moreover, the complaint alleges that Ms. Sang asked the Lius for documents and they directed her to Abacus Bank, and Abacus Bank directed her to Mr. Mo.  (4th Am. Compl., ¶¶ 139-140).  In tandem with the claim that the Lius and Mr. Mo "[f]ailed or refused to account for the funds received or disbursed" (4th Am. Compl., ¶ 142(a)), it is a fair inference that the Individual Defendants refused to produce the requested records.  See Erickson, 551 U.S. at 93-94 (on motion to dismiss, court must make all reasonable inferences in favor of non-moving party).

---

[14] The Lius' are mistaken that the claim is time-barred because any alleged breach occurred in May 1999 when Ms. Sang returned to China.  (Ind. Def. Memo. at 13).  The complaint alleges that the Lius continued in their roles as trustees or managers of the Fund until July 2008.  (4th Am. Compl., ¶ 136).

Two additional arguments the Individual Defendants make are closely related.  They assert that (1) the plaintiff has not shown that there is no adequate remedy at law and (2) this claim must be dismissed because a cause of action for an accounting cannot co-exist with one for breach of contract covering the same subject matter.  (Ind. Def. Memo. at 11-12).  The thrust of both of these contentions is that Ms. Sang could recover her alleged losses from the Fund through a breach of contract claim.  This argument is unsuccessful for at least three reasons.  First, at this stage of the litigation, a plaintiff may plead an equitable cause of action, such as for an accounting, and a legal cause of action, such as for breach of contract, in the alternative.  See CPLR § 3014; Auqston v. Spry, 282 A.D.2d 489, 491, 723 N.Y.S.2d 103, 106 (2d Dep't 2001).  Second, "it is clear that whenever there is a fiduciary relationship between the parties, as is the situation here, there is an absolute right to an accounting notwithstanding the existence of an adequate remedy at law." Koppel v. Wein, Lane & Malkin, 125 A.D.2d 230, 234, 509 N.Y.S.2d 327, 330 (1st Dep't 1986) (collecting cases).  Third, the complaint does not include a breach of contract claim against the Individual Defendants.  Indeed, none of the complaints filed in this case have included one.  Rather, earlier complaints included promissory estoppel and unjust enrichment claims against the Lius (Verified Complaint dated April 26, 2011, ¶¶ 62-64, 94-98; Amended Verified Complaint dated May 13, 2011, ¶¶ 83-86, 122-127; 2nd Amended Complaint dated June 8, 2011, ¶¶ 83-87, 124-129; 3d Am. Compl., ¶¶ 80-84, 112-116), which, as quasi-

27

contractual claims, are premised on the absence of a contract. See, e.g., Dessert Beauty, Inc. v. Platinum Funding Corp., 519 F. Supp. 2d 410, 420 & n.78 (S.D.N.Y. 2007) (collecting cases); IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 361 (2009).

For these reasons, I recommend denying the Individual Defendants' motion to dismiss the accounting claim as to the Fund.[15]

### 3. Accounting of Other Property

The plaintiff also seeks an accounting from the Lius of "property, equipment, medical supplies or medicines, insurance claims filed and insurance settlement money received," and memorabilia given to her. (4th Am. Compl., ¶¶ 271-273). She alleges that the Lius exercised "complete control" over her medical treatment from shortly after the accident until April 2011. (4th Am. Compl., ¶¶ 102, 145, 154, 156, 158, 160). She further alleges that the Lius kept the memorabilia for "safe keeping" and have not returned it. (4th Am. Compl., ¶ 76).

It is simply not plausible that the Lius continued to exercise

---

[15] The Individual Defendants make some additional arguments that are easily dealt with. They indicate that they are not required to provide Ms. Sang with an accounting because she did not entrust money to the Fund. (Ind. Def. Memo. at 10). That is irrelevant. She was the intended beneficiary of the Fund, and it is axiomatic that a beneficiary may compel an accounting. The further claim that the plaintiff "disclaims any knowledge that money was entrusted to the Fund by anyone" (Ind. Def. Memo. at 10) is bizarre, given that no one disputes that Ms. Sang was provided some money from the Fund in 2008. And the assertion that the complaint "disclaims any obligation by the Lius derived from management of the Fund" (Ind. Def. Memo. at 10) seems to be a willful misreading. The complaint alleges that the Lius, themselves, denied that they were managers and clearly states that this denial was false (4th Am. Compl., ¶¶ 126(e), 128).

the requisite control over the plaintiff's medical and insurance decisions and medical supplies once she left the United States to return to China in 1999.  Unlike the Fund, the corpus of which the Lius controlled until 2008, Ms. Sang herself left their control when she returned home.  It is clear from the complaint, which describes the seriousness of her injuries (4th Am. Compl., ¶¶ 145-150), that it was not reasonable for Ms. Sang to rely on the Lius to make decisions about her health care from halfway around the globe.  Therefore, to the extent that the Lius were ever Ms. Sang's fiduciaries with regard to these matters, that relationship ended approximately 12 years prior to the filing of this action.  In addition, Ms. Sang does not properly allege a cause of action for an accounting based on the memorabilia.  She fails to allege facts making a plausible case that, merely because she entrusted the Lius with this property, they became fiduciaries.  See Midamerica Productions v. Derke, No. 601381/2008, 33 Misc. 3d 1209(A), 2010 WL 7765577, at *6 (N.Y. Sup. Ct. Dec. 27, 2010) (dismissing claim for accounting in part because plaintiffs made no allegation that the "defendants [held] money or property to which defendants would owe plaintiffs a duty of accounting").  To the extent that a fiduciary duty as to this property derived from the Lius' status as Ms. Sang's guardians, that duty evaporated when Ms. Sang returned to China and the Lius no longer functioned as guardians.

Because any conceivable fiduciary relationship between the Lius and the plaintiff with regard to these matters ended in 1999, this claim is time-barred, unless the statute of limitations is

tolled, a question I discuss below.

    4.  <u>Unjust Enrichment</u>

    There are three elements to a claim of unjust enrichment under New York law: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." <u>Coach, Inc. v. Horizon Trading USA Inc.</u>, __ F. Supp. 2d __, __, 2012 WL 5451274, at * 7 (S.D.N.Y. 2012) (internal quotation marks omitted). Generally, the cause of action accrues "'upon the occurrence of the wrongful act giving rise to a duty of restitution.'" <u>Golden Pacific Bancorp v. F.D.I.C</u>, 273 F.3d 509, 520 (2d Cir. 2001) (quoting <u>Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.</u>, 192 A.D.2d 501, 503, 596 N.Y.S.2d 435, 437 (2d Dep't 1993)). However, as noted above, "the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." <u>Id.</u> at 518 (internal quotation marks omitted) (applying fiduciary accrual rule to unjust enrichment claim where plaintiff and defendant had fiduciary relationship). The statute of limitations for unjust enrichment is six years where the plaintiff claims equitable relief, such as an accounting, and three years where the plaintiff claims monetary relief. <u>See</u> Kermanshah, 580 F. Supp. 2d at 263; <u>see also</u> <u>Grynberg v. Eni S.p.A.</u>, 06 Civ. 6495, 2007 WL 2584727, at *3 (S.D.N.Y. Sept. 5, 2007) (applying three-year statute of limitations to unjust enrichment claim where plaintiff

sought "restitution for monetary damages sufficient to fully compensate plaintiffs for their damages").

The Individual Defendants argue that this claim is time-barred because any unjust enrichment occurred in 1999, when Ms. Sang returned to China.  (Ind. Def. Memo. at 14-15).  However, as discussed above, the plaintiff has sufficiently pled that the Lius had fiduciary duties to her regarding the Fund.  Therefore, the claim as to the Fund accrued in 2008 when the relationship ended.  See Golden Pacific Bancorp, 273 F.3d at 518.  This is within the three-year statute of limitations for unjust enrichment claims seeking damages.

