```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SANG LAN,                             :  11 Civ. 2870 (AT) (JCF)
                                      :
             Plaintiff,               :       REPORT AND
                                      :     RECOMMENDATION
                                      :
     - against -                      :
                                      :
TIME WARNER, INC.,KAO-SUNG LIU        :
A/K/A K.S. LIU, GINA HIU-HUNG LIU     :
A/K/A HUI-HUNG SIE A/K/A GINA LIU,    :
Individually and as Trustees or       :
Managers of Goodwill for Sang Lan     :
Fund, HUGH HU MO, DOES 1-30,          :
Unknown Defendants, Jointly and       :
Severally,                            :
                                      :
             Defendants.              :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE ANALISA TORRES, U.S.D.J.:

The plaintiff in this case, Sang Lan, filed a "notice of voluntary dismissal" on October 11, 2014, three days prior to her scheduled deposition. She now asks the Court to construe her notice as a motion for voluntary dismissal without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure and to grant the motion. For the following reasons, I recommend that the plaintiff's motion be denied.

Background

Sang Lan is a former gymnast who was seriously injured while warming up for the vault event at the 1998 Goodwill Games. (4th Amended Complaint ("4th Am. Compl."), ¶¶ 29-34). The accident left her paralyzed from the mid-chest down and suffering from various complications. (4th Am. Compl., ¶¶ 38-52). Ms. Lan[1] filed this

---

[1] The plaintiff's previous counsel referred to his client as Ms. Lan, and this denomination was used in all prior decisions in

action on April 28, 2011, alleging that the defendants, Kao Sung Liu, Gina Liu, and Hugh Mo, who were charged with overseeing a trust established for her after her injury, mismanaged the trust, used her likeness for their own commercial purposes, and made defamatory statements about her.[2]  (4th Am. Compl., ¶¶ 126-28, 132-35, 168, 179-80, 185, 194).

On April 14, 2014, the plaintiff gave birth to a baby by cesarean section.  (Declaration of Sang Lan dated Nov. 8, 2014 ("Lan Decl."), ¶¶ 14-15).  Since then, Ms. Lan has remained hospitalized due to medical complications and risks.  (Lan Decl., ¶ 15; Declaration of Zhenxing Sun dated Nov. 3, 2014 ("Sun Decl."), ¶¶ 4-5).  On April 16, 2014, I ordered that the plaintiff advise the Court twice per month of her medical condition until she was fully capable of participating in the lawsuit.  (Order dated April 16, 2014).  On April 30, 2014, Ms. Lan represented to the Court that she was not yet able to participate meaningfully.  (Defendants' Memorandum of Law in Support of Their Motion for an Order Granting Sanctions Against Plaintiff Pursuant to Rule 37 ("Def. Memo.") at 4).  However, the defendants notified the court that Ms. Lan had held a press conference since the birth of her baby and appeared to be in good health.  (Def. Memo. at 4).  In

---

this case.  Although her current attorney refers to her as Ms. Sang, I will continue to use the convention adopted earlier for purposes of consistency.

[2] Ms. Lan also sued the organizers of the Goodwill Games, alleging that their negligence led to her injuries.  Those claims have since been dismissed.  Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2014 WL 764250, at *1 (S.D.N.Y. Feb. 25, 2014).

2

light of this representation, I ordered that the plaintiff support her bimonthly updates with documentation from her physicians. (Order dated May 5, 2014).  Thereafter, the plaintiff moved to stay and defer her deposition, submitting a doctor's report in support of her motion, which revealed that the plaintiff was "allowed to accept media visitors under supervision by the doctor and special care medical staff."  (Order dated May 20, 2014).  I ordered counsel to make arrangements for the plaintiff's deposition by videoconference, finding that "[i]f [she was] capable of participating in media events, she [was] capable of participating in the litigation she initiated."  (Order dated May 20, 2014). Following a dispute between the parties regarding the format and cost of the plaintiff's deposition, I ordered that the parties utilize the deposition protocol used in another litigation commenced by the plaintiff in this district, Sang Lan v. Hai, No. 12 Civ. 7103, and that the defendants bear the cost.  (Memorandum Endorsement dated June 20, 2014).

