UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
SANG LAN,                            :    11 Civ. 2870 (AT) (JCF)
                                     :
                    Plaintiff,       :       REPORT AND
                                     :    RECOMMENDATION
                                     :
        - against -                  :
                                     :
TIME WARNER, INC., KAO-SUNG LIU      :
A/K/A K.S. LIU, GINA HIU-HUNG LIU    :
A/K/A HUI-HUNG SIE A/K/A GINA LIU,   :
Individually and as Trustees or      :
Managers of Goodwill for Sang Lan    :
Fund, HUGH HU MO, DOES 1-30,         :
Unknown Defendants, Jointly and      :
Severally,                           :
                                     :
                    Defendants.      :
- - - - - - - - - - - - - - - - - - -:

┌─────────────────────────────┐
│ USDS SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____        │
│ DATE FILED: 10/18/16        │
└─────────────────────────────┘

TO THE HONORABLE ANALISA TORRES, U.S.D.J.:

    This action, now approximately five and one-half years old,
concerns the aftermath of a former world-class gymnast's
catastrophic injury at the (now-defunct) Goodwill Games almost two
decades ago.  Multiple discovery motions, motions to dismiss,
motions to amend, and motions for sanctions, as well as more than
one dozen opinions resolving them, have spilled an ocean of ink.
It is time to conclude this litigation; the question is whether it
will end with a bang or a whimper.

    The plaintiff, Sang Lan, has moved to dismiss this action with
prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil
Procedure.  Hugh H. Mo, one of the three remaining defendants,
opposes granting the motion unless it is (1) conditioned on an
award of sanctions under Rule 11 against Sang Lan and (2) without
prejudice to his seeking sanctions under Rule 11 against Sang Lan's
former counsel, X. Bing Xu.  I recommend granting the plaintiff's

1

motion without these conditions, but allowing Mr. Mo to renew his most recent motion for sanctions.

Background

I have laid out the facts alleged in this case in prior opinions, primarily Sang Lan v. AOL Time Warner, Inc., No. 11 Civ. 2870, 2011 WL 7807290 (S.D.N.Y. Nov. 21, 2011) ("Sang Lan II"), and Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2013 WL 1703584 (S.D.N.Y. April 19, 2013) ("Sang Lan IV"). This summary focuses on the protracted procedural history of this case and, to the extent possible, claims and allegations made by and against Mr. Mo (who is the only party opposing this motion).[1]

While warming up on the vault apparatus during the 1998 Goodwill Games, Sang Lan fractured two vertebrae and injured her spinal cord, paralyzing her from the mid-chest down. Sang Lan IV, 2013 WL 1703584, at *1; Sang Lan II, 2011 WL 7807290, at *1. She was then placed in the care of K.S. and Gina Liu. Sang Lan IV, 2013 WL 1703584, at *2; Sang Lan II, 2011 WL 7807290, at *1. Around this time, "a fund, called the Good Will for Sang Lan Fund (the "Fund") . . . was set up for [Sang Lan's] benefit." Sang Lan IV, 2013 WL 1703584, at *2. The Lius functioned as trustees or managers of the fund, while "Mr. Mo and his law firm provided legal and professional assistance to the Fund, [] Sang [Lan], and the Lius." Sang Lan IV, 2013 WL 1703584, at *2. Sang Lan returned to

---

[1] K.S. Liu and Gina Liu, the other two remaining defendants, have reached a settlement in principle with the plaintiff and have "agreed to enter into a stipulation of discontinuance with prejudice." (Declaration of John V. Golaszewski dated Aug. 4, 2016, ¶ 5).

2

China in 1999, but the Fund remained under the control of the Lius and Mr. Mo until 2008.  Id. at *2, 10 & nn.12, 14.

Sang Lan, through her then-attorney Ming Hai, filed her initial complaint in April 2011 against, among other defendants, Mr. and Ms. Liu.  (Complaint at 1-2).  Prior to serving the defendants she amended the complaint, in part to "add[] claims against Mr. Mo for breach of fiduciary duty, defamation, and a variety of other torts."  Sang Lan II, 2011 WL 7807290, at *2.  She then sought to amend the complaint again, and, without objection from the defendants, filed a second amended complaint on June 17, 2011.  Within a week, the Lius and Mr. Mo filed two motions to dismiss the operative complaint; within a month, they moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure, charging that the second amended complaint was frivolous and contained allegations with no basis in fact, among other deficiencies.  (Defendants' Memorandum of Law in Support of Their [1st] Motion for Sanctions Pursuant to Fed. R. Civ. P. Rule 11); Sang Lan II, 2011 WL 7807290, at *1, 10; Sang Lan v. AOL Time Warner, Inc., No. 11 Civ. 2870, 2011 WL 5170311, at *1 (S.D.N.Y. Oct. 31, 2011) (Sang Lan I).  The plaintiff filed another motion to amend and, while those four motions were pending, Mr. Hai moved to withdraw as counsel.  Sang Lan I, 2011 WL 5170311, at *1.  I granted the motion to withdraw, noting that "numerous irreconcilable conflicts exist[ed] between the plaintiff and Mr. Hai," and that "compelling evidence of a dysfunctional attorney-

client relationship [] justifie[d] permitting [withdrawal]."[2] <u>Id.</u> at *2.