Ms. Sang also seeks to recover property, such as memorabilia and medical supplies.  (4th Am. Compl., ¶¶ 275-281).  With regard to these items, there was no fiduciary relationship.  Therefore, any claim would have accrued in 1999 when Ms. Sang left the care of the Lius and they retained the property.  The plaintiff's demand for its return in 2008 does not affect this accrual date.  A demand for return is not an element of an unjust enrichment claim and therefore is irrelevant to the accrual date.  See Goodman v. Port Authority of New York and New Jersey, 850 F. Supp. 2d 363, 376 (S.D.N.Y. 2012) (setting out elements of unjust enrichment, which do not include demand and refusal, and elements of conversion, which do).  Given the relief sought, which is in the nature of replevin, the statute of limitations that should apply to this claim is three years.  See CPLR § 214(3); Kapernekas v. Brandhorst, 638 F. Supp. 2d 426, 428 (S.D.N.Y. 2009); Green Bus Lines, Inc. v.

General Motors Corp., 169 A.D.2d 758, 759, 565 N.Y.S.2d 124, 125
(2d Dep't 1991) ("In applying the [s]tatute of [l]imitations,
courts must look to the essence of the claim, and not to the form
in which it is pleaded."). Thus, this claim is time-barred, unless
the statute of limitations is tolled.[16]

>    5.   Conversion

"To state a claim for conversion in New York, a plaintiff must
allege that (1) the party charged has acted without authorization,
and (2) exercised dominion or a right of ownership over property
belonging to another, (3) the rightful owner makes a demand for the
property, and (4) the demand for the return is refused." Goodman,
850 F. Supp. 2d at 376 (internal quotation marks and brackets
omitted).  In addition, when the alleged converted property is
money, the money must be "described or identified in the same
manner as a specific chattel." Interior by Mussa, Ltd. v. Town of
Huntington, 174 Misc. 2d 308, 310, 664 N.Y.S.2d 970, 972 (2d Dep't
1997) (internal quotation marks omitted).  That is, a claim for
conversion of money must allege that the money is "specifically
identifiable," such as money "paid into, or [] intended to be paid
into, a designated fund for [the plaintiff's] benefit," or "set

---

[16] The Individual Defendants assert that Ms. Sang "does not
deny that express contracts govern the subject matter of this
dispute" and refers to earlier complaints that purportedly mention
such contracts.  (Defendants' Reply Memorandum of Law in Support of
Joint Motion to Dismiss Plaintiff's Action Pursuant to Fed. R. Civ.
P. Rule 12(b)(6) ("Ind. Def. Reply") at 4).  As noted above, the
plaintiff has never asserted a breach of contract claim against the
Lius.  The Individual Defendants fail to cite any allegation from
any prior complaint that shows that the Fund or the personal
property was governed by a contract.

aside and held in trust" for the plaintiff.  Massive Paper Mills v. Two-Ten Corp., 669 F. Supp. 94, 95 (S.D.N.Y. 1987) (internal quotation marks omitted).  The statute of limitations is three years.  CPLR § 214(3); Kermanshaw, 580 F. Supp. 2d at 262. Generally, the cause of action accrues when the conversion occurs, id.; however, when the original possession of the chattel is lawful, the limitations period begins when there is a demand for the property and consequent refusal.  See D'Amico v. First Union National Bank, 285 A.D.2d 166, 172, 728 N.Y.S.2d 146, 151 (1st Dep't 2001) (citing MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co., 193 N.Y. 92, 101, 85 N.E. 801, 803 (1908)).

Ms. Sang claims that the Lius converted money from the Fund, insurance proceeds, and memorabilia.  (4th Am. Compl., ¶¶ 287-89, 293-94).  She has stated a claim for conversion of money from the Fund.  First, the allegedly converted money is specifically identifiable, having been paid into the Fund for her benefit.  The Individual Defendants argue that she had no immediate possessory interest in the money, apparently because it was held in trust. (Ind. Def. Memo. at 16).  However, the principal of the Fund was released to Ms. Sang in 2008.  At that point, she had an immediate possessory interest in it.  Cf. Modjeska v. Greer, 233 A.D.2d 589, 590, 649 N.Y.S.2d 734, 735 (3d Dep't 1996) ("Plaintiffs did not meet th[e] burden [of demonstrating legal ownership or immediate superior right of possession] since they acknowledge . . . that the trust is still extant, and thus, as the apparent owner of the [corpus] in question, it would be the only entity entitled to

33

pursue this cause of action."). She alleges that she demanded the return of the money and that the demand was refused. (4th Am. Compl., ¶¶ 293-294). This, coupled with the reasonable inference derived from the complaint that $30,000 of the Fund was improperly withheld (4th Am. Compl., ¶ 133), states a claim for conversion. The Individual Defendants assert that the claim is untimely because the conversion could only have occurred in 1999, when Ms. Sang returned to China.   On the contrary, because the Lius were fiduciaries, the claim accrued in July 2008 at the termination of that relationship.   Golden Pacific Bancorp, 273 F.3d at 518. Moreover, even without a fiduciary relationship, it is a reasonable inference from the complaint that any conversion of money from the Fund occurred in July 2008, when the "alleged remaining balance of the Fund was turned over" to Ms. Sang. (4th Am. Compl., ¶ 136). As such, the statute of limitations had not yet run when she filed this suit in April 2011.

The insurance proceeds are a different matter. Ms. Sang has not alleged that the proceeds are specifically identifiable. She neither identifies any policy pursuant to which the proceeds allegedly were paid, nor indicates that the proceeds were to be paid into a specific fund or held in trust for her. See Massive Paper Mills, 669 F. Supp. at 96.   Therefore, she has not sufficiently alleged that the insurance proceeds are capable of conversion.

On the other hand, Ms. Sang states a claim for conversion of the memorabilia.   The Individual Defendants conclude that this

34

claim is time-barred because it occurred, if at all, in 1999 when Ms. Sang left the United States and returned to China.  (Ind. Def. Memo. at 15; Ind. Def. Reply at 5).  However, the complaint alleges that the Lius had possession of the property with Ms. Sang's permission.  (4th Am. Compl., ¶¶ 76, 286).  As such, the initial possession of the memorabilia by the Lius was lawful, and the conversion claim did not accrue until 2011, when the plaintiff demanded its return and the Lius refused.  D'Amico, 285 A.D.2d at 172, 728 N.Y.S.2d at 151.  The Individual Defendants assert that the plaintiff has not alleged "that she had an enforceable right to the property."  (Ind. Def. Reply at 5).  However, the complaint is clear that the memorabilia were gifts sent by the public to her.  (4th Am. Compl., ¶¶ 76, 285).  They therefore belonged to her.

Finally, the Individual Defendants argue that Ms. Sang abandoned the property and therefore lost all rights to it.  (Ind. Def. Reply at 5).  "Abandonment of property requires a confluence of intention and action by the owner.  Accordingly, before possessory rights will be relinquished, the law demands proof both of an owner's intent to abandon the property and of some affirmative act or omission demonstrating that intention."  Hoelzer v. City of Stamford, Connecticut, 933 F.2d 1131, 1138 (2d Cir. 1991).  The burden of proof rests on the party claiming abandonment.  Id.  Here, the Individual Defendants do not make a serious attempt to show abandonment, merely stating in conclusory language that the property has been abandoned.  Accordingly, I recommend that the Individual Defendants' motion to dismiss be

denied with regard to the plaintiff's claims of conversion of money
from the Fund and of the memorabilia, and granted as to the claim
of conversion of insurance proceeds.