    Due to defects in the plaintiff's discovery productions, I extended the discovery deadline from August 29, 2014 to October 31, 2014, and ordered that a pre-trial order be submitted by November 29, 2014.  (Memorandum Endorsement dated Aug. 13, 2014).

    The plaintiff states that she attempted by letter in early September to ascertain defendants' counsel's availability for her deposition and the depositions of the defendants.  (Plaintiff's Memorandum of Law in Response to Individual Defendants' Memorandum of Law in Support of Motion for Sanctions Pursuant to Rule 37 ("Pl.

3

Memo.") at 9; E-mail of Mary Beth Hughes dated Sept. 9, 2014, attached as part of Exh. A to Lan Decl.). The defendants replied that they preferred not to discuss deposition dates until the plaintiff responded to their "safe harbor"[3] letter. (E-mail of Pedro Medina dated Sept. 9, 2014, attached as part of Exh. A to Lan Decl.).

I denied two motions by the defendants to extend the discovery deadline, noting that the parties had until October 31, 2014, to complete party depositions. (Orders dated Sept. 23, 2014 & Oct. 2, 2014). On October 2, 2014, the defendants requested confirmation from the plaintiff that she would submit to deposition on October 14, 2014, at a hotel in Bejing. (Def. Memo. at 7). The plaintiff's counsel objected by letter but did not propose alternative dates. (Def. Memo. at 7-8). The defendants made several attempts to follow up with the plaintiff's counsel via letter and e-mail but received no response regarding the deposition schedule. (Def. Memo. at 8). Accordingly, on October 10, 2014, I ordered the plaintiff to appear at her October 14 deposition and warned that failure to appear would result in sanctions under Rule 37 of the Federal Rules of Civil Procedure. (Memorandum Endorsement dated Oct. 10, 2014, at 2).

---

[3] The "safe harbor" provision of Rule 11 of the Federal Rules of Civil Procedure requires that a party moving for sanctions under that rule serve the nonmoving party with the motion at least twenty-one days before it is filed. Fed. R. Civ. P. 11(c)(2). This provision is intended to give parties threatened with sanctions "the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed." Castro v. Mitchell, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) (internal quotation marks omitted).

The following day, the plaintiff filed a document entitled "Notice of Voluntary Dismissal." (Pl. Memo. at 10). She did not attend her deposition on October 14, 2014. (Def. Memo. at 8). The plaintiff asserts that she is recovering from surgery and is required to attend physical therapy three times per week or more. (Pl. Memo. at 24). The defendants contend, however, that she continued to travel and make public appearances during the month preceding her scheduled deposition. (Defendants' Reply Memorandum of Law in Support of Their Motion for Sanctions and in Opposition to Plaintiff's Request to Dismiss Her Complaint Without Prejudice ("Def. Reply") at 17).

Discussion

Once an answer or motion for summary judgment has been filed, an action may be voluntarily dismissed without prejudice only by stipulation of the parties or by court order "on terms that the court considers proper." Fed. R. Civ. P. 41(a). Despite the fact that the defendants have already filed an answer in this case, the plaintiff filed a "notice of voluntary dismissal." As the plaintiff requests (Pl. Memo. at 10-11), I will construe this notice as a motion for dismissal without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure, as the rule "does not require that the plaintiff's request for dismissal take any specific form." Morris v. City of Hobart, 39 F.3d 1105, 1109 (10th Cir. 1994) (citing United Steelworkers v. Libby, McNeill & Libby, Inc., 895 F.2d 421, 422 n.1 (7th Cir. 1990)); see also Bangor Baptist Church v. State of Maine, Department of Education and

Cultural Services, 92 F.R.D. 123, 124-25 (D. Me. 1981) (treating notice of dismissal as Rule 41(a)(2) motion where defendant's motion foreclosed voluntary dismissal).