I issued a report and recommendation in connection with the pending motions. <u>Sang Lan II</u>, 2011 WL 7807290, at *1. Regarding the Rule 11 motion, which sought sanctions against both Mr. Hai and Sang Lan, I found that "some of the plaintiff's claims are clearly frivolous insofar as they are based on causes of action that do not exist under New York law or completely fail to allege even the basic elements of the relevant cause of action." <u>Id.</u> at *11. However, other causes of action were not clearly frivolous, although "subsequent developments in th[e] case [could] ultimately reveal [those] claims to be frivolous given Mr. Hai's conduct throughout the case and the manifest meritlessness of several of the plaintiff's claims." <u>Id.</u>  "In the interest of judicial economy," I recommended deferring resolution of the sanctions motion "until the issue of whether all or merely some of the plaintiff's claims are sanctionable has a more conclusive answer." <u>Id.</u> (footnote omitted).

"With the threat of sanctions looming," Mr. Hai and the individual defendants entered into a settlement agreement by which Mr. Hai paid the defendants a sum of money and also signed an "Acknowledgment of Wrongdoing." <u>Sang Lan v. AOL Time Warner, Inc.</u>, No. 11 Civ. 2870, 2013 WL 1820289, at *1 (S.D.N.Y. April 30, 2013) ("<u>Sang Lan V</u>").  That document admitted that Mr. Hai had "caused

---

[2] The plaintiff later sued Mr. Hai for defamation and other torts. <u>Lan Sang v. Ming Hai</u>, 951 F. Supp. 2d 504 (S.D.N.Y. 2013).

severe and irreparable harm to the Lius and Mr. Mo by filing salacious complaints against them . . . , including bizarre damage allegations and claims for civil conspiracy, defamation by Mr. Mo, prima facie tort, intentional/negligent infliction of emotional distress, as well as several of the alleged grounds for breach of fiduciary duty."[3]   (Acknowledgment of Wrongdoing, attached to Stipulation and Order of Partial Dismissal of Rule 11 Motion).

The plaintiff was permitted to file a third and then, through her new counsel X. Bing Xu, a fourth amended complaint. Sang Lan II, 2011 WL 7807290, at *3 (recommending grant of motion to amend); Sang Lan III, 2012 WL 1633907, at *1, 4 (adopting Sang Lan II recommendation regarding third amended complaint, dismissing certain claims with leave to amend, and denying motion for Rule 11 sanctions against Sang Lan).   The corporate defendant and the individual defendants separately moved to dismiss all twelve causes of action included in the fourth amended complaint.[4]   Sang Lan IV,

---

[3] As a result of the settlement, the Rule 11 sanctions motion against Mr. Hai was dismissed, but the motion against Sang Lan remained pending until the Honorable Leonard B. Sand, U.S.D.J., denied it.  (Stipulation and Partial Dismissal of Rule 11 Motion at 1); Sang Lan v. AOL Time Warner, No. 11 Civ. 2870, 2012 WL 1633907, at *1, 4 (S.D.N.Y. May 9, 2012) ("Sang Lan III").  Mr. Hai later attempted to set aside the settlement agreement, but his application was denied.  Sang Lan V, 2013 WL 1820289, at *6.

[4] Sang Lan asserted breach of contract, promissory estoppel, and undertaking and reliance against Time Warner.  (Fourth Amended Complaint ("4th Amend. Compl."), ¶¶ 205-264).  Against the Lius, she sought an accounting as to the Goodwill Fund and as to certain other property (4th Amend. Compl., ¶¶ 265-274), as well as alleging unjust enrichment (4th Amend. Compl., ¶¶ 275-281), conversion (4th Amend. Compl., ¶¶ 282-296), breach of fiduciary duty (4th Amend. Compl., ¶¶ 297-305), defamation (4th Amend. Compl., ¶¶ 313-319), invasion of privacy (4th Amend. Compl., ¶¶ 320-325), and "cyberharassment" (4th Amend. Compl., ¶¶ 326-329).  Against Mr. Mo,

2013 WL 1703584, at *1, 4, 8.  The decision on the motions
dismissed all claims against Time Warner, see Sang Lan v. Time
Warner, Inc., No 11 Civ. 2870, 2014 WL 764250, at *2-4 (S.D.N.Y.
Feb. 25, 2014) ("Sang Lan VI"), but allowed certain claims against
each of the individual defendants to survive.  As to the Lius,
there are two claims for an accounting, as well as claims for
unjust enrichment, conversion, breach of fiduciary duty,
defamation, and invasion of privacy pursuant to section 51 of the
New York Civil Rights Law.  Sang Lan VI, 2014 WL 764250, at *5-11;
Sang Lan IV, 2013 WL 1703584, at *12, 23.  A single claim for an
accounting of the Fund remains against Mr. Mo.  Sang Lan VI, 2014
WL 764250, at *9; Sang Lan IV, 2013 WL 1703584, at *12, 23.