      6.   Breach of Fiduciary Duty Against the Lius

"Under New York law, the elements of a cause of action for
breach of fiduciary duty are: '(i) the existence of a fiduciary
duty; (ii) a knowing breach of that duty; and (iii) damages
resulting therefrom.'" Northern Shipping Funds I, LLC v. Icon
Capital Corp., ___ F. Supp. 2d ___, ___, 2013 WL 440632, at *4
(S.D.N.Y. 2013) (footnote omitted) (quoting Johnson v. Nextel
Communications, Inc., 660 F.3d 131, 138 (2d Cir. 2011)). When the
requested remedy is equitable in nature the statute of limitations
is six years; however, where, as here, the claim requests primarily
damages, the limitations period is three years.[17]  IDT Corp., 12
N.Y.3d at 139, 879 N.Y.S.2d at 359.  The claim accrues "when all
elements of the tort can be truthfully alleged in the complaint."
Id. at 140, 879 N.Y.S.2d at 360 (internal quotation marks omitted).
Because damage is an essential element of a breach of fiduciary
duty claim, the claim "is not enforceable until damages are
sustained."  Id., 879 N.Y.S.2d at 360 (internal quotation marks
omitted).  Although actions for breach of fiduciary duty are a
"special breed of cases that often loosen normally stringent

_____

[17]  The plaintiff asserts that she requests "the equitable
remedy of accounting" for her breach of fiduciary duty claim
against the Lius.  (Plaintiff's Memorandum of Law in Opposition to
Defendants Lius [sic] and Mo's Joint Motion to Dismiss the Fourth
Amended Complaint ("Pl. Opp. Memo. to Ind. Def.") at 19).  That is
incorrect.  The complaint does not seek an accounting for breach of
fiduciary duty.  (4th Am. Compl., ¶¶ 306-312).

requirements of causation and damages" because their purpose "is not merely to compensate the plaintiff for wrongs committed . . . but also to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others," the plaintiff in such an action "must, at a minimum, establish that the offending parties' actions were a substantial factor in causing an identifiable loss." Gibbs v. Breed, Abbott & Morgan, 271 A.D.2d 180, 189, 710 N.Y.S.2d 578, 584 (1st Dep't 2000) (alteration in original) (internal quotation marks, brackets, citations, and emphasis omitted).

The plaintiff asserts that the Lius breached their fiduciary duty to her in six ways, by failing (1) "to keep accurate account of her money or property" (4th Am. Compl., ¶ 304); (2) "to follow through with financial plans with Time Warner" (4th Am. Compl., ¶ 304); (3) "to make full disclosure of and account for their business or profit made by using her celebrity status, professional persona, image, photo, voice and likeness without permission" (4th Am. Compl., ¶ 304); (4) "to register with the attorney general or IRS for the Fund" (Pl. Opp. Memo. to Ind. Def. at 19; 4th Am. Compl., ¶ 142(f)); (5) to act in accordance with their "duty of full disclosure and good faith and fair dealing" (Pl. Opp. Memo. to Ind. Def. at 19; 4th Am. Compl., ¶ 142); and (6) to act in accordance with their duty of undivided loyalty, by "self-dealing" and commingling assets (Pl. Opp. Memo. to Ind. Def. at 19; 4th Am. Compl., ¶¶ 142(i), 304). Some of these bases overlap with each other. Removing the redundancies and vagueness, the plaintiff

alleges the following breaches:

    (1) failure to keep accurate account of the Fund;

    (2) failure to follow through with financial plans with Time Warner;

    (3) failure to account for profit related to the alleged invasion of privacy;

    (4) failure to register the Fund; and

    (5) misappropriating the Fund.

The Individual Defendants' first objection is that this cause of action as amended exceeds the scope of the permission to replead granted in the November 21 R&R (and, presumably, the May 9 Order (May 9 Order at 3-4, 9)). They argue that, pursuant to those opinions, Ms. Sang could only allege that the Lius breached their fiduciary duty to her by using her likeness without authorization and by misappropriating the Fund. (Ind. Def. Memo. at 17). As the Second Circuit has recognized, "District courts in this Circuit have routinely dismissed claims in amended complaint where the court granted leave for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." Palm Beach Strategic Income, LP v. Salzman, 457 F. App'x 40, 43 (2d Cir. 2012). However, those cases involve amendments that allege entirely new causes of action or rely on a different set of facts than those included in the prior complaint. See id. at 43-44 (affirming district court's dismissal of amended complaint for breach of contract where it relied on different agreement); Grimes v. Fremont General Corp., __ F. Supp. 2d __, __, 2013 WL 1187474, at *6 n.5 (S.D.N.Y. 2013) (dismissing new causes of action

38

pled in amended complaint); Pagan v. New York State Division of Parole, No 98 Civ. 5840, 2002 WL 398682, at *3 (S.D.N.Y. March 13, 2002) (dismissing previously unpled causes of action); Willett v. City University of New York, No. 94 CV 3873, at *2 (E.D.N.Y. Feb. 18, 1997) (same); Kuntz v. New York State Board of Elections, 924 F. Supp. 364, 367 (N.D.N.Y. 1996) (dismissing claims not pled in original complaint and stating, "Plaintiff has taken the Court's leave to amend two of the three causes of action in his initial . . . Complaint and used it to expand his claims into five causes of action," some of which were based on "entirely new factual allegations"). That is not the case here. The plaintiff's Third Amended Complaint included a cause of action for breach of fiduciary duty against the Lius (as well as against Mr. Mo). (3d Am. Compl., ¶¶ 90-95). The factual bases for the present claim were included in the previous complaint. Therefore, this claim should not be dismissed on the basis that Ms. Sang has exceeded the permission granted in the rulings on the prior motion to dismiss.[18]

Nevertheless, this cause of action should be dismissed. The first basis for relief -- the failure to keep an accurate accounting of the Fund -- is based on the same allegations as the accounting claim as to the Fund and the requested relief is subsumed into the remedies requested in that cause of action. Similarly, the fifth basis -- misappropriation of the Fund --

---

[18] The Individual Defendants do not raise this objection to the genuinely new causes of action, of which there are three -- two for an accounting and one for cyberharassment -- perhaps because they recognize that the previous complaint included the factual bases for these claims as well. (Ind. Def. Memo. at 10, 24).

mirrors that same cause of action.  Although, as discussed above, it is not necessary for Ms. Sang to plead misappropriation in order to state a cause of action for an accounting of the Fund, her claim, as well as the relief she seeks, clearly rests on such an allegation.  (4th Am. Compl., ¶¶ 131-133, 142-144).  Because these two theories for her breach of fiduciary duty claim rely on the same facts and request the same relief as the claim for an accounting of the Fund, there is no reason to treat these claims as separate bases for recovery, and I recommend their dismissal.  See Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 271, 780 N.Y.S.2d 593, 596 (1st Dep't 2004) (stating that breach of fiduciary duty claim based on same facts and seeking same relief as legal malpractice claim should be dismissed as duplicative).

I also recommend that the claim for breach of fiduciary duty based on the failure to register the Fund with the New York State Attorney General or the IRS be dismissed.  The plaintiff has not even attempted to show how the failure to register caused her any identifiable loss.  Gibbs, 271 A.D.2d at 188-89, 710 N.Y.S.2d at 584.  Her opposition brief merely states, in a conclusory fashion, that she "lost the [m]emorabilia, the specially designed equipment, medicine or supplies . . ., the financial records, and the other losses due to the failure to register the Fund with the proper government agency." (Pl. Opp. Memo. to Ind. Def. at 21).  That is insufficient.  Therefore, she has failed to state a claim.

The claim that the Lius breached their fiduciary duty to Ms.

Sang by failing to follow through with Time Warner to plan for her
financial future should be dismissed.  This claim hinges on the
allegation that "the Lius or [Mr.] Mo did not fulfill or discharge
their fiduciary duty to diligently follow through with Time Warner
[] to work out the specifics of the oral contract or agreement with
Time Warner to secure Sang Lan's future." (4th Am. Compl., ¶ 168).
As discussed above in relation to Time Warner's motion to dismiss,
there was no such contract or agreement.  Therefore, neither the
Lius nor Mr. Mo can have had a duty to "follow through" to "work
out [its] specifics." (4th Am. Compl., ¶ 168).