"[A]lthough voluntary dismissal without prejudice is not a matter of right, the presumption in this circuit is that a court should grant dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." Securities and Exchange Commission v. Compania Internacional Financiera S.A., No. 11 Civ. 4904, 2012 WL 1856491, at *2 (S.D.N.Y. May 22, 2012) (internal quotation marks omitted). The Second Circuit has developed "'two lines of authority . . . with respect to the circumstances under which a dismissal without prejudice might be improper.'" Kwan v. Schlein, 634 F.3d 224, 230 (2d Cir. 2011) (quoting Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006) (brackets omitted)). One, recently articulated in Camilli, counsels that dismissal would be improper if "'the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" Camilli, 436 F.3d at 123 (quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217 (1947)). The other, laid out in Zagano v. Fordham University, holds that the test for dismissal without prejudice involves consideration of several factors, including:

> [1] the plaintiff's diligence in bringing the motion; [2] any 'undue vexatiousness' on the plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

Zagano v. Fordham University, 900 F.2d 12, 14 (2d Cir. 1990). "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." Kwan, 634 F.3d at 230.

    A.    Legal Prejudice

The defendants have not alleged that they will suffer any legal prejudice from the plaintiff's dismissal. "Legal prejudice in this context has been defined as the impairment of some legal interest, some legal claim, or some legal argument." Benitez v. Hitachi Metals America, Ltd., No. 11 Civ. 6816, 2012 WL 3249417, at *2 (S.D.N.Y. Aug. 6, 2012) (internal quotation marks omitted). Under this analysis, the court primarily seeks to protect "a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed." Camilli, 436 F. 3d at 124 (emphasis omitted).

Here, the defendants do not argue that any counter-claims or defenses would be affected by dismissal of this action without prejudice. They only argue that such a dismissal would draw out this already expensive and time-consuming litigation. (Def. Reply at 14-15). "While the duplicative expense of relitigation is a factor courts consider in deciding whether voluntary dismissal would be prejudicial, it is well established that the mere prospect of a second lawsuit is not tantamount to plain legal prejudice." Coffaro v. Crespo, No. 08 CV 2025, 2013 WL 623577, at *2 (E.D.N.Y. Feb. 19, 2013) (internal quotation marks omitted); see also Kwan, 634 F.3d at 230.

7

B. <u>Zagano Factors</u>

However, the <u>Zagano</u> factors weigh in favor of denying the plaintiff's motion.

1. <u>Plaintiff's Diligence</u>

The plaintiff's motion to voluntarily dismiss without prejudice was not diligently made. While the plaintiff alleges that she is unable to continue the litigation at this time due to her physical condition following the April 2014 birth of her child, she did not file the instant motion until October 11, 2014 -- six months after the birth (Lan Decl., ¶ 14), over four months after I ordered her to submit to deposition despite her medical conditions (Order dated May 20, 2014), and a mere three days before her deposition was to take place (Memorandum Endorsement dated Oct. 10, 2014). In the intervening period, numerous discovery issues were litigated, documents were produced, and repeated efforts to schedule Ms. Lan's deposition were made. (Def. Memo. at 2-8). This factor weighs against dismissing without prejudice. <u>See, e.g.</u>, <u>Pacific Electric Wire & Cable Co. v. Set Top International Inc.</u>, No. 03 Civ. 9623, 2005 WL 578916, at *5 (S.D.N.Y. March 11, 2005) (finding factor to weigh against plaintiff's motion where diligent filing would have prevented defendants from further engaging in discovery and depositions).

2. <u>Undue Vexatiousness</u>

The defendants argue, based on discovery produced by Ms. Lan, that the entire lawsuit is a "sophisticated scheme to use [] court proceedings in order to extort money from the [d]efendants," and

8

that the plaintiff's claims are "without any basis in fact."  (Def. Reply at 17-18).  Both parties treat the "undue vexatiousness" factor as an opportunity to argue in detail about the merits of the plaintiff's case.  (Def. Reply at 17-21; Pl. Memo. at 15-23).  However, it is not necessary to address these arguments, as the plaintiff has demonstrated undue vexatiousness in the filing of this motion.[4]

The "undue vexatiousness" Zagano factor concerns not only cases that were "brought to harass the defendant," but also those in which a plaintiff "otherwise illustrates an ill-motive, such as where plaintiffs have assured the court and the defendants that they intended to pursue their claims prior to seeking dismissal." American Federation of State, County, and Municipal Employees District Council 37 Health & Security Plan v. Pfizer, Inc., No. 12 Civ. 2237, 2013 WL 2391713, at *3 (S.D.N.Y. June 3, 2013) (internal quotation marks omitted).