Discovery, which was to be completed by August 29, 2014 (Order
dated April 2, 2014), did not go smoothly.[5]  The parties presented
their first discovery dispute to me nine days after the scheduling
conference.  (Letter of Hugh H. Mo dated April 11, 2014).  Days
later, counsel for the plaintiff informed me that the plaintiff had
a "medical emergency" -- she had given birth after a difficult
pregnancy -- and was not capable of participating in the case.
(Memorandum and Order dated June 20, 2014 ("June 20, 2014 Order"),
at 2; Order dated April 16, 2014).  Two weeks after that, the

---

she sought an accounting of the Good Will Fund (4th Amend. Compl.,
¶¶ 265-267) and alleged breach of fiduciary duty (4th Amend.
Compl., ¶¶ 306-312).

[5] Prior to the commencement of discovery, Pedro Medina, an
associate of Mr. Mo, appeared in this case as counsel for the
individual defendants along with Mr. Mo.  (Notice of Appearance by
Pedro Medina dated March 26, 2014).

defendants noted in a letter to the Court that the plaintiff had recently held a press conference at which she had "met with media and said that the recent birth would not affect a separate, ongoing litigation in the United States" -- her action against her former attorney Mr. Hai -- and that recent updates to her blog indicated that she was no longer in the hospital. (June 20, 2014 Order at 2-3; Letter of Hugh H. Mo dated May 1, 2014, attached as Exh. B to Declaration of Hugh H. Mo dated May 27, 2014, at 1-2). In light of these revelations, I required updates on the plaintiff's medical condition to include documentation from her physician.[6] (June 20, 2014 Order at 3; Order dated May 5, 2014). I later denied her application to stay discovery and defer her deposition, reasoning that if she was "capable of participating in media events, she [was] capable of participating in the litigation that she initiated." (Order dated May 20, 2014; June 20, 2014 Order at 3).

Further disputes erupted over the plaintiff's deposition (Letter of Hugh H. Mo dated June 16, 2014; Memorandum Endorsement dated June 20, 2014) and her deficient discovery responses (Letter of Hugh H. Mo dated June 20, 2014; Letter of Hugh H. Mo dated July 7, 2014; Order dated July 30, 2014), so the discovery schedule was consequently extended. (Memorandum Endorsement dated August 13, 2014). On September 8, 2014, the defendants sent a Rule 11 "safe

---

[6] At approximately this time, attorney Thomas L. Johnson was granted permission to appear pro hac vice on behalf of Sang Lan. (Order dated May 28, 2014).

harbor" letter[7] to plaintiff's counsel, arguing that the operative complaint should be voluntarily dismissed because there was no factual support for Sang Lan's allegations that the Lius appropriated her image for commercial gain, published untrue statements about her, commingled funds from the Good Will Fund with their own personal accounts, or converted money and other property, as well as no evidence that Sang Lan demanded an accounting prior to filing her complaint. (Letter of Hugh H. Mo dated Sept. 8, 2014). Approximately one month later, the defendants applied for an order compelling Sang Lan to appear for her deposition on October 14, 2014, and the following two days. I granted the application, warning her that failure to appear would result in sanctions under Rule 37 of the Federal Rules of Civil Procedure. (Memorandum Endorsement dated Oct. 10, 2014; Letter of Pedro Medina dated Oct. 9, 2014).

On October 11, 2014, three days before the plaintiff's deposition, Sang Lan filed "Notice of Voluntary Dismissal," purporting to dismiss the claims against the defendants without prejudice (which she "subsequently asked that I construe . . . as a motion for voluntary dismissal without prejudice under Rule

---

[7] The "safe harbor" provision of Rule 11 of the Federal Rules of Civil Procedure requires that a party moving for sanctions under that rule serve the nonmoving party with the motion at least twenty-one days before it is filed. Fed. R. Civ. P. 11(c)(2). This provision is intended to give parties threatened with sanctions "the opportunity to withdraw the potentially offending statements before the sanctions motion is officially filed." Castro v. Mitchell, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) (quoting Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 389 (2d Cir. 2003)).