Finally, the claim that the Lius breached their fiduciary duty
by failing to disclose and account for profit made by the use of
Ms. Sang's name, portrait, picture, or voice without her consent is
also defective.  In the present complaint, Ms. Sang alleges in the
most conclusory language that the Lius had a fiduciary duty to her
regarding such matters.  (4th Am. Compl., ¶¶ 181, 302).  This is
insufficient under Twombly and Iqbal.  Any such duty could be
imputed to the Lius, if at all, by virtue of their roles as Ms.
Sang's guardians.  However, they cannot have continued to function
as her guardians after she returned to China in 1999.  (Ind. Def.
Reply at 5-6).  The plaintiff's reliance on the "continuous
representation" doctrine (Pl. Opp. Memo. to Ind. Def. at 20) fails.
This doctrine will toll the statute of limitations on claims of
professional malpractice.  Brooks v. AXA Advisors, LLC, __ N.Y.S.2d
___, ___, 104 A.D.3d 1178, ___, 2013 WL 1027419, at *2 (4th Dep't
2013).  However, this is not such a claim, and the Lius "are not

41

professionals for purposes of malpractice liability." <u>Id.</u> This claim is therefore insufficiently pled and time-barred.

In sum, I recommend dismissal of all of the breach of fiduciary duty claims against the Lius.

### 7. Breach of Fiduciary Duty Against Mr. Mo

The plaintiff alleges that Mr. Mo breached fiduciary duties he owed her as her attorney.[19]  (4th Am. Compl., ¶¶ 308-311). Specifically, she asserts that Mr. Mo (1) failed to keep her informed about "important decisions"; (2) failed to follow through with Time Warner to secure her financial future; (3) took an adverse position against her after he ceased functioning as her attorney; (4) failing to disclose actual or potential conflicts of interest; (5) failing "to competently discharge duties related to the Fund"; and (6) failing to account to her as to the "funds in the Fund."  (4th Am. Compl., ¶ 311).

The pivotal question here, then, is whether Mr. Mo and Ms. Sang had an attorney-client relationship.  "Under New York law, the relationship of an attorney and client is contractual, and the rules governing contractual formation determine whether such a relationship has been created." <u>Kubin v. Miller</u>, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992) (internal quotation marks omitted).

---

[19] In her opposition memo, the plaintiff seems to indicate that Mr. Mo also breached his fiduciary duty as a manager or attorney for the Fund. (Pl. Opp. Memo. to Ind. Def. at 23-24).  However, a fair reading of the complaint reveals that her breach of fiduciary duty claim against him derives from her contention that he was her attorney (4th Am. Compl., ¶¶ 310-311).  In any case, any of the bases for this claim premised on his management of the Fund would be subsumed under the accounting claim.

While a formal contract "is not essential to create a legal services contract," Talansky v. Schulman, 2 A.D.3d 355, 358, 770 N.Y.S.2d 48, 52 (1st Dep't 2003), "there must be an explicit undertaking to perform a specific task." Nelson v. Roth, 69 A.D.3d 912, 913, 893 N.Y.S.2d 605, 607 (2d Dep't 2010) (internal quotation marks omitted). Courts should "look to the words and actions of the parties to ascertain if an attorney-client relationship was formed." Talansky, 2 A.D.3d at 358, 770 N.Y.S.2d at 51 (internal quotation marks omitted). Some factors to consider include:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (e.g. at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

First Hawaiian Bank v. Russel & Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994) (internal citations omitted).

Ms. Sang alleges the following facts in support of her assertion that Mr. Mo functioned as her attorney: he was introduced "as the lawyer who handled legal matters for Sang Lan or Sang Lan's Fund" (4th Am. Compl., ¶ 105); the Lius consulted with him "on all matters related to [the] [p]laintiff" (4th Am. Compl., ¶ 106); he held himself out as Ms. Sang's attorney at public events (4th Am. Compl., ¶ 107); he gave advice to Ms. Sang on "any and all legal matters," including potential claims against the organizers of the Goodwill Games, the financial affairs and legal status of the Fund;

43

insurance benefits, and visa issues (4th Am. Compl., ¶¶ 109, 111); and he further advised her on media handling and "liaised with [] medi[c]al and legal professionals . . . regarding treatments, fundraising events, [and] compliance with the laws by the Fund" (4th Am. Compl., ¶ 110).

First, to the extent that these facts allege that Mr. Mo represented the Fund or its trustees, they do not support the contention that Mr. Mo functioned as Ms. Sang's attorney. See Mason Tenders District Council Pension Fund v. Messera, 958 F. Supp. 869, 893 (S.D.N.Y. 1997) (stating that there is no presumed attorney-client relationship between trustee's attorney and trust or beneficiary). Instead, the relevant allegations are that Mr. Mo advised her on legal issues and that he held himself out in public as her attorney. Accepting these allegations as true and making all reasonable inferences in the plaintiff's favor, as is required on a motion to dismiss, Ms. Sang has adequately alleged an attorney-client relationship. To be sure, there is no allegation of a written contract or fee agreement; however, Mr. Mo's alleged legal work on Ms. Sang's behalf -- which included such tasks as handling preliminary legal matters regarding an interview on CNN -- coupled with his public identification as her attorney, indicate that he agreed to perform legal services for her gratuitously. Likewise, it is a reasonable inference from these facts that Ms. Sang reasonably believed herself to be represented by him. See, e.g., C.K. Industries Corp. v. C.M. Industries Corp., 213 A.D.2d 846, 848, 623 N.Y.S.2d 410, 412 (3d Dep't 1995) (looking to whether

attorney, "either affirmatively or impliedly, led [the plaintiff] to believe that [the attorney] was acting on [the plaintiff's behalf").

Given that Ms. Sang has alleged an attorney-client relationship with Mr. Mo, this cause of action, although denominated as a claim for breach of fiduciary duty, is governed by the standard for attorney malpractice. See Ulico Casualty Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 56 A.D.3d 1, 10, 865 N.Y.S.2d 14, 22 (1st Dep't 2008) ("[I]n the context of an action asserting attorney liability, the claims of malpractice and breach of fiduciary duty are governed by the same standard of recovery."). Therefore, to state a claim, Ms. Sang must allege "(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) . . . actual damages." Id. (internal quotation marks omitted). Attorney malpractice requires "but for" causation; that is, "[t]o satisfy the element of proximate causation, a plaintiff must preliminarily plead and ultimately prove that 'but for' the attorney's malpractice, the client would have achieved a different result in the underlying transaction or would not have sustained any ascertainable damages." Mercantile Capital Partners Fund, LP v. Morrison Cohen LLP, 19 Misc. 3d 1121(A), 862 N.Y.S.2d 815, 2008 WL 1777431, at *3 (N.Y. Sup. Ct. 2008) (citing Hand v. Silberman, 15 A.D.3d 167, 167, 789 N.Y.S.2d 26, 27 (1st Dep't 2005)).

The plaintiff has failed to do this. First, she pleads that she suffered damages only in the most conclusory way. (4th Am.

Compl., ¶ 312).  Moreover, the facts as pled do not give rise to a reasonable inference that any of these allegedly negligent acts proximately caused her damages.  For five of the six negligent acts -- failing to keep her informed of important decisions, taking an adverse position, failing to disclose conflicts, failing to competently discharge duties, and failing to account for the Fund -- there is no attempt to show any damage causation.  As to the charge that Mr. Mo failed to negotiate with Time Warner, Mr. Mo had no such duty.  Even if he did, the plaintiff fails to plead that, had he undertaken it, a different outcome would have resulted. Therefore, I recommend that this claim be dismissed.  See Finova Capital Corp. v. Berger, 18 A.D.3d 256, 258, 794 N.Y.S.2d 379, 381 (1st Dep't 2005) ("The failure to establish proximate cause requires dismissal of the legal malpractice action, regardless of whether it is demonstrated that the attorney was negligent." (internal quotation marks omitted)).