As discussed above, despite the plaintiff's months-long

---

[4] Of course, such arguments would be addressed were the defendants to file a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, as they have repeatedly threatened to do.  Adjudication of these issues would most likely be avoided were the plaintiff to voluntarily dismiss her claims with prejudice.  See In re Pennie & Edmonds, LLP, 323 F.3d 86, 89 (2d Cir. 2003) ("[T]he 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."); Langdon v. County of Columbia, 321 F. Supp. 2d 481, 484 (N.D.N.Y. 2004) ("Given the 'safe harbor' provisions . . . a party cannot delay serving its Rule 11 motion until the conclusion of the case (or judicial rejection of the offending contention)." (alteration in original) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)).

awareness of both her medical condition and the Court's order that her deposition go forward, she waited until the week of her deposition to move for dismissal. Such behavior weighs against dismissing without prejudice. See, e.g., Pacific Electric Wire & Cable Co., 2005 WL 578916, at *5 (finding vexatiousness in plaintiff's decision to move to dismiss case after assuring court it would proceed and then to "unilaterally and abruptly cancel[] six [court-ordered] depositions"); Securities and Exchange Commission v. Oakford Corp., 181 F.R.D. 269, 271 (S.D.N.Y. 1998) (finding vexatiousness where Commission "never had any intention of providing discovery in this case but nonetheless permitted the case to proceed").

### 3.   Progression of Lawsuit

The third Zagano factor considers not only the present stage of the lawsuit, but also the efforts and expenses that have been put forward by the defendants thus far. Zagano, 900 F.2d at 14. As the plaintiff notes, discovery has not yet been completed and neither party has yet retained experts. (Pl. Memo. at 23). However, in the three and one-half years since the lawsuit was filed, the parties have actively engaged in litigation, including multiple amendments of the complaint, cross-motions for dismissal, the exchange of documents and interrogatories, and multiple discovery motions. (Def. Reply at 21). The defendants estimate that they have incurred over $500,000 in legal fees over the course of the litigation. (Def. Reply at 21). This factor therefore also weighs against the plaintiff's motion.

####  4. Duplicative Expense of Relitigation

The defendants argue that the fourth Zagano factor weighs against dismissal without prejudice, because "they might [] have to duplicate their efforts and expense in defending the same claims if [the p]laintiff were to commence another action." (Def. Reply at 22). However, they do not specify which expenses would be duplicated and, as the plaintiff points out, the discovery already obtained by the parties could likely be used in the event of relitigation. (Pl. Memo. at 23). Because it is not apparent that relitigation would be any more costly than continuing the present litigation, this factor weighs in favor of the plaintiff's motion.

####  5. Adequacy of Plaintiff's Explanation

The plaintiff asserts that her request for dismissal is "legitimate and eminently reasonable" due to her ongoing recovery from a cesarean section and her need to attend regular physical therapy appointments and follow-up medical appointments. (Pl. Memo. at 24). However, the plaintiff does not allege that her condition has worsened since I ruled in May that it did not prevent her from submitting to a deposition (Order dated May 20, 2014), which is all that is currently required of her. Nor does she deny the defendants' claim that she continues to make media appearances (Def. Memo. at 22). This factor therefore also weighs against the plaintiff's motion.

Conclusion

For the foregoing reasons, dismissal without prejudice at this juncture would be improper. I therefore recommend that the

plaintiff's motion to dismiss without prejudice be denied and that the Clerk of Court be directed to re-open the case, which was closed upon the filing of the ineffective notice of voluntary dismissal.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Analisa Torres, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          February 5, 2015

Copies mailed this date:

X. Bing Xu, Esq.
The Bing Law Firm
5705 Hansel Ave.
Orlando, FL 32809

Thomas L. Johnson, Esq.
The Law Office of Thomas Johnson, P.A.
510 Vonderburg Dr., Suite 309
Brandon, FL 33511

Hugh H. Mo, Esq.
Pedro Medina, Esq.
The Law Firm of Hugh H. Mo, PC
225 Broadway, Suite 2702
New York, New York  10007