41(a)(2) of the Federal Rules of Civil Procedure") and thereafter failed to appear at her deposition, prompting the defendants to move for terminating sanctions under Rule 37. Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2015 WL 480378, at *1 (S.D.N.Y. Feb. 5, 2015) ("Sang Lan VII"). I found that the Rule 41(a)(2) motion "was not diligently made," that the circumstances surrounding it indicated an "ill motive," and that the need for dismissal was not adequately explained, especially in light of the "efforts and expenses . . . put forward by the defendants" in the litigation. (Report and Recommendation dated Feb. 5, 2015 ("Feb. 5, 2015 R&R") at 8-11; Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2016 WL 554588, at *2-4 (S.D.N.Y. Feb. 9, 2016) (adopting Feb. 5, 2015 R&R and denying Rule 41(a)(2) motion). Although I declined to order terminating sanctions, I found that Sang Lan willfully violated my order of October 10, 2014, that she had been "warned . . . that she would be subject to . . . sanctions if she failed to attend the October 14 deposition," and that her failure "was neither reasonable nor justified." Sang Lan VII, 2015 WL 480378, at *2-4. I therefore granted monetary sanctions in favor of the defendants. Id. at *4. I ultimately awarded them approximately $21,000.00 while noting that "[t]he inordinate time spent by counsel in litigating th[e] fee issue [was] symptomatic of the waste of resources in this litigation."[8] Sang Lan v. Time

---

[8] The Honorable Analisa Torres, U.S.D.J., later "sustain[ed] Plaintiff's objection to the imposition of joint and several liability [for these sanctions] against her counsel." Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2016 WL 928731, at *1 (S.D.N.Y. Feb. 9, 2016). But that was not the end of the saga of

Warner, Inc., No. 11 Civ. 2870, 2015 WL 2078385, at *5 (S.D.N.Y. May 4, 2015) ("Sang Lan VIII").

Meanwhile, the individual defendants filed a second motion under Rule 11, seeking sanctions against Sang Lan and Mr. Xu on the basis that the plaintiff's discovery responses had revealed that there was no evidentiary support for many allegations in the still-operative paragraphs of the fourth amended complaint against the Lius and Mr. Mo (Defendants' Memorandum of Law in Support of Their [2nd] Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 at 7-18), and three new attorneys appeared on behalf of Sang Lan. (Notices of Appearance by John Vincent Golaszewski, Allan Steven Schiller, and Brian Patrick Fredericks dated Feb. 26, 2015). The individual defendants withdrew the second motion for Rule 11 sanctions "after the plaintiff established that the defendants had failed to serve a proper safe harbor letter," Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2015 WL 4469838, at *1 n.1 (S.D.N.Y. July 13, 2015) ("Sang Lan IX"), prompting the plaintiff to request Rule 11 sanctions against the defendants "[i]n light of the procedural and substantive deficiencies" of the defendants' "frivolous" second

---

the fees. The plaintiff, through her new counsel John V. Golascewski, claimed that there had been a mistake in the calculation of the amount of fees. (Letter of John V. Golaczewski dated March 10, 2016). I denied the plaintiff's application (Order dated March 16, 2016), and the plaintiff thereafter objected to that order (Plaintiff's Rule 72(a) Objection to the March 10, 2016 Order of Magistrate Judge Francis Fixing the Fees and Costs Awarded Defendants). "Because those objections reflect[ed] a misunderstanding" of the fee assessment in Sang Lan VIII, I "clarifi[ed]" the methodology. Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870, 2016 WL 1317965, at *1 (S.D.N.Y. March 31, 2016). That appears to have resolved the issue.

Rule 11 motion.  (Letter of X. Bing Xu dated March 25, 2015, at 2-3).  I denied the plaintiff's request "without prejudice to renewal when the merits of this case are ultimately decided."  (Memorandum Endorsement dated March 26, 2015).

Mr. Xu and Mr. Johnson moved to withdraw as counsel for Sang Lan in May 2015 (Notice of Motion dated May 12, 2015), and the motion was referred to the Honorable Frank Maas, U.S.M.J.  (Order dated May 15, 2015).  Soon after, the defendants filed their third motion for Rule 11 sanctions ("Third Rule 11 Motion"), which, like the previous motion, argued that claims and allegations in the fourth amended complaint were factually baseless.  (Defendants' Memorandum of Law in Support of Their Motion for Sanctions Pursuant to Rule 11 ("Def. 3rd Rule 11 Memo.") at 10-22); Sang Lan IX, 2015 WL 4469838, at *1.  Sang Lan opposed the motion and cross-moved for sanctions against the defendants.  Sang Lan IX, 2015 WL 4469838, at *1.  Mr. Xu and Mr. Johnson separately opposed the defendants' motion and cross-moved for sanctions.  Id.  I denied the defendants' motion without prejudice and denied the cross-motions as moot:

> Given the preference for resolving this type of Rule 11 motion after the development of the record and at the end of a case, and in light of the inordinate litigation delays both parties have caused over this case's four-year life span, I decline to consider this motion until the plaintiff's claims are addressed on their merits through an appropriate dispositive motion or at trial.

Id. at *2-3.  On January 27, 2016, new counsel substituted for Mr. Mo and Mr. Medina to represent the Lius.  (Consent Order Granting Substitution of Attorney dated Jan. 27, 2016).  On March 3, 2016,

11

Judge Maas granted Mr. Xu's and Mr. Johnson's motion to withdraw. (Order dated March 3, 2016).