       8.  Defamation

"Under New York law, defamation is defined as 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him . . . .'"  Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 549 (S.D.N.Y. 2011) (quoting Dillon v. City of New York, 261 A.D.2d 34, 37-38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).  To state a claim for defamation, the plaintiff must allege "'(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege;

(3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused "special damages."'"[20]   Thai v. Cayre Group, Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (alteration in original) (quoting Gargiulo v. Forster & Garbus, Esqs., 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)).   A statement is defamatory per se -- and thus, injury is assumed and no proof of special damages is required -- if it accuses the plaintiff of a serious crime; tends to injure her in her trade, business, or profession; accuses her of having a "loathsome disease"; imputes unchastity to a woman; or "if the statement is so severe that serious injury to the plaintiff's reputation can be presumed." Stern v. Cosby, 645 F. Supp. 2d 258, 288-90 (S.D.N.Y. 2009) (citing, among other cases, Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 860 (1992)). Statements in this last category will "tend[] to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [her] in the minds of right-thinking persons, and to deprive [her] of their friendly intercourse in society." LeBlanc v. Skinner, 103 A.D.3d 202, 203, 955 N.Y.S.2d 391, 401 (2d Dep't 2012).   Only factual statements can be defamatory; statement of opinion cannot.   Biro v. Conde Nast, 883 F. Supp. 2d 441, 459 (S.D.N.Y. 2012).

---

[20] The Individual Defendants do not argue that the plaintiff is a public figure for the purposes of this claim, which would alter the elements to be alleged, requiring, for example, malice on their part.   See Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494, 500-01 (S.D.N.Y. 2012) (outlining elements of claim of defamation of public figure).   I therefore do not address this possibility.

A claim for defamation brought in federal court is governed by the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Edward B. Beharry & Co. v. Bedessee Imports Inc., No. 09 CV 0077, 2010 WL 1223590, at *5 (E.D.N.Y. March 23, 2010); Muzio v. Incorporated Village of Bayville, No. 99 CV 8605, 2006 WL 39063, at *8 (E.D.N.Y. Jan. 3, 2006); Unique Sports Generation, Inc. v. LGH-III, LLC, No. 03 Civ. 8324, 2005 WL 2414452, at *9 (S.D.N.Y. Sept. 30, 2005).  Under Rule 8, a complaint "need not specifically plead the alleged defamatory words; rather, the pleading party need only provide the opposing party with 'sufficient notice of the communications complained of to enable him to defend himself.'" Unique Sports, 2005 WL 2414452, at *9 (quoting Treppel v. Biovail Corp., No. 03 Civ. 3002, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005)).  To determine whether a defamation claim complies with the requirements of Rule 8, "the court should consider whether the complaint references the alleged defamatory statement; identifies the maker of that statement; and indicates when the statement was made, in what context it was made, whether it was made orally or in writing and whether it was made to a third party." Muzio, 2006 WL 39063, at *8 (citing Nickerson v. Communications Workers of America Local 1171, No. 5:04CV00875, 2005 WL 1331122, at *7 (N.D.N.Y. May 31, 2005)).

Claims of defamation are well-suited to resolution at the pleading stage, so that the exercise of constitutionally-protected freedoms will not be chilled.  See Biro, 883 F. Supp. 2d at 457. "Whether particular words are defamatory presents a legal question

48

to be resolved by the court[s] in the first instance." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 177 (2d Cir. 2000) (alteration in original) (internal quotation marks omitted). The court must not read challenged statements "in isolation," but rather "as the average reader would[,] against the 'whole apparent scope and intent' of the writing," id. (quoting November v. Time Inc., 13 N.Y.2d 175, 178, 244 N.Y.S.2d 309, 311 (1963)), including the "broader social context of the statement." Levin v. McPhee, 119 F.3d 189, 197 (2d Cir. 1997). "'When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact.'" Biro, 883 F. Supp. 2d at 460 (quoting Levin, 119 F.3d at 197).

The plaintiff identifies four allegedly defamatory statements made by the Lius on their blog and "re-broadcast" by unidentified Doe defendants. (4th Am. Compl., ¶¶ 185-186). These statements were allegedly made in or after January 2011. (4th Am. Compl., ¶ 185).

> (1) "Sang Lan is too lazy. Can't get a job. I helped her to get the job at Star TV through my connections with high rank Chinese officials, but she lost that job later because she didn't want to do any work."

> (2) "San[g] Lan is so lazy that she was trained to pee on her own, but she didn't [and] I had to use a tube to assist her to pee."

> (3) Sang Lan and her friend "want to apply for political asylum in America."

> (4) Sang Lan "won't do these things [bladder and bowel movements] by herself; she entirely depend on others . . . . If no one helps her she will die. This is what we cannot get over these years. Perhaps, we gave her too

much assistance, if this could be counted as our fault.
She now has developed a bad habit of dependency or
relying on others do things for her.  This is not a good
thing.  We hope she becomes self reliance soon and does
not rely on other any more."

(4th Am. Compl., ¶ 185 (second and third alterations in original)).

In addition, the plaintiff attaches translations of certain
allegedly defamatory blog posts to her complaint.[21]  (Blog Posts,
attached as Exh. M to 4th Am. Compl.).

Contrary to the Individual Defendants' first contention, the
plaintiff's allegations are not so vague as to run afoul of the
relevant pleading standards.  She has included enough detail to
provide "sufficient notice of the communications complained of to
enable [the defendants] to defend [themselves]." Treppel, 2005 WL
2086339, at *8 (internal quotation marks omitted).  Moreover, Judge
Sand has already held that, for the purposes of a motion to
dismiss, the first two of the statements set out in the complaint
meet the requirements for libel per se.  (May 9 Order at 5-7).  The
Individual Defendants have not provided a reason to revisit that
determination.

However, the third and fourth statements listed in the
complaint do not constitute defamation.  As I commented in the
November 21 R&R, it is unclear how statements that Ms. Sang wished

_____

[21] It is unclear whether the plaintiff intends these documents
to support her allegations that the four statements identified
above were actually made, or to provide evidence of additional
defamatory statements.  Because the plaintiff is entitled to all
reasonable inferences in her favor on this motion to dismiss, and
because none of the four identified statements appear verbatim in
the attached documents, I will assume the latter and analyze the
documents separately.

to apply for political asylum could be defamatory.  (Nov. 21 R&R at 20 n.10).  The complaint attempts to counter this observation by opining that the statement "impl[ies] that the filing of [the] complaint against the Lius was one of [Ms. Sang's] bas[es] or claim[s] [for] seeking political asylum in the U.S."  (4th Am. Compl., ¶ 185(c)).  This is perplexing.  The mere statement that Ms. Sang and her friend sought asylum does not even mention this action.  The plaintiff asserts that the statement "impli[es] that [] in the course of 'betraying' her fiduciaries, [Ms. Sang] also betrayed her country."  (4th Am. Compl., ¶ 187).  This is a tenuous and implausible reading.  "[A] court should not 'render statements actionable by giving them a "strained or artificial construction."'"  <u>Biro</u>, 883 F. Supp. 2d at 460 (quoting <u>Qureshi v. St. Barnabas Hospital Center</u>, 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006)).  The fourth statement -- that Ms. Sang does not urinate or have bowel movements on her own, but depends on others for assistance -- is confirmed by the allegations in the complaint.  (4th Am. Compl., ¶¶ 145-146, 188-189).  Thus, it is not "a false statement about the plaintiff."  <u>Thai</u>, 726 F. Supp. 2d at 329 (internal quotation marks omitted).  The comment, "If no one helps her, she will die," is more properly characterized as non-actionable "rhetorical hyperbole."  <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 16-17 (1990).