I then set a new discovery deadline of July 29, 2016. (Order dated March 11, 2016). However, the plaintiff indicated her intention to move to dismiss the case with prejudice in June 2016. (Order dated June 22, 2016; Letter of John V. Golaszewski dated June 6, 2016). That motion is now before me.

Discussion

Rule 41(a)(2) of the Federal Rules of Civil Procedure governs voluntary dismissal of an action after an "opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1), (2). "[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). "[T]he presumption in this circuit is that a court should grant dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." Gap, Inc. v. Stone International Trading, Inc., 169 F.R.D. 584, 588 (S.D.N.Y. 1997).

In Zagano v. Fordham University, 900 F.2d 12 (2d Cir. 1990), the Second Circuit outlined certain factors that courts should consider in evaluating a motion to dismiss under Rule 41(a)(2): "the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's efforts and expense in

12

preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." Id. at 14.  Mr. Mo asserts that I should address those same factors in evaluating the plaintiff's motion here.   (Defendant Mo's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss the Complaint with Prejudice and in Support of his Motion for Sanctions ("Def. 41(a)(2) Memo.") at 23).   I disagree.

Zaqano addressed a district court's denial of a plaintiff's motion to dismiss her action without prejudice.  When, on the eve of trial after four years of litigation, the plaintiff moved to dismiss the case voluntarily, the district court denied the motion "on the grounds that it had been made too late, that [the plaintiff] had used the federal action as an 'instrument of vexation,' and that defendants would be prejudiced because of the time spent preparing the case for the scheduled trial and the diminishing availability and recollection of witnesses."  Zaqano, 900 F.2d at 13.  Because plaintiff's counsel then "declined" to proceed with the case, the defendants moved for dismissal with prejudice for failure to prosecute pursuant to Rule 41(b).  Id. The appellate court evaluated the five so-called Zaqano factors in affirming the district court's denial of the Rule 41(a)(2) motion, and then went on to affirm the dismissal with prejudice.  Id. at 14-15.  That is, the Second Circuit indicated that those factors are relevant where the question is whether an action should conclude with a dismissal without prejudice or with a final adjudication on the merits, be it through a dismissal with

13

prejudice or an imminent trial.

Although at least one district court in this Circuit has expressly held that the Zagano factors "are also relevant to a decision whether to grant the moving plaintiffs a dismissal with prejudice, Allen ex rel. Glens Falls Building & Construction Trades Council v. Indeck Corinth Ltd. Partnership, 161 F.R.D. 233, 236 (N.D.N.Y. 1995) (emphasis omitted), neither case law nor logic mandates their application.  A dismissal with prejudice under Rule 41(a)(2) "constitutes a final judgment with the preclusive effect of 'res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.'" Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (emphasis omitted) (quoting Heiser v. Woodruff, 327 U.S. 726, 735 (1946)); accord Commercial Recovery Corp. v. Bilateral Credit Corp., No. 12 Civ. 5287, 2013 WL 8350184, at *5 (S.D.N.Y. Dec. 19, 2013).  The Zagano factors are useful for determining the prejudice that a defendant would suffer if, even after dismissal of an action, the claims raised could be relitigated in a new suit.  Indeed, cases on which Zagano relies show that the prospect of relitigation animates its analysis.  See Wakefield v. Northern Telecom, Inc., 769 F.2d 109, 114 (2d Cir. 1985) (affirming denial of motion for voluntary dismissal without prejudice filed post-trial but prior to submission to jury, stating, "Reasons of judicial economy alone would appear to dictate that one full and fair attempt to prove this claim is enough . . . .  [The defendant] has had to defend this claim, and

14

considerations of fairness require some showing as to the plaintiff's need to pursue it a second time elsewhere."); Pace v. Southern Express Co., 409 F.2d 331, 334 (7th Cir. 1969) (affirming denial of motion for voluntary dismissal without prejudice filed after defendant's motion for summary judgment, because "[d]efendants should not be harassed by multiple suits. Plaintiff had ample opportunity to show that there are justiciable issues involved, but has failed to make such a showing. . . . [I]t is only fair that this litigation be disposed of in a manner that will protect the defendant against future litigation."); Bosteve Ltd. v. Marauszwki, 110 F.R.D. 257, 259 (E.D.N.Y. 1986) (denying motion for voluntary dismissal without prejudice brought on eve of trial in part because of threat of second litigation and time and money already expended in current litigation); Harvey Aluminum, Inc. v. American Cyanamid Co., 15 F.R.D. 14, 18 (S.D.N.Y. 1953) (denying motion for voluntary dismissal without prejudice where "matters have progressed [] to such a point that a dismissal [without prejudice] would be unduly prejudicial to the defendants . . . . [P]rotect[ing] their rights and interests in a new action in a foreign jurisdiction would impose an onerous and burdensome task upon the defendants far beyond that encountered in ordinary litigation."). When, however, denial of a Rule 41(a)(2) motion would continue the litigation (extending the expense of time, money, and patience) but granting the motion would conclude it with a final adjudication on the merits, the utility of the Zagano factors in determining the prejudice to the opposing party fades.