As for the translated documents attached to the complaint, only the first includes statements that are "reasonably susceptible of a defamatory meaning."  <u>Treppel</u>, 2005 WL 2086339, at *7

(internal quotation marks omitted). The comments in that translated text are functionally equivalent to the statements about Ms. Lang's purported laziness, which Judge Sand has held could constitute defamation per se. The document indicates that there is significant evidence of Ms. Sang's laziness; that, even after 12 years, she has not gained independent living skills because she "ha[s] not really tried to establish [her] own self-care capabilities"; and that her failure disqualifies her to be "an idol of youth." (Blog Posts, Docket No. 119-3 at 10-11). These statements, too, are "reasonably susceptible of a defamatory meaning," Treppel, 2005 WL 2086339, at *7 (internal quotation marks omitted), and satisfy pleading requirements for defamation per se.

The other translated document defends certain Chinese officials in the Chinese "General Administration of Sport" and the China Gymnastics Association of the charge of "suppressing" Ms. Sang and then suggests that her "attack[s]" against these entities or officials were made in order to pave the way for an asylum claim: "It sounds vain that Sang Lan tried to attack China's General Administration of Sport and China Gymnastics Association, unless she wants to stay in the United States, and deliberately create 'Asylum' excuses."[22] (Blog Posts, Docket no. 119-3 at 16-17). This statement is "readily understood as conjecture, hypothesis, or speculation." Biro, 883 F. Supp. 2d at 460

---

[22] This statement cannot be interpreted to refer to this action, because none of the complaints filed here attempted to sue either of these two entities or included any material allegations about them, much less allegations that could be construed as "attacks."

(internal quotation marks omitted).  The wording is conjectural.
It was allegedly written by one of the Lius in 2011 after this
action had been filed against them, a time when neither of them
would be privy to Ms. Sang's motivations because of the breakdown
of the relationship.   Moreover, it was posted on a blog frequented
by readers who would know of the relationship's disintegration.
(4th Am. Compl., ¶ 186).  Given the context, such a statement was
not likely to be perceived as a statement of fact.  See Leblanc,
103 A.D.2d at 213, 955 N.Y.S.2d at 400 ("This conclusion is
especially apt in the digital age, where it has been commented that
readers give less credence to allegedly defamatory Internet
communications than they would to statements made in other
milieus.").

     For these reasons, I recommend that the Individual Defendants'
motion to dismiss as to the plaintiff's defamation claims be
granted in part and denied in part.

### 9.  Invasion of Privacy

     As discussed in the November 21 R&R, New York recognizes a
statutory right to privacy under sections 50 and 51 of the New York
Civil Rights Law.  N.Y. Civ. Rights Law §§ 50, 51; Burck v. Mars,
Inc., 571 F. Supp. 2d 446, 450 (S.D.N.Y. 2008).  To state a claim
for violation of section 51, a plaintiff must allege that "the
defendant made use, within the state of New York, of [her] name,
portrait, or picture for advertising purposes or for the purposes
of trade without [her] written consent."  Titan Sports, Inc. v.
Comics World Corp., 870 F.2d 85, 87 (2d Cir. 1989) (internal

quotation marks omitted); accord Molina v. Phoenix Sound Inc., 297 A.D.2d 595, 597, 747 N.Y.S.2d 227, 230 (1st Dep't 2002).  The statute of limitations for an invasion of privacy claim is one year.  CPLR § 215(3).  Ms. Lan has alleged that the defendants used her name, portrait, and voice in brochures, compact discs, blogs, and advertisements without her consent, for the purpose of promoting their businesses.  (4th Am. Compl., ¶¶ 179-180; Chinese Website, attached as Exh. L to 4th Am. Compl.).  This is sufficient to state a plausible claim for invasion of privacy.  Moreover, Ms. Lan alleges that the defendants' use of her name and likeness continued through 2011 and after (4th Am. Compl., ¶ 179), bringing her claim within the statute of limitations.  (Nov. 21 R&R at 23); cf. Gonzalez, 651 F.3d at 322 ("A statute of limitations provides an affirmative defense, and the burden is on the defendant to establish when a federal claim accrues.").

The Individual Defendants contend that, as a public figure, Ms. Sang cannot claim invasion of privacy.  (Ind. Def. Memo. at 23).  This is not an accurate interpretation of the law.  "The test is not whether plaintiff is a public or a private figure." Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publishing, 94 N.Y.2d 436, 448, 706 N.Y.S.2d 52, 59 (2000).  Rather, the question is whether the image is used "to depict newsworthy events or matters of public interest," Candalaria v. Spurlock, No. 08 Civ. 1830, 2008 WL 2640471, at *2 (E.D.N.Y. July 3, 2008) (internal quotation marks omitted), or, instead, "is [] an advertisement in disguise," Messenger, 94 N.Y.2d at 448, 706 N.Y.S.2d at 59.  There

is insufficient information at this juncture to apply that standard to the facts here.

In its reply brief, the Individual Defendants argue that Ms. Sang has not properly alleged all of the elements of an invasion of privacy claim -- specifically, that the Lius used Ms. Sang's image in the state of New York. (Ind. Def. Reply at 9). A court need not consider an argument first raised in a reply brief. <u>See, e.g.</u>, <u>China National Chartering Corp. v. Pactrans Air & Sea, Inc.</u>, 882 F. Supp. 2d 579, 605 (S.D.N.Y. 2012). However, because the Individual Defendant's objection is meritless, I will address it. Courts have held that it is necessary to plead that the offending matter was used within the state. <u>See</u> <u>Molina</u>, 297 A.D.2d at 597-98, 747 N.Y.S.2d at 230; <u>La Lumia v. Schwartz</u>, 23 A.D.2d 668, 669, 257 N.Y.S.2d 348, 349 (2d Dep't 1965). However, Ms. Sang alleges that her name, portrait, and voice were used on, among other things, blogs. "Today, it cannot be disputed that an internet website simultaneously exhibits images both globally and locally." <u>Molina</u>, 297 A.D.2d at 598, 747 N.Y.S.2d at 230. Therefore, the use of the matter on one or more blogs "necessarily was [] available within New York State." <u>Id.</u> The invasion of privacy claim is sufficiently pled, and I recommend that the motion to dismiss this claim be denied.

### 10. <u>Cyberharrassment</u>

The plaintiff's final claim is for "cyberharrassment" pursuant to New York Penal Law ("Penal Law") § 240.30. (4th Am. Compl., ¶¶ 326-329). That statute provides, in relevant part, that the crime

of second degree aggravated harassment is committed when, "with the intent to harass, annoy, threaten or alarm another person," the defendant "communicates with a person . . . by transmitting . . . any [] form of written communication, in a manner likely to cause annoyance or alarm" or "causes a communication to be initiated by mechanical or electronic means or otherwise with a person . . . by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm."[23]   Penal Law § 240.30(1).

The statute has been held to pertain to messages sent to individuals over the Internet, such as messages that include a person's name and are posted to Internet newsgroups.   See People v. Munn, 179 Misc.2d 903, 905, 688 N.Y.S.2d 384, 385-86 (Queens Crim. Ct. 1999); but see People v. DuPont, 107 A.D.2d 247, 252, 486 N.Y.S.2d 169, 173 (1st Dep't 1985) ("[Penal Law § 240.30(1)] was not designed to prevent dissemination, let alone the publication of

---

[23] There is a split of authority as to whether New York recognizes a private cause of action for damages under this statute. Compare Blasetti v. Pietropolo, 213 F. Supp. 2d 425, 428 & n.6 (S.D.N.Y. 2002) (stating, "New York . . . recognizes an implied private right of action for criminal harassment in violation of the Penal Law" and collecting cases), and Daniel v. Safir, 175 F. Supp. 2d 474, 481 (E.D.N.Y. 2001) ("An implied private right of action for criminal harassment is recognized under New York law."), aff'd, 42 F. App'x 528 (2d Cir. 2002), with Manko v. Volynsky, No. 95 Civ. 2585, 1996 WL 243238, at *2 (S.D.N.Y. May 10, 1996) (stating that Penal Law § 240.30 "does not provide a right of action for damages to private parties . . . ; enforcement of the New York Penal Law is committed exclusively to New York State's prosecutors"), and Ralin v. City of New York, 44 A.D.3d 838, 839, 844 N.Y.S.2d 83, 84 (2d Dep't 2007) ("New York does not recognize a cause of action to recover damages for harassment."). I need not resolve this question, here, as the claim fails because it is insufficiently pled.