See, e.g., Camilli v. Grimes, 436 F.3d 120, 123 (2d Cir. 2006) ("In these circumstances, where no possibility of relitigation at the instance solely of the plaintiff exists, the Zagano factors have little, if any, relevance."); Commercial Recovery Corp., 2013 WL 8350184, at *5 (granting motion to dismiss with prejudice without analyzing Zagano factors while noting that "courts have generally subjected motions for voluntary dismissal with prejudice to far less scrutiny" than motions for voluntary dismissal without prejudice); see also County of Santa Fe v. Public Service Co., 311 F.3d 1031, 1049 (10th Cir. 2002) ("In most cases, the normal analysis will result in the district court granting the plaintiff's motion to dismiss with prejudice.  Consider that the defendant will have obtained a judgment on the merits that vindicates his rights and precludes any future suit by the plaintiff."); S.E.C. v. Lorin, 869 F. Supp. 1117, 1119 (S.D.N.Y. 1994) (granting motion for voluntary dismissal with prejudice because "it is difficult to understand how dismissal with prejudice will adversely affect [the defendant]"); cf. In re Skinner & Eddy Corp., 265 U.S. 86, 93-94 (1924) (noting that defendant, having expended the effort to "get[] his counter case properly pleaded and ready, [] may insist that the cause proceed to a decree").  Indeed,

> [s]ome courts have held that the court lacks discretion
> to deny a motion under Rule 41(a)(2) when the plaintiff
> requests that the dismissal be made with prejudice,
> because the defendant receives all the relief that could
> have been obtained after a full trial and is protected
> from future litigation by the doctrine of res judicata.

8 James William Moore et al., Moore's Federal Practice § 41.40[3], at 41-136 & n.11 (3d ed. 2016) (collecting cases).

I do not suggest that a court should be required to grant a Rule 41(a)(2) motion for dismissal with prejudice. "[T]here will be circumstances where granting a plaintiff's motion to dismiss with prejudice may adversely affect the defendant . . . . In such situations, a blanket rule that the court must grant the plaintiff's motion would lead to injustice." Public Service Co., 311 F.3d at 1049. And so, even where the plaintiff seeks a dismissal with prejudice, the "essential question" remains "whether the dismissal of the action will be unduly prejudicial to the defendants." Lorin, 869 F. Supp. at 1119 (quoting Wainwright Securities Inc. v. Wall Street Transcript Corp., 80 F.R.D. 103, 105 (S.D.N.Y. 1978)).

Mr. Mo asserts that he will be prejudiced if the plaintiff's motion is granted because he will then be prevented from obtaining Rule 11 sanctions against Sang Lan (and, presumably, Mr. Xu).[9]

---

[9] To the extent that Mr. Mo contends that he will be prejudiced by not being able to proceed to summary judgment or trial in order "to demonstrate that [Sang Lan's] claims against him in this action were fabricated," the legal support he cites for this proposition undermines the argument. (Def. 41(a)(2) Memo. at 23). The Camilli court, quoting Chief Justice Taft, stated that

> [t]he usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree.

Camilli, 436 F.3d at 124 (quoting In re Skinner & Eddy Corp., 265 U.S. at 93-94). Here, granting the Rule 41(a)(2) motion will provide Mr. Mo with his decree -- a final adjudication on the merits in his favor. Moreover, the mere pendency of an unresolved

(Def. 41(a)(2) Memo. at 23-24).  I have grave doubts that this is a legally cognizable prejudice.  "[L]egal prejudice in the context of a Rule 41 motion is defined as 'the impairment of some legal interest, some legal claim, or some legal argument.'"  <u>Brown</u>, 293 F.R.D. at 131 (quoting <u>Coffaro v. Crespo</u>, No. 08 CV 2025, 2013 WL 623577, at *2 (E.D.N.Y. Feb. 19, 2013)).  The textbook example is where "dismissal of the plaintiff's case also impairs the ability of a defendant to pursue a counterclaim in the same action that plaintiff seeks to dismiss." <u>Id.</u> Here, Mr. Mo has not interposed a counterclaim, and his hypothetical Rule 11 sanctions motion is not comparable to one.  As the 1993 amendment to Rule 11 made clear, "the purpose of Rule 11 sanctions is to deter rather than to compensate." Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment; <u>see also</u> 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1332, at 495-96 (3d ed. 2004) ("[I]n its note accompanying the 1993 amendment, the Advisory Committee resolved any doubt that the primary purpose of Rule 11 was deterrence, going so far as to suggest . . . that monetary sanctions should not be used to compensate the parties, but 'should be paid into the court as a penalty'" (quoting Fed. R. Civ. P. 11, advisory committee's note to 1993 Amendment)).  In the Second Circuit's formulation, "[t]he purpose of a Rule 11 award 'is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses.'"  <u>On Time Aviation,</u>

---

dispute does not constitute legal prejudice. <u>See</u> <u>Brown v. National</u> <u>Railroad Passenger Corp.</u>, 293 F.R.D. 128, 131 (E.D.N.Y. 2013).