vexatious material about an individual."). However, its scope has been narrowed on First Amendment grounds, as it has been held "unconstitutional to the extent that it prohibits communications[] made with the intent to annoy or alarm," as opposed to those made with the intent to harass or threaten, the constitutionality of which the court did not address. <u>Vives v. City of New York</u>, 305 F. Supp. 2d 289, 301-02 & n.9 (S.D.N.Y. 2003), <u>rev'd on other grounds</u>, 405 F.3d 115 (2d Cir. 2005); <u>see</u> <u>Vives</u>, 405 F.3d at 123-24 (Cardamone, J., concurring in part and dissenting in part) (stating that statute is unconstitutional both facially and as applied). Moreover, it has been limited to include only

> communications which are obscene, threats which are unequivocal and specific, communications which are directed to an unwilling recipient under the circumstances wherein substantial privacy interests are being invaded in an essentially intolerable manner, communications which by their very utterance . . . tend to incite immediate breach of the peac, and written communications intended to simulate court process of any kind.

<u>People v. Smith</u>, 89 Misc. 2d 789, 791-92, 392 N.Y.S.2d 968, 971 (App. Term 2d Dep't 1977) (alteration in original) (internal citations and quotation marks omitted). Thus, "merely [] speak[ing] or writ[ing] bad things about another person" is not prohibited. <u>People v. Bethea</u>, 1 Misc. 3d 909(A), 781 N.Y.S.2d 626, 2004 WL 190054, at *4 (Bronx Crim. Ct. 2004).

According to Ms. Sang, the Lius (and numerous unidentified "Doe" defendants) ran afoul of the prohibition on aggravated harassment by anonymously or pseudonymously posting messages on the Internet to "taunt, harass[,] and annoy" Ms. Sang. (Pl. Opp. Memo.

to Ind. Def. at 29).  The complaint, however, does not provide much
more specificity than that.  It asserts that "the Lius and Does 1-
30 began publishing blogs and articles on Sinovision's blog site[]
devoted mostly if not exclusively to spewing vulgar, obscene and
derogatory remarks . . . designed to cast plaintiff in a false
light." (4th Am. Compl., ¶ 194).  It contends that the Lius and
the unknown defendants conspired to "insult[]" and "taunt[]" Ms.
Sang (4th Am. Compl., ¶¶ 195-196); that Mr. Liu, using a pseudonym
"incited and inflamed the online community by his incendiary and
outrageous remarks designed to expose [Ms. Sang] to hatred,
contempt, or to induce an unsavory opinion of [her]," including
that she was a "person of moral turpitude and . . . incapable of
holding a job[] due to laziness and greed" (4th Am. Compl., ¶ 200);
that "[s]everal bloggers" have "threatened" Ms. Sang with bodily
harm (4th Am. Compl., ¶ 201); that the Lius and the Doe defendants
intended "to harass, annoy, threaten[,] or alarm" her (4th Am.
Compl., ¶ 203); and that she and her family were "harassed,
annoyed, and threatened and alarmed" by the "salacious and
insulting attacks" (4th Am. Compl., ¶ 204).

Because, like a defamation claim, Ms. Sang's harassment claim
depends on the content of the accused communications, its pleading
must "be specific enough to afford defendant sufficient notice of
the communications complained of to enable him to defend himself."
Biro, 883 F. Supp. 2d at 456 (setting out pleading standard for
defamation claim).  These allegations are insufficient.  There is
no description of what, specifically, was said and no indication of

58

when it was said (except that at least one unidentified communication was made after April 28, 2011 (4th Am. Compl., ¶ 198)). Instead, the allegations largely parrot the words of the statute or concepts from the law of defamation, see, e.g., Delaney v. American Telephone & Telegraph Co., 171 A.D.2d 456, 456, 567 N.Y.S.2d 38, 39 (1st Dep't 1991). Moreover, most of the communications generally described do not fit into the narrowed construction of speech prohibited under the statute. See Smith, 89 Misc. 2d at 791-92, 392 N.Y.S.2d at 971. And the allegation that Ms. Sang was threatened with bodily harm does not even identify the perpetrators of this alleged threat as any of the defendants, either named or unnamed, in this action. (4th Am. Compl., ¶ 201). Indeed, this cause of action suffers from grouping all of the defendants, including the Doe defendants, together, so it is largely impossible to discern who allegedly did what. See Watkins v. Smith, No. 12 Civ. 4635, 2013 WL 655085, at *9 (S.D.N.Y. Feb. 22, 2013) ("[T]he essential purpose of Rule 8(a)'s pleading requirements is to give the defendants fair notice of what the claim is and the grounds upon which it rests. This purpose is undermined when a plaintiff utilizes a generalized term like 'defendants' to obfuscate each defendant's role in the alleged conduct or the legal theory of liability on which he is relying. (internal citation, quotations marks, and brackets omitted)).

I therefore recommend that the claim for cyberharassment be dismissed.

11. <u>Tolling</u>

I have recommended dismissal of three claims as time-barred: the claim for accounting of Ms. Sang's personal property and insurance proceeds, the claim for unjust enrichment connected with the personal property and medical supplies, and the claim for breach of fiduciary duty for invasion of privacy.  The plaintiff argues that the various statutes of limitations should be tolled because (1) the Lius were absent from the jurisdiction for a period of time prior to the filing of this action and (2) the Individual Defendants fraudulently induced her to refrain from filing a timely action.[24]  (Pl. Opp. Memo. to Ind. Def. at 4-5).

The first argument fails.  By statute, if, after a cause of action accrues, the putative defendant "departs from the state and remains continuously absent therefrom for four months or more," the statute of limitations will be tolled for the period of that absence, subject to certain exceptions.  CPLR § 207.  The plaintiff has the burden of alleging such tolling, which requires not only a showing of a sufficiently lengthy absence, but also "a showing that there was no statutory authority for obtaining jurisdiction over

---

[24] To the extent that the plaintiff contends that it is inappropriate to decide issues of tolling on a motion to dismiss (Pl. Opp. Memo. to Ind. Def. at 4-5), she is mistaken.  <u>See, e.g.</u>, <u>Abbas v. Dixon</u>, 480 F.3d 636, 640-41 (2d Cir. 2007) (holding that, although <u>sua</u> <u>sponte</u> dismissal on statute of limitations grounds is improper, when plaintiff has opportunity to brief tolling issues, dismissal is allowable); <u>Marvel Worldwide, Inc. v. Kirby</u>, 756 F. Supp. 2d 461, 472 (S.D.N.Y. 2010) (evaluating equitable tolling argument on motion to dismiss by "look[ing] to the pleading and what it does (and does not) allege"); <u>Zumpano v. Quinn</u>, 6 N.Y.3d 666, 673-77, 816 N.Y.S.2d 703, 705-08 (2006) (affirming dismissal on statue of limitations grounds, and rejecting tolling arguments).

the defendant." <u>Weimer v. Lake</u>, 268 A.D.3d 741, 741-42, 702 N.Y.S.2d 155, 156 (3d Dep't 2000) (internal quotation marks omitted).  The plaintiff has not even attempted to allege such facts here.  There are no allegations in the operative complaint either that any of the defendants was absent for any amount of time or that jurisdiction could not be obtained over them.  Instead, the plaintiff rests her argument on a document submitted by the Individual Defendants in support of their motion to dismiss that "implies that [the Lius] were absent from the U.S. for an extended period of time." (Pl. Opp. Memo. to Ind. Def. at 4).  This is insufficient.