<u>Inc. v. Bombardier Capital, Inc.</u>, 354 F. App'x 448, 452 (2d Cir. 2009) (quoting <u>Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.</u>, 28 F.3d 259, 266 (2d Cir. 1994)); <u>see also Pannonia Farms, Inc. v. USA Cable</u>, 426 F.3d 650, 652 (2d Cir. 2005) ("Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them . . . ."); <u>New York News, Inc. v. Kheel</u>, 972 F.2d 482, 487-88 (2d Cir. 1992) ("The Supreme Court has articulated that 'the central purpose of Rule 11 is to deter baseless filings in the district court and . . . streamline the administration and procedure of the federal courts,' rather than 'to reward parties who are victimized by litigation.'" (alteration in original) (citations omitted) (quoting <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393 (1990), and <u>Business Guides v. Chromatic Communications Enterprises</u>, 498 U.S. 533, 553 (1991))). Thus, a Rule 11 motion is not a legal claim that belongs to a litigant, rather, it belongs -- to the extent it belongs to any entity -- to the court. <u>Cf.</u> <u>In re Ronco, Inc.</u>, 105 F.R.D. 493, 497 (C.D. Ill. 1985) ("[A] lawyer's duty to his or her client cannot be permitted to override his or her duty to the justice system . . . ."). Therefore, a decision that results in precluding a Rule 11 motion does not "impair" a legal interest inhering in a litigant.

Even if it did, dismissing this case would not prejudice Mr. Mo. That is because dismissal of this action is not what is preventing him from bringing a Rule 11 sanctions motion. First, it is important to note that there is no Rule 11 motion pending. The

defendants' first Rule 11 motion was settled as to Mr. Hai and denied as to Sang Lan.  (Stipulation and Partial Dismissal of Rule 11 Motion at 1); Sang Lan III, 2012 WL 1633907, at *1, 4.  The second was withdrawn.  Sang Lan IX, 2015 WL 4469838, at *1 n.1.  The third was denied without prejudice.  Id. at *2-3.  It is now too late to file another motion.  Rule 11 mandates a 21-day safe-harbor period during which the allegedly offending party has the opportunity to "withdraw[] or appropriately correct[]" the "challenged paper, claim, defense, contention, or denial." Fed. R. Civ. P. 11(c)(2).  In this case, a Rule 11 motion seeking sanctions against Mr. Xu could not comply with the safe harbor provision because Mr. Xu no longer represents any party in this case and therefore cannot withdraw the challenged paper, whether it be the fourth amended complaint or any other paper he signed.  See, e.g., 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.2, at 729 (3d ed. 2004) (Rule 11 motion must be rejected where "the party who allegedly violated the rule no longer is able to withdraw the improper papers or otherwise rectify the alleged offense and thus has not been given the full protection mandated by the rule's safe harbor provision").  Moreover, given the pendency of the plaintiff's motion for voluntary dismissal of this action, any Rule 11 sanctions motion directed at the fourth amended complaint would be too late because Sang Lan already seeks to withdraw the offending pleading.  See Castro v. Mitchell, 727 F. Supp. 2d 302, 308-09 (S.D.N.Y. 2010) (collecting cases supporting premise that Rule 11 motion is untimely if filed at point when

party can no longer act to withdraw or correct offending submission).  Put another way, a new Rule 11 motion would be hollow, because the plaintiff has already offered the remedy the rule encourages.

However, that does not mean that Rule 11 sanctions are completely unavailable.  In <u>Sang Lan IX</u>, I found that the Third Rule 11 Motion complied with the procedural requirements of Rule 11, including the safe harbor provision.  <u>Sang Lan IX</u>, 2015 WL 4469838, at *2.  As should be obvious, the plaintiff did not withdraw the fourth amended complaint within the safe harbor period.  I also denied the motion without prejudice, noting that it would be sensible and efficient to defer consideration of the motion until the claims had been fully developed.  <u>Id.</u>  Therefore, if Mr. Mo chooses to do so, he may renew the Third Rule 11 Motion, which is already fully briefed.

I urge caution here, however.  I have previously noted that the analysis of a Rule 11 motion arguing that a complaint's contentions lacked evidentiary support will be heavily factual and therefore benefit "from a full evidentiary record."  <u>Id.</u>  I also suggested deferring consideration of the Third Rule 11 Motion "until the plaintiff's claims are addressed on their merits through an appropriate dispositive motion or trial."  <u>Id.</u>  Although I did not explicitly find in July 2015 that the record was insufficiently developed to grant the motion, that suggestion is at least implicit.  See <u>Young v. Suffolk County</u>, 705 F. Supp. 2d 183, 214 (E.D.N.Y. 2010) ("'Rule 11 is violated only when it is patently

clear that a claim has absolutely no chance of success.' Additionally, 'when divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer' of the pleading." (alterations in original) (internal citation omitted) (quoting Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986), and Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993))).  The record has not changed materially since then.

The grounds on which Mr. Mo seeks sanctions will also be significantly narrowed.  He no longer represents the Lius (who do not seek sanctions here).  Mr. Mo cannot, then, resurrect the motion on their behalf, because he is not their agent; nor does he have standing to claim sanctions on his own behalf in his role as their (former) attorney.  See Vesco v. Snedecker, 80 F. App'x 657, 659 (10th Cir. 2003) ("Generally, an attorney does not have standing to bring a Rule 11 motion on his own behalf (as opposed to on behalf of his client-party)." (citing Kheel, 972 F.2d at 486)); Westlake North Property Owners Association v. City of Thousand Oaks, 915 F.2d 1301, 1307 (9th Cir. 1990) (attorneys for plaintiff "lack standing to move for [R]ule 11 sanctions . . . for actions taken in the district court").  Precedent also indicates that a Rule 11 motion must be brought by a person who is aggrieved by the challenged submission rather than by the mere fact of assertedly frivolous litigation.[10]  Cf. Hochen v. Bobst Group, Inc., 198 F.R.D.

_____

[10] There is, perhaps, some tension between this principle and the principle that the purpose of Rule 11 sanctions is deterrent rather than compensatory and exists to guard the legal system

11, 15 (D. Mass. 2000) (holding that non-party could seek sanctions only because it was aggrieved by attempt to be made "unwilling participant in [] litigation"), aff'd sub nom. Nyer v. Winterthur International, 290 F.3d 456 (1st Cir. 2002).  Therefore, Mr. Mo may seek sanctions only for the allegedly unfounded allegations about him in the fourth amended complaint, and, as noted above, only as discussed in the Third Rule 11 Motion.

In that motion, Mr. Mo complained that Sang Lan "presents no evidence that [Mr.] Mo was ever involved in: (a) the establishment of the Fund; (b) the management of the Fund; and (c) organizing any of the fundraising events for [the] [p]laintiff." (Def. 3rd Rule 11 Memo. at 22).  But the fourth amended complaint does not appear to allege that Mr. Mo was "involved in [] the establishment of the Fund."  There are allegations that he had a hand in managing the Fund (by providing legal advice) and "attend[ing] and supervis[ing] . . . fund raising events . . . for the benefit of the Fund." (4th Amend. Compl., ¶¶ 110, 115, 122-123, 126(b) & (e)).  However, at least some of those allegations are made on information and belief.

---

against baseless filings.  However, requiring the proponent of a Rule 11 sanctions motion to be aggrieved by the submission complained about helps to cabin Rule 11 motions so that they do not overburden courts with collateral proceedings.  See, e.g., Kheel, 972 F.2d at 489 (noting "critics' concerns that [Rule 11] will create unwieldy 'satellite litigation' that will frustrate the rule's goal of 'more effective operation of the pleading regimen'" (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1332, at 29 (2d ed. 1990)); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1331, at 478 (3d ed. 2004) ("[T]he Rule 11 now in force seeks to reduce the litigation that the prior rule had generated." (footnote omitted)).

(4th Amend. Compl., ¶ 115).    Although such allegations do not "relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances," Fed. R. Civ. P. 11, advisory committee's note to 1993 Amendment, they are generally not sanctionable unless it was objectively unreasonable to believe that they were "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3); <u>see also</u> <u>Lovell v. GEICO General Insurance Co.</u>, No. 12 CV 546, 2013 WL 7871497, at *9 (N.D.N.Y. March 29, 2013) (noting allegations on information and belief must be likely to have evidentiary support after further investigation).  It might not, then, be advisable to renew the motion given these constraints.

<u>Conclusion</u>

I recommend granting the plaintiff's motion to voluntarily dismiss this action with prejudice.  In addition, Mr. Mo shall have fourteen days from the date of this recommendation to renew the relevant portions of the Third Motion for Rule 11 Sanctions.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Analisa Torres, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude

appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           October 18, 2016

Copies transmitted this date:

Allan S. Schiller, Esq.
John V. Golaszewski, Esq.
Brian P. Fredericks, Esq.
Schiller Law Group, P.C.
130 W. 42nd St., Suite 1002
New York, NY 10036
(via ECF)

Milo Silberstein, Esq.
Maria L. Bianco, Esq.
Dealy Silberstein & Braverman, LLP
225 Broadway, Suite 1405
New York, NY 10007
(via ECF)

Hugh H. Mo, Esq.
Pedro Medina, Esq.
The Law Firm of Hugh H. Mo, PC
225 Broadway, Suite 2702
New York, New York  10007
(via ECF)

X. Bing Xu, Esq.
The Bing Law Firm
5705 Hansel Ave.
Orlando, FL 32809
(Via U.S. Mail)