The plaintiff argues that she is also entitled to equitable tolling because the Individual Defendants fraudulently concealed the facts of their various wrongs, making it impossible for her to discover them.[25] (Pl. Opp. Memo. to Ind. Def. at 5-7).  "Equitable estoppel is an extraordinary remedy which applies where a party is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception,

---

[25] The plaintiff denominates this an equitable estoppel argument. (Pl. Opp. Memo. to Ind. Def. at 5).  Under New York law, "'cases regarding fraudulent concealment as a tolling principle point to the same cases as those which discuss the doctrine of equitable estoppel.'" <u>Soley v. Wasserman</u>, No 08 Civ. 9262, 2010 WL 931888, at *9 (S.D.N.Y. March 12, 2010) (quoting <u>Meridien International Bank Ltd. v. Government of the Republic of Liberia</u>, 23 F. Supp. 2d 439, 446 n.4 (S.D.N.Y. 1998)); <u>see also</u> <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 84 (2d Cir. 2002) ("Because Pearl casts his argument in terms of 'equitable tolling,' by which he means fraudulent concealment of a cause of action, we will use that phrase in discussing all aspects of his contention.").  I will therefore reference cases discussing both equitable tolling and tolling because of fraudulent concealment.

fraud or misrepresentations by the other." City of Binghamton v.
Hawk Engineering, P.C., 85 A.D.3d 1417, 1420, 925 N.Y.S.2d 705, 710
(3d Dep't 2010) (internal quotation marks omitted).  As an
extraordinary remedy, it is to be "'invoked sparingly and only
under exceptional circumstances.'" Abercrombie, 438 F. Supp. 2d at
265 (quoting Gross v. New York City Health & Hospitals Corp., 122
A.D.2d 793, 794, 505 N.Y.S.2d 678, 679 (2d Dep't 1986)).  The
plaintiff must plead "that the defendant made an actual
misrepresentation or, if a fiduciary, concealed facts it was
required to disclose and that [the] plaintiff's [justifiable]
reliance resulted in an untimely action." Ross v. Louise Wise
Services, Inc., 28 A.D.3d 272, 282, 812 N.Y.S.2d 325, 332 (1st
Dep't 2006), modified in part on other grounds, 8 N.Y.3d 478, 836
N.Y.S.2d 509 (2007).  Justifiable reliance requires a showing that
the plaintiff used due diligence to detect the misrepresentation.
Abercrombie, 438 F. Supp. 2d at 266.  "Thus, where a plaintiff
possesses 'timely knowledge sufficient to place [] her under a duty
to make inquiry and ascertain all the relevant facts prior to the
expiration of the applicable [s]tatute of [l]imitations,' there can
be no justifiable reliance, and equitable estoppel is
inapplicable." Id.  The plaintiff must also show that the action
was brought within a reasonable time "after the facts giving rise
to the estoppel have ceased to be operational." Doe v. Holy See
(State of Vatican City), 17 A.D.3d 793, 796, 793 N.Y.S.2d 565, 569
(3d Dep't 2005) (internal quotation marks omitted); see also Soley,
2010 WL 931888, at *9 & n.5 (noting that even where plaintiff

alleges fiduciary relationship, she "must still satisfy the other elements of estoppel"). Finally, because this doctrine requires some species of fraud, it must be pled with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. See Rafter v. Liddle, 704 F. Supp. 2d 370, 377 (S.D.N.Y. 2010) (requiring compliance with Rule 9(b) where plaintiff sought to toll state statute of limitations on basis of fraudulent concealment); Solow v. Stone, 994 F. Supp 173, 182 (S.D.N.Y. 1998) ("Plaintiff's naked assertion that 'the [] Defendants fraudulently concealed their actions' does not approach the level of detail necessary to satisfy Rule 9(b)." (internal citation omitted)).

Two of the time-barred claims relate to Ms. Sang's personal property, such as the memorabilia and the medical supplies, and the insurance proceeds; the third relates to the use of Ms. Sang's likeness and image. Neither the Lius nor Mr. Mo had fiduciary duties as to these matters. Therefore, Ms. Sang must show that one or more of the Individual Defendants made an actual misrepresentation that she justifiably relied on when foregoing the opportunity to file a claim. But she has identified no such misrepresentation. Rather, she alleges, in a conclusory fashion, that "fraudulent representations of material facts precluded [her] from making inquiries or conducting any investigation of her own" (4th Am. Compl., ¶ 165) or that "the Lius actively concealed . . . their use of [the plaintiff's] . . . voice, images or likeness (4th Am. Compl., ¶ 182). As she has not pled any actual misrepresentation, it goes without saying that Rule 9(b) has not

been satisfied.[26]   <u>Caputo v. Pfizer, Inc.</u>, 267 F.3d 181, 191 (2d Cir. 2001) (explaining that to satisfy fraud pleading requirements plaintiff must "specify the time, place, speaker, and content of the alleged misrepresentations").

Second, as to the personal property and insurance proceeds, the plaintiff has failed to show that she used due diligence to detect the misrepresentation or fraud on which she bases her equitable tolling claim.  Ms. Sang was on notice in 1999 that the Lius continued to hold her personal property although she had returned to China.  (4th Am. Compl., ¶¶ 76, 272; NY Daily News Article).  Nonetheless, the complaint is replete with allegations that she failed to inquire further into the behavior of the Individual Defendants in relation to the personal property or any other matter.  (4th Am. Compl., ¶¶ 134, 152, 162, 164).  As to the insurance proceeds, Ms. Sang was on notice that she should make further inquiry when the Lius "forbade [her from] . . . contact[ing] anyone in the U.S." and refused to provide her contact information for her doctor, insurance company, or medical supply company.  (4th Am. Compl., ¶ 145).  Indeed, the complaint indicates that she knew something was amiss, but nonetheless failed to inquire to avoid "interfer[ing]" with the Individual Defendants.  (4th Am. Compl., ¶ 145).  This is not the due diligence that is required of a plaintiff who would seek to equitably toll the statute of limitations.

---

[26] Ms. Sang includes slightly more detail with regard to alleged misrepresentations as to the Fund (4th Am. Compl., ¶ 126), but even these are deficient (as well as irrelevant).

The complaint does not reveal when the plaintiff became aware of the allegedly illicit use of her likeness, image, or voice by the Lius, but this creates another problem: it is impossible to discern whether she brought this action within a reasonable time after the facts that support her estoppel argument "ceased to be operational." <u>Holy See (State of Vatican City)</u>, 17 A.D.3d at 796, 793 N.Y.S.2d at 569.  Therefore, Ms. Sang has not shouldered the heavy burden of demonstrating entitlement to equitable tolling.

<u>Conclusion</u>

For the foregoing reasons, I recommend that Time Warner's motion to dismiss (Docket no. 127) be granted in its entirety.  I further recommend that the Individual Defendants' motion to dismiss (Docket no. 130) be granted in part and denied in part. Specifically, I recommend that the Individual Defendants' motion to dismiss be granted with respect to Count Five (Accounting as to Other Property); Count Six (Unjust Enrichment) to the extent that it pertains to the "Other Property"; Count Seven (Conversion) to the extent that it pertains to insurance proceeds; Count Eight (Breach of Fiduciary Duty against the Lius); Count Nine (Breach of Fiduciary Duty against Mr. Mo); Count Ten (Defamation) to the extent that it pertains to the statements set out in the Fourth Amended Complaint, ¶ 185(c) & (d), and the document (and its translation) attached to the Fourth Amended Complaint as part of Exh. M (the translation begins, "Sang Lan got injured and paralysis at Goodwill Games held in New York in 1998"); and Count Twelve (Cyberharassment).   The motion should be denied in all other

respects.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Leonard B. Sand, Room 1650, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.


Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 19, 2013


Copies mailed this date:

X. Bing Xu, Esq.
The Bing Law Firm
5705 Hansel Ave.
Orlando, FL 32809

Hugh H. Mo, Esq.
The Law Firm of Hugh H. Mo, PC
225 Broadway, Suite 2702
New York, New York  10007

James A. Lamberth, Esq.
Alan W. Bakowski, Esq.
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA 30308-